1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF NORTH CAROLINA

3

SEAN B. MAYO,                    )
4                                 )
         Plaintiff,              )     DOCKET NO. 5:22-cv-0289-M-RN
5                                 )
    VS.                          )
6                                 )
ROCKY MOUNT POLICE DEPARTMENT,)
7 ET AL.,                        )
                                  )
8         Defendants.            )
                                  )
9 _____)

10

          TRANSCRIPT OF SHOW CAUSE HEARING
11     BEFORE MAGISTRATE JUDGE ROBERT T. NUMBERS, II
          TUESDAY, FEBRUARY 14, 2023; 3:22 P.M.
12              RALEIGH, NORTH CAROLINA

13

14 **FOR THE DEFENDANTS:**
        North Carolina Department of Justice
15      By:  Sonya M. Calloway-Durham, Esq.
             Leslie Cooley-Dismukes, Esq.
16      P. O. Office Box 629
        Raleigh, NC  27602-0629
17

18 Audio Operator:              COURT PERSONNEL

19

        Proceedings recorded by electronic sound recording,
20 transcript produced by transcription service.
_____

21
            JANICE RUSSELL TRANSCRIPTS
22              1418 Red Fox Circle
              Severance, CO  80550
23              (757) 422-9089
            trussell31@tdsmail.com
24

25

1               P R O C E E D I N G S

2          THE COURT:  All right.  The next matter is Mayo versus

3    Rocky Mount PD, 5:22-cv-289.

4          All right.  We are here on a hearing on a show cause

5    order I entered last week.

6          I just ask defense counsel to identify themselves for

7    the record.

8          MS. CALLOWAY-DURHAM:  Good morn -- excuse me --

9    afternoon, your Honor.  Sonya Calloway-Durham and I'm here on

10   behalf of the Department of Justice and myself for the show

11   cause matter.

12         THE COURT:  Thank you.

13         MS. COOLEY-DISMUKES:  Afternoon, your Honor.  Leslie

14   Cooley-Dismukes.  I am the Criminal Bureau Chief at the

15   Department of Justice.  I also have with me today the head of

16   our Criminal Division, which is Danielle Marquis-Elder. She's

17   here in the audience as well.

18         THE COURT:  All right.  Thank you for being here.

19         Just for the record, we are here on a show cause

20   order.  There was a discovery matter referred to me earlier

21   this month or I guess last month in this case and long and

22   short of it is the parties were filing discovery matters on the

23   docket which violates the Local Rules and creates unnecessary

24   clutter on our dockets and in my order resolving the discovery

25   issue I instructed the parties that they were not to file any

1  additional discovery matters on the docket absent an order from

2  the Court or permission by the Local Rules.

3          The very next day Ms. Calloway-Durham on behalf of her

4  client filed some additional documents on, discovery documents

5  on the docket in violation of the court order.  This obviously

6  was, appeared to be in direct violation of the Court's order.

7  At the hearing on the discovery motion I had noted that there

8  have been ongoing issues not with Ms. Calloway-Durham, but with

9  other attorneys from the Department of Justice in complying

10 with the Court's order and it was necessary that, it almost

11 goes without saying, that the Court's orders be followed and

12 then on the heels of that there was this disobey, disobeyal of

13 the court order and I simply need to understand what went on

14 here, why the Court's order wasn't followed in this particular

15 instance, and then I want to have a broader conversation about

16 the bigger issues that have been, that this Court and, frankly,

17 other federal courts in North Carolina have been having with

18 respect to the Department of Justice.

19         So Ms. Calloway-Durham, if you wish to add -- to -- to

20 offer anything, you may.

21         MS. CALLOWAY-DURHAM:  Thank you, your Honor.

22         First and foremost, I need to make clear that, as I

23 indicated to the Court the last time we were here, that your

24 Honor had continued the 26(f) hearing because I was ill.  Part

25 of the reason that I believe things ended up the way they did

1   was an error, a mistake on my part partially because of the

2   fact that I had been out sick.  Quite frankly, I had been ill

3   for weeks and had missed a lot of work.  By the time the order

4   came through I believe on the 6th from your Honor my intent was

5   to fix the problem and to do it quickly so that I wouldn't risk

6   forgetting to do it within a week.  My paralegal that was

7   assigned to me had very limited time, as your Honor knows.

8   That was another conversation we had the last time we were here

9   about having sufficient personnel to do a lot of the work which

10  led to your Honor bringing up the question of workload and the

11  need for extensions of time.  I did not think it was necessary

12  to move for an extension of time because, in my mind, the time

13  it would have taken me to fix the problem would have been more

14  time or just as much time as it would have to have filed a

15  motion to extend.  My paralegal was going to be out of the

16  office and wasn't going to be available within the full seven-

17  day period that your Honor ordered.

18          That having been said, my response was to immediately

19  try to rectify the problem.  I did not print the order;

20  therefore, I did not see the entire printed document.  I can

21  only assume that, as I keep my screen on 174 percent zoom, that

22  when I scrolled down and read the part about the verification I

23  didn't think to keep scrolling and didn't see the last

24  paragraph.

25          That being the case, I had several conversations with

1  both my direct supervisor and my paralegal about trying to

2  rectify the issue with the verification.  I did not realize

3  until I had conversations with both of them that I had failed

4  to, to submit the verification and the question was do I need

5  an additional verification or can I use the one from before at

6  which time I realized there wasn't one from before.

7       At that point I then got in touch with my client who

8  was very kind to me at the 11th hour to not only do the

9  verification, but to have it notarized as well.  My intent was

10  merely to get it back to the Court as soon as possible so that

11  I could get back to my other deadlines.  It was not to violate

12  a court order.  It would have been much simpler for me to have

13  just asked someone else in the office to put the document in

14  the mail to Mr. Mayo than it would for me to have tried to find

15  time for my paralegal to file it or for me to take the time to

16  file it.  Meanwhile, my thoughts, although incorrect, were that

17  because your Honor ordered that we provide this information

18  were that your Honor would have no way of knowing that we did

19  it without me doing it as a response to an order.

20  Understanding, of course, that, normally, discovery is not

21  filed, my intent was not to, to violate the Rules of Civil

22  Procedure, but to make sure that your Honor understood that it

23  had been done, just as your Honor indicated in your order that

24  you had no way of knowing whether or not a verification had

25  been submitted with the initial disclosure.

1    So my thoughts were to make sure your Honor knew that

2   I did what you asked me to do.  There's no reason that would

3   have benefited me, my client, or the Department of Justice or

4   anyone else for me to do the very thing you asked me not to do

5   had I realized that and that was an oversight on my part that I

6   did not realize I had not read the entire order and I didn't

7   realize I hadn't read the entire order until a couple days

8   later, quite frankly.

9    I, I don't have another answer except to say that

10  there was nothing intentional on my part.  I was simply trying

11  to do what your Honor asked me to do, to do it in a timely

12  manner, to not let it get behind, to meet my deadline, and to

13  try to catch up on other things that I had gotten behind on by

14  being out of the office all that time.

15    THE COURT:  All right.  Thank you.

16    Ms. Dismukes, as I said, I also want to address some

17  of the larger issues going on here.  And I, I know you spent

18  several years working in this Court and know the Court's

19  expectations of its attorneys, all of them, who appear before

20  it and, and it is very disconcerting to me that we have these

21  ongoing issues with the attorneys from the Public Safety

22  Section.  And I've heard that there are staffing issues and

23  there are funding issues and all of that, but at bottom the,

24  the orders of this Court and the other federal courts in North

25  Carolina and certainly all the courts in North Carolina need to

1  be followed.

2          And, I mean, and just, you know, having my staff spend

3  a little bit of time going over the various cases these

4  attorneys are in, they're replete with issues and, and, and

5  orders that aren't followed.  I had an attorney here, I believe

6  Bryan Nichols in the <u>Newell</u> case two or three weeks ago

7  appearing before me.  Judge Dever had asked him to provide

8  trial dates and he hadn't done it.  We were there for an

9  evidentiary hearing.  He brought no witnesses.  He didn't -- it

10 was on an exhaustion issue.  He didn't know who had the burden

11 on the exhaustion issue.

12         And Judge Reidinger, with respect to the same attorney

13 in <u>Griffin v. Hooks</u>, 3:19-cv-135, in an order said:

14         "Given defense counsel's history in this and other

15         cases with this Court to fail to adhere to the Court's

16         deadlines and to be generally nonresponsive, the Court

17         will direct the clerk to mail a copy of this order to

18         James Trachtman," who's a supervisor.

19         Judge Reidinger also said:

20         "Defendants and defense counsel have repeatedly failed

21         to follow the Court's orders and to comply with case

22         deadlines in this matter despite the Court's previous

23         admonitions."

24         It went on:

25         "At this point defense counsel and his client will be

1           much better served to seek the assistance of other

2           attorneys in the defense counsel's office to litigate

3           this case to its resolution as defense counsel makes

4           no consistent effort to manage this case properly and

5           professionally himself."

6    There was a show cause order in that case.

7           In McNeill v. Herring, 3:18-cv-189 in the Western

8    District, there was another order to show cause why sanctions

9    shouldn't be imposed.

10          Griffin v. Hollar, 5:19-cv-49 in the Western District,

11   another motion to -- to show -- order to show cause and failing

12   to comply with, well, failure to comply with other obligations.

13          There was the issue with Alan McInnes, who I don't

14   believe works in that Division anymore, but there were just

15   myriad issues with his performance in terms of complying with

16   the Court's orders.  I myself had two show cause hearings with

17   him and in one of which he admitted he was working on something

18   that he had to submit to me during a key deposition in a Middle

19   District case.  I've got a laundry list of other things here

20   with his cases.

21          Ms. Calloway-Durham, for her, to her credit, does not

22   have a, a great deal of issues to, to date.  There's, was some

23   issue with failing to file a Rule 26(f) report on time in, in

24   one case.  In Edwards v. Hooks, today there was an order filed

25   to seek sanctions because of failure to comply with the court

1  order as well.

2       These are just a, a few of the things that we've come

3  across and I -- if, if we took the time to go through the many

4  cases I know the Department of Justice is involved in, I, I

5  believe, unfortunately, we would find many more examples and it

6  seems the Judges who have encountered this, myself included,

7  have not imposed any punitive steps, at least not in any

8  meaningful way, and, and yet that has not been, that grace has

9  not been met with improved compliance and I'm, frankly, I, I

10 don't know what to do anymore short of imposing sanctions on

11 attorneys who fail to meet deadlines or initiating a

12 disciplinary process against either attorneys or the Department

13 of Justice.  It -- I'm really without an answer as to how to

14 ensure that the Court's orders are followed.

15      And I've heard from Mr. Trachtman before with some of

16 the McInnis matters and while I believe he's being honest with

17 me, his, his answers were disturbing in that he, he said he

18 could not promise me that attorneys wouldn't violate court

19 orders and there just was simply not enough people or hours in

20 the day to comply with the Court's orders, which is, again,

21 credit certainly for being honest, but that's a, a disturbing

22 answer.

23      And the Rules of Professional Conduct require

24 attorneys to manage their caseloads and there's no exception

25 for government attorneys and I, I know some of this is out of

1   the Department of Justice's hands in terms of funding and all

2   of that, but the bottom line is this Court's orders need to be

3   followed and these cases need to move forward according to the

4   deadlines set by the Court.  And I, I have you here to,

5   hopefully, assure me that something can be done to, to address

6   this 'cause I know you, particularly, understand what this

7   Court expects of the attorneys who appear before it.

8            So I'm happy to hear anything you might have to say

9   and, and to have a discussion about how to remedy this problem.

10           MS. COOLEY-DISMUKES:  Thank you, your Honor.

11           We certainly understand the Court's frustration with

12  these issues.  We share your frustration.  There are lots of

13  reasons for all of us to be frustrated, but we know that with

14  respect to the Court it not only is an additional burden on the

15  Court, but on your staff as well in terms of having to correct

16  the docket, having to send notices of correction, and

17  certainly, we do not want to continue to make that a place

18  where we are before this Court when any of my attorneys are

19  appearing before your Honor or any of the attorneys for the

20  Department, for that matter.

21           I do think that we try very hard to do things the

22  right way.  Certainly, your Honor knows me and knows that that

23  is an expectation that I have of my people when I supervise

24  them, that we will do things the right way, that we will follow

25  the court orders, that we will follow the Local Rules, the

1    Federal Rules, any rules of any court that we are appearing

2    before.

3            That said, we are not perfect and I do anticipate that

4    there will be times in the future where we will not be perfect.

5    We certainly will try to be as perfect as we possibly can.  I

6    think the difference, your Honor, since the last time you had

7    this conversation with someone from my office, Mr. Trachtman,

8    we have put into place additional steps to try to remedy some

9    of these problems.  I would like if, with the Court's

10   indulgence, to kind of go through a few things that, hopefully,

11   will provide some perspective from our point of view for the

12   Court as we're talking about some of the things that we've put

13   into place and hopefully, let the Court know where we are on

14   these issues.

15           First of all, your Honor, I think that we're

16   essentially the biggest law firm in the state.  We have 350 or

17   so lawyers.  We handle more than 10,000 cases per year which is

18   more than any other law firm in the state.  Just statistically,

19   that means that even in the small things, for example, in

20   Mr. Brecker's case, filing something that had numbers -- I'm

21   sorry -- letters instead of numbers.  Those types of things may

22   happen, but it looks repeatedly like the Department of Justice

23   is doing these things, but it's also because we have the most

24   lawyers in the state.  We have the most cases in the state.

25   And so I would ask for the Court's understanding of that factor

1  when considering the issues.  That's not to belittle any of the

2  issues in the cases.  We should not have these issues in the

3  cases that we have at all and I don't want the Court to

4  misunderstand that I'm trying to excuse that, but I'm just

5  trying to give the Court some perspective in terms of

6  statistically speaking there will be instances where we have an

7  issue with where, if attorneys from Poyner Spruill have one

8  issue in five years, they have, you know, far fewer cases, far

9  fewer attorneys, far fewer likelihoods that they will have a

10 case in which they could have a misfiling or miss a deadline

11 than we do.  We just have more opportunities, more bites at the

12 apple, and I do think that while we will try to be as perfect

13 as possible, I think that perfection is probably not attainable

14 for anyone.

15      And so we are going to try and we have been trying and

16 I want the Court to know that, but I do also want the Court to

17 know that, that there will probably be times when we will

18 unintentionally mess up in the future and we will not,

19 certainly, do it intentionally.

20      THE COURT:  And I appreciate that and, and, you know,

21 this particular -- the -- the -- the issue we're here with that

22 gave rise to this show cause order and some of the issues in

23 the pre-trial order that we discussed in the last case are not

24 grand violations, right, that, that, that would normally catch

25 the attention of the Court in a serious way.  I, you know, the

1   -- the -- it is the, with, at least with me, it, it's the

2   repeated nature of those violations that make small violations

3   appear more like major ones or appear to have systemic problems

4   that need the Court's attention to be addressed.

5          But I certainly understand what you, where you're

6   coming from in terms of if you have more cases, there are more

7   opportunities for things to go awry.

8          MS. COOLEY-DISMUKES:  Yes, sir.  And I appreciate

9   that.

10         And, and to the Court, Court's earlier point, I think

11  that if you see multiple issues but don't see the same issues

12  with multiple attorneys, then that is one thing where we would

13  ask for a little bit of grace, you know.  Each attorney is

14  probably going to have a moment where they have, make a

15  mistake.  We ask them to learn from that mistake and I think

16  that they will.  That was part of the conversation we had when

17  Ms. Calloway-Durham and I were talking about it on Monday, when

18  Mr. Brecker and I were talking about it on Friday, that, you

19  know, learning from those mistakes, not making the same

20  mistakes again, that kind of thing.  And that's part of our

21  practice and process at DOJ.

22         I do hear the Court's concern when there are attorneys

23  who have multiple appearances before your Honor with issues and

24  I will tell the Court that we take those very seriously.

25  Sometimes it is not readily apparent because given our

1   constraints with the protections for state employees and the

2   way in which we can impose corrections on repeated, individuals

3   who have repeated issues, it does take us a longer period of

4   time to address some of those issues than it would in another

5   setting, in an at-will employment setting, for example.

6           So we do have to work those processes.  I want to let

7   the Court know that we do, in fact, work those processes.  Part

8   of the response to some of the issues that your Honor has

9   raised and other Judges have raised as well is then for us to

10  do both formal and informal disciplinary processes with our

11  employees and we have done those things.  Those are not things

12  that I can talk about with respect to the exact issues or the

13  exact people, but I want the Court to know that we have taken

14  the Court seriously and we have, and we have started that

15  process when we have individuals who make the types of mistakes

16  that maybe aren't mistakes anymore and that, perhaps, lead to a

17  greater level of care and we are taking that greater level of

18  care.

19          THE COURT:  And -- and --

20          MS. COOLEY-DISMUKES:  But also, your Honor, we've

21  tried to put -- I'm sorry.

22          THE COURT:  Well, I guess I would -- I appreciate the

23  procedures that you may have to go through to, to deal with

24  perceived shortcomings for your employees.  The Court is not so

25  hamstrung by, by such limitations.

1          MS. COOLEY-DISMUKES:  Yes, sir.

2          THE COURT:  And I, I guess what I -- really, to be

3  blunt, what I'm trying to avoid is imposing individual

4  sanctions on individual attorneys.

5          MS. COOLEY-DISMUKES:  Yes, sir.

6          THE COURT:  I don't like doing that.  It, it puts a

7  mark on their record.  It takes, perhaps, money out of their

8  pocket one way or the other.  I, I hope to avoid that, but

9  again, as I indicated at the outset, we've -- we've gone --

10 we've spent a lot of time on these sort of issues and I'm --

11 I'm --

12         MS. COOLEY-DISMUKES:  Yes, sir.

13         THE COURT:  -- I've lost patience and I'm losing other

14 options short of that.

15         MS. COOLEY-DISMUKES:  Yes, sir.

16         THE COURT:  So.

17         MS. COOLEY-DISMUKES:  And I would ask the Court, in,

18 in making those considerations, which, you know, there are a

19 variety of options available to the Court in a situation where

20 you have a show cause or considering sanctions, that there are

21 a variety of options.  I would ask the Court to reserve the

22 most severe sanctions for the most severe cases.  I don't think

23 that the case that we're here before your Honor today is one of

24 those cases.  I think that even your Honor's comments would

25 indicate that.  I think it is, perhaps, more important for me

1   to be able to appear as a member of the Department, as a senior

2   member of the Department, and be able to give the Court some

3   more information about how we are taking this seriously at the

4   Department rather than on an individual level.

5           And, and to that point, your Honor, since the issues

6   that Mr. Trachtman and Mr. Innis were here, McInnis -- sorry --

7   were here last year, 2021, perhaps -- I'd have to look at my

8   dates.  COVID has my dates a little bit --

9           THE COURT:  Fair enough.

10          MS. COOLEY-DISMUKES:  -- flexible -- we have

11  instituted several different procedures that we are trying to

12  employ in order to fix some of these issues to make sure that

13  with respect to at least the Public Safety Section we don't run

14  into some of these problems anymore.  Again, I -- I -- I would

15  like to promise the Court it's going to fix every issue.  I can

16  promise the Court we're going to take every issue seriously and

17  try not to have any anymore.

18          But every Monday, our entire team has a docket

19  meeting.  They sit down and talk about every deadline for that

20  entire week that is coming up.  In addition to that,

21  Mr. Trachtman has put himself on the ECF notices for every

22  attorney.  And so he sends a second notice after the ECF, ECF

23  notice.  And I note the Court's probably thinking that should

24  not be necessary -- and it should not.  I agree with the Court

25  on that front -- but I think prophylactically speaking at the

1  Department these are steps we are trying to take to make sure

2  that we're doing the right thing.

3         So we have instituted those two major changes and we

4  have seen a lot of great progress since we have instituted

5  those two changes just in terms of everyone being on the same

6  page.

7         Perhaps our biggest handicap that has, DOJ has faced

8  since I have been there, which now, even though it's hard to

9  believe, is going on six years, is funding and this Section has

10 notoriously been overworked and underfunded because of the

11 sheer volume of the prisoner litigation cases.  There are just

12 so many of them and we only have so many people.  After the

13 reduction in force, we lost additional people.  I am happy to

14 be able to report to the Court that as of January 1 of this

15 year we have received eight additional positions, five

16 attorneys and three support staff, that we are currently

17 posting and interviewing for and working to fill.

18        I think that what that will do when we onboard those

19 individuals will take the caseloads from the attorneys who are

20 currently working in this Section down and will allow them each

21 to spend more time with each individual case and our hope in

22 doing that is it will, it will allow them to be more precise

23 and pay closer attention to each court's order, not, not that

24 they should not have been doing that before.  They should have

25 and they know that.  And I'm certainly not meaning to excuse

1    any inattention to that.

2          That said, I do think that the lower caseloads will

3    allow them to operate in a way that they can pay more attention

4    to each individual case.  And so we are hopeful that that will

5    also lead to greater perfection, if you will, or closer to it

6    in complying with all of our obligations in each case that we

7    are litigating.  And so I did want to make sure that the Court

8    was aware of that, you know.  We are taking these steps.  I

9    certainly hear the Court's frustration and in the Court's place

10   I believe I would also be frustrated.

11         I do ask for a little bit of grace given the breadth

12   and scope.  We are the people you see the most because we have

13   the most cases, we have more than 10,000 a year, and

14   particularly, the Public Safety Section is often in federal

15   court, whereas some of our other attorneys are in different

16   venues.  And so I do think that it will be more readily

17   apparent when we make mistakes, given that some of the other

18   attorneys who practice in this area aren't before the Court as

19   much as we are just as a general matter.

20         So with respect to this particular case and with

21   Ms. Calloway-Durham, your Honor, I know that you have mentioned

22   being able to issue sanctions under Local Rule 11.1, which is

23   that if the Court were to find she failed to comply in good

24   faith.  I would say, your Honor, you've heard her explanation

25   and she has admitted she made a mistake.  I would, certainly

1    would say the mistake was not in bad faith, that it was, in

2    fact, a mistake which she has admitted and has indicated will

3    not happen again, but I don't believe that it was in bad faith.

4    And so we would ask not to impose sanctions under 11.1.

5           Then under Federal Rule of Civil Procedure 37(b)(2),

6    for not obeying a discovery order, if she fails to obey an

7    order to provide or permit discovery, your Honor, I, I would

8    also ask the Court to take into context, again, in this case it

9    wasn't noncompliance in terms of withholding discovery from the

10   other side.  It was a failure to follow the procedure that the

11   Court had laid out and also, that the Rules tell us must be

12   followed.

13          So in terms of levels of violation, if the Court will,

14   I don't know that this rises to the level of an intentional

15   withholding from the other party and an intent to sabotage

16   litigation or anything like that.

17          I think the Court has a lot of potential options at

18   your disposal.  I would ask the Court not to levy any sanctions

19   against Ms. Calloway-Durham.  I think that, as your Honor

20   notes, she has not been here in this position with the Court

21   before and I would ask not to hold the actions of others

22   against her, given that the Court has been in this position

23   with other attorneys from our Department and I'm sure other

24   places as well.

25          But in terms of the Department, your Honor, I think, I

1  hope that I've been able to explain to the Court that we are

2  taking this extremely seriously.  We don't take this lightly at

3  all and we have tried to put into place many different checks

4  and balances to ensure that we're not in this position before

5  the Court.  I realize that it had not yielded perfection, or,

6  obviously, we wouldn't be standing here right now, but I do

7  think that we have made great strides and we continue to make

8  great strides in that area.

9       And so my ask would be for the Court not to issue any

10  sanctions against the Department, either.

11       And I'm happy to answer any questions or give the

12  Court any information that it needs in order to make its

13  decision.

14       MS. CALLOWAY-DURHAM:  Your Honor, if I may speak

15  before your Honor.

16       THE COURT:  Sure.  Go ahead.

17       MS. CALLOWAY-DURHAM:  Sorry.

18       I, I just wanted to, to clarify for the record.  You

19  indicated that there was a, a matter with Edwards v. Hooks?

20       THE COURT:  Yes.

21       MS. CALLOWAY-DURHAM:  I didn't recognize the name at

22  first and then it dawned on me that my name is on that case.

23  My name is on that case.  I actually became second chair on

24  that case to assist the person who's handling it -- and this is

25  not to, to throw any negative light on anyone else, but just to

1   explain that, what my role in that matter is -- that --

2               THE COURT:  I actually, I actually don't want to get

3   into it --

4               MS. CALLOWAY-DURHAM:  Okay.

5               THE COURT:  -- 'cause I don't know if I'm going to

6   have to resolve that matter.  So I don't want to talk about it.

7               MS. CALLOWAY-DURHAM:  Okay.  Thank you.

8               THE COURT:  But I, I do note, I will note for the

9   record the, there is another DOJ attorney, NCDOJ attorney on

10  that case, in addition to you.

11              MS. CALLOWAY-DURHAM:  Okay.

12              THE COURT:  And that motion was filed today.  I mean,

13  it, it's a, you know, but --

14              MS. CALLOWAY-DURHAM:  Okay.

15              THE COURT:  -- but I, I certainly --

16              MS. CALLOWAY-DURHAM:  I wasn't aware of it.

17              THE COURT:  -- appreciate you making that --

18              MS. CALLOWAY-DURHAM:  That was my point

19              THE COURT:  Yeah.

20              MS. CALLOWAY-DURHAM:  Thank you.

21              THE COURT:  Well, as I noted, I mean, the, the actual

22  violation that brings us here today is, is relatively minimal,

23  you know, to the extent not following the Court's order can be,

24  can be considered minimal.  It does appear that Ms. Calloway-

25  Durham's failure to abide by the order was, was a mistake and

1  in, in the efforts to demonstrate compliance, which is, you

2  know, is certainly different from other situations we've found.

3  And so I'm not going to impose any sanction on Ms. Calloway-

4  Durham here for this violation.

5       You know, in, in terms of the Department, North

6  Carolina's federal courts have been very patient and

7  ultimately, I am going to, to add one more chapter to that in

8  terms of being patient and, and showing some leniency here,

9  but --

10       And Ms. Dismukes, I, I take you at what you've said

11  and, and that you're, you and your colleagues are making

12  efforts and certainly, perfection would, would be nice, but,

13  but is not always possible.

14       That being said, you know, some of the more egregious

15  errors that have been, you know, that I have uncovered or have

16  occurred before me, of which Ms. Calloway-Durham is, is not

17  one, right, but are very disturbing and I, to be frank, I've

18  considered whether the Court needs to invoke its, its formal

19  disciplinary process for violations of the Rules of

20  Professional Conduct which involve appointing someone from, an

21  attorney to go and investigate what's going on.  Because

22  this -- this -- these violations implicate the Rules of

23  Professional Conduct.  I'm not going to do that here, but it's

24  something I'm contemplating or whether there needs to be some

25  sort of formal reprimand of the Department for its failure to,

1 | to, to meet its obligations to the Court or whether, as I
2 | indicated, there need to be individualized sanctions to make
3 | the point directly to the attorneys, you know, things like
4 | that, or whether there should be some referral to the state bar
5 | to address this. Obviously, DOJ is unusual in that it's a law
6 | firm, but, you know, it is one that represents the entire state
7 | and all the people of the state, you know, and, and it, it, it
8 | is important that that entity abide by the Court's rules. None
9 | of those things am I going to formally order today, but they
10 | are things I'm contemplating.

11 | Another thing might be requiring some sort of written
12 | plan to resolve these problems with a monitor appointed to, to
13 | actually ensure compliance.

14 | I share all of this with you to emphasize how
15 | seriously I am taking this and how important I think it is that
16 | these issues be resolved. Again, everyone has bad days.
17 | Everyone makes mistakes. When I was in practice I made
18 | mistakes on occasion, too, but there have been repeated
19 | egregious errors in this and other courts and those need to
20 | stop, you know. It -- I try not to speak for the other Judges
21 | of this Court, but I don't know anyone who's super stingy with
22 | motions for extensions of time, you know, to comply with
23 | orders, at least on the frontend of cases.

24 | So it's much better to ask for permission than to beg
25 | for forgiveness in terms of how to resolve these things.

1            MS. COOLEY-DISMUKES:  And just to that point, your

2   Honor, if I may.

3            We do actually have that issue in the Middle District

4   not here in the Eastern, but it has been difficult to explain

5   why we need to get extensions in the Middle District.  And so

6   we have had issues there with our caseload and, and not being

7   able to extend our time.

8            THE COURT:  I did note a lengthy text order from Judge

9   Auld in at least one case --

10           MS. COOLEY-DISMUKES:  Yes, sir.  Yes, sir.

11           THE COURT:  -- which was interesting to read.

12           MS. COOLEY-DISMUKES:  Yes, sir.

13           THE COURT:  But -- and I -- and -- and -- well, and

14  gave me a brief moment to consider my standard, but I don't

15  forecast any change in my standard of granting such things.

16           So at least as far as this Court goes, I, I really

17  want to emphasize the need that if deadlines can't be met, to

18  ask to have them extended.  That, that's a much better position

19  to be in and one that, generally, will not raise the ire of the

20  Court.  Obviously, if cases go on too long, there, there, there

21  are concerns, but, you know.  Anyway, I won't belabor that

22  point.

23           I appreciate everyone being here today.

24           Ms. Dismukes, I appreciate the comments you shared

25  with the Court.

1          Ms. Calloway-Durham, I appreciate your comments to the

2     Court.

3          I certainly hope that we won't be in this position

4     again for either of you, but I think I've made it clear my

5     viewpoint on, on the impact of any future issues that may

6     arise, so.  All right.

7          Anything further from either of the attorneys here?

8          MS. COOLEY-DISMUKES:  Not from me, your Honor.  Thank

9     you.

10         MS. CALLOWAY-DURHAM:  No, your Honor.  Thank you.

11         THE COURT:  All right, great.  Thank you very much,

12     everyone.

13         We'll be in recess.

14         COURT SECURITY OFFICER:  All rise.  Court is now in

15     recess.

16      (Proceedings concluded at 3:53 p.m.)

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE OF TRANSCRIBER

 2          I, Janice Russell, court-approved transcriber, in and

 3   for the United States District Court for the Eastern District

 4   of North Carolina, do hereby certify that pursuant to Section

 5   753, Title 28, United States Code, that the foregoing is a true

 6   and correct transcript from the official electronic sound

 7   recording of the proceedings held in the above-entitled matter

 8   and that the transcript page format is in conformance with the

 9   regulations of the Judicial Conference of the United States.

10

11                    Dated this 7th day of March, 2023.

12

13                    /s/ JANICE RUSSELL
                      JANICE RUSSELL
14                    COURT-APPROVED TRANSCRIBER

15

16

17

18

19

20

21

22

23

24

25
```