IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:22-cv-00289-M-RN

| | |
|---|---|
| SEAN B. MAYO,<br><br>                              Plaintiff,<br><br>          vs.<br><br>ROCKY MOUNT POLICE DEPARTMENT,<br>et al<br><br>                              Defendants. | **BRIEF IN SUPPORT OF OFFICER CRAFT'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Officer C.S. Craft ("Officer Craft"), by and through his undersigned counsel, and pursuant to Local Civil Rules 7.1 and 7.2, submits this brief in support of his Motion for Summary Judgment (D.E. 89).

## NATURE OF THE CASE

On August 1, 2022, Plaintiff Sean B. Mayo ("Plaintiff") filed a complaint *pro se* against the "Rocky Mount Police Department" ("RMPD") and the "Rocky Mount Community Correction Judicial Center Probation Department" ("Community Corrections"). (D.E. 1.) Plaintiff alleged one or more claims for illegal search and false arrest, and seeks damages for "pain and suffering afraid for life." (D.E. 1 at 3.) RMPD and Community Corrections each moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (D.E. 13, 26) and, in the case of Community Corrections, Federal Rule of Civil Procedure 12(b)(1) and (2) (D.E. 26).

On September 23, 2022, Plaintiff filed a "motion to have name of officers involved both departments added to complaint." (D.E. 17.) In his motion, Plaintiff alleged he "has received one RMPD officer name CARFT, C.S." [*sic*] but did not make any specific allegations against him. (Id. at 1–2.) The Court interpreted Plaintiff's motion as both a discovery request (i.e., to identify

the names of the officers involved in the search and arrest) and a motion (i.e., to have those officers added to the complaint).  (D.E. 42 at 2.)  By order entered January 27, 2023, the Court granted Plaintiff's request to identify the officers involved and allowed Plaintiff fourteen days from the date of Defendants' disclosures to supplement his complaint and provide factual allegations stating what each officer did and how his rights were violated.  (D.E. 42 at 2.

On February 17, 2023, Plaintiff filed motions to add to the complaint Officer Craft (D.E. 52), Probation Officer Dennis Parris (D.E. 52-1), and Probation Officer Kiwana Johnson (D.E. 52-2).  RMPD opposed Plaintiff's motion on the basis of the statute of limitations and relation-back principles.  (D.E. 54.)  By order entered March 30, 2023 (D.E. 56), the Court allowed Plaintiff's proposed amendment, noting Officer Craft must assert the timeliness defense himself.  (D.E. 56 at 4–5.)  The Court ordered Plaintiff to serve Officer Craft and the other new defendants within ninety days thereafter.  (Id. at 5–6.)

On April 25, 2023, Officer Craft received the summons, a copy of the complaint (D.E. 1), and three motions (D.E. 52, 52-1, 52-2) via priority mail.  (Exhibit 1, Craft Aff. ¶ 12.)  Although it is not entirely clear from his pleadings, Plaintiff appears to allege that Officer Craft participated in an illegal search.  (D.E. 1, 52.)  He alleges "Officer Craft didn't present willingly do process of the law.  Get a search warrant beforehand.  Not wanting to go against what probation officers had in process.  Officer Craft willingness to bend the law and perform illegal search on plaintiff'[s] property."  (D.E. 52 at 2.)

Officer Craft did receive or see any of the pleadings, motions, or other documents filed in this action prior to April 25, 2023.  (Exhibit 1, Craft Aff. ¶ 12.)  He had no knowledge that Plaintiff had asserted a claim against him, intended to assert a claim against him, or was attempting to assert a claim against him, prior to that date, either.  (Id.)  Officer Craft denies liability and, in his answer,

he asserted the statute of limitations and qualified immunity among its affirmative defenses. (D.E. 77.) On those bases, he now moves the Court for summary judgment in his favor.

## STATEMENT OF THE FACTS

On August 12, 2019, Officer Craft and his partner, Officer Damian Whitaker, responded to 1109 Nashville Road in Rocky Mount in reference to a disturbance. (Exhibit 1, Craft Aff. ¶ 3.) When they arrived at the scene, there were two probation officers present — Dennis Parris and Kiwana Johnson. (Id.) A female named Patrina Lynch was also present at the scene. (Id.) Lynch was on supervised probation, a condition of which included certain warrantless searches. (D.E. 22-2 at 5.) She indicated several times she had residence at the premises and was staying there. (Exhibit 2-B, BWC 1:23, 2:49, 2:57, 3:08.)

Plaintiff was inside the residence when Officers Craft and Whitaker arrived at the scene. As the officers approached the side door of the residence, with the probation officers and Lynch, Plaintiff pulled back the blinds to peer through the window on the door. (Exhibit 1, Craft Aff. ¶¶ 4–5; Exhibit 2-B, BWC 1:24.) Officer Craft motioned for Plaintiff to come outside and asked to speak with him. (Exhibit 1, Craft Aff. ¶ 5; Exhibit 2-B, BWC 1:35.) Plaintiff eventually opened the door, allowed Lynch and the probation officers to go inside, and came outside onto the porch with Officers Craft and Whitaker. (Exhibit 1, Craft Aff. ¶ 5; Exhibit 2-B, BWC 4:00–5:00.) Plaintiff acknowledged that he knew Lynch was on probation, and that the probation officers were there to conduct a home visit: "I already know that . . . I already told her she could do that." (Exhibit 2-B, BWC 5:22.)

When Probation Officer Parris returned outside, he requested a K-9 to assist with the search. (Exhibit 1, Craft Aff. ¶ 7; Exhibit 2-B, BWC 8:00.) Officer Craft called dispatch to communicate the request. (Exhibit 1, Craft Aff. ¶ 7; Exhibit 2-B, BWC 8:12.) Probation Officer Parris said to Officer Whitaker, "Cocaine in the truck, and a gun in the house, in his bedroom. We

can't do a warrantless search of his bedroom but we can deal with the truck with the K-9 . . . ." (Exhibit 2-B, BWC 13:11.)  Officer Whitaker advised Officer Craft, in turn, that the probation officers had some knowledge or belief that there was cocaine and a firearm on the premises. (Exhibit 1, Craft Aff. ¶ 7; Exhibit 2-B, BWC 14:38, 21:15.)

Awaiting the K-9 unit, Officer Whitaker asked Probation Officer Johnson to confirm the name of the female who was at the scene.  Probation Officer Johnson identified the female as Lynch.  (Id. at 15:37)  Officer Whitaker then asked Plaintiff, "You stay here with her, sir?"  Plaintiff responded, "*She* stays with *me*."  (Id. at 15:43.)  Officer Whitaker asked Plaintiff for his name, and Plaintiff identified himself as Sean Mayo.  (Id. at 15:58.)  Officers Craft and Whitaker proceeded to their patrol car.  Officer Craft checked Plaintiff's name in the criminal record database, which confirmed Plaintiff had a prior felony conviction.  (Exhibit 1, Craft Aff. ¶ 7; Exhibit 2-B, BWC 23:12.)

At that point, Officer Jerry Judd, a K-9 handler with the Rocky Mount Police Department, arrived on the scene with K-9 Maxx.  (Exhibit 2-B, BWC 23:18; Exhibit 3, Braddy Aff. ¶¶ 3–4.) K-9 Maxx was trained and certified to detect the presence of narcotics, including cocaine, crack cocaine, marijuana, methamphetamine, ecstasy, and heroin.  (Exhibit 3, Braddy Aff. ¶ 3.)  At the request of Probation Officer Parris, Officer Judd used K-9 Maxx to conduct an exterior sniff of the vehicles on the premises.  (Exhibit 1, Craft Aff. ¶ 8; Exhibit 2-B, BWC 29:25–32:02.)  K-9 Maxx indicated on a Chevrolet Tahoe that was parked in the driveway/parking area.  (Exhibit 2-A at 4; Exhibit 2-B, BWC 34:26.)

The positive alert from K-9 Maxx led to the following exchange between Probation Officer Parris and Plaintiff, captured on Officer Whitaker's Body Camera:

```
Parris:   Who's the Tahoe registered to, sir?  Is it
          unlocked?  Because if she has access to the
```

```
            Tahoe on the property it's kind of like a
            common area.  Is it locked?

Mayo:       Yeah it doesn't work.  It doesn't work at all.

Parris:     Ok.  So it's a dead vehicle, too?  So we still
            have to search it just like a —

Mayo:       No, it's not a dead vehicle.  I'm just saying,
            it's not — it's not driven.

Parris:     Ok. So we're going to search that because the
            dog hit on it. And then we're going to search
            the building out there, and then we'll move
            our way into the house.

Parris:     Do you know where the keys are for the Tahoe?
            Is it unlocked or is it locked?

Mayo:       Locked.

Parris:     It's locked?  Do you know where the keys are?

Mayo:       (No Response)

Parris:     So you don't know where the keys are but he
            knows (inaudible).

Mayo:       Yeah I can get the key for you but you won't
            let me go in the house (laughs).

Craft:      Where's the key?

Mayo:       It's in the house.
```

(Exhibit 2-B, BWC 33:45–34:50.)

Accompanied by Officer Whitaker, Plaintiff went inside the house to search for the key.

(Exhibit 2-B, BWC 36:10–37:40.)  Plaintiff came back outside to report that the key was in the

kitchen, but somebody had moved it.  (Id. at 37:40, 38:10.)  Officer Craft asked Plaintiff, "Do you

have any keys in your pocket?"  Plaintiff said, "No."  (Id. at 37:27–38:02.)  Moments later,

Probation Officer Parris asked Plaintiff, "What about the keys in your pocket?"  Plaintiff indicated

those keys were for his work truck. Probation Officer Parris asked, "You mind if I see them real quick?" Plaintiff reached into his pants pocket, pulled out a set of keys, and handed them to Probation Officer Parris. (Id. at 39:09–39:40.) Probation Officer Parris then walked toward the Tahoe to proceed with the search. (Exhibit 1, Craft Aff. ¶ 9; Exhibit 2-B, BWC 39:40–39:55.)

Officer Craft did <u>not</u> search the Tahoe. (Exhibit 1, Craft Aff. ¶ 10.) He was standing with Officer Whitaker, Plaintiff, and Lynch, near the residence, while the Tahoe was being search. (Id.; Exhibit 2-B, BWC 46:00–46:08.) Officer Craft did not search the residence, the vehicles, or any other part of the premises, either. (Exhibit 1, Craft Aff. ¶ 10.) Officer Craft learned from Probation Officer Parris that a handgun was found under the front passenger's seat of the Tahoe during the search. (Exhibit 1, Craft Aff. ¶ 10; Exhibit 2-A at 4; Exhibit 2-B, BWC 1:02:40.)

At that point, Officer Craft believed there was probable cause that Plaintiff had committed a crime in his presence, i.e., possession of a firearm by a felon. (Exhibit 1, Craft Aff. ¶ 11.) Plaintiff's criminal history revealed a prior felony conviction. (Exhibit 1, Craft Aff. ¶¶ 7, 11; Exhibit 2-B, BWC 23:12.) Plaintiff initially said the Tahoe was locked. (Exhibit 1, Craft Aff. ¶ 11; Exhibit 2-B, BWC 34:30–34:35.) The keys to the Tahoe were in Plaintiff's pants pocket. (Exhibit 1, Craft Aff. ¶ 11; Exhibit 2-B, BWC 39:25–39:40.) Plaintiff gave the keys to Probation Officer Parris to unlock the Tahoe. (Exhibit 1, Craft Aff. ¶ 11; Exhibit 2-B, BWC 39:25–39:40.) And a handgun was found in the Tahoe during the search. (Exhibit 1, Craft Aff. ¶ 11.) Officer Craft placed Plaintiff in handcuffs and advised he was under arrest for possession of a firearm by a felon. (Exhibit 2-B, BWC 47:45; 1:02:40.) The probation officers continued with their probation search, (Exhibit 2-B, BWC 1:02:40), and Officer Whitaker photographed the handgun that was found (id. at 1:22:10–1:25:10).

Plaintiff was transported to the police department, where he was fingerprinted, and then to the Rocky Mount Judicial Center on Cokey Road. (Exhibit 2-A at 4.) Officers Craft and Whitaker sought an order from Magistrate McPhatter finding probable cause for Plaintiff's arrest. (D.E. 86-6 at 1 ¶ 5.) Although Magistrate McPhatter denied the request at that time, he has since submitted a declaration, explaining that he had not been made aware that Lynch was living at the premises with Plaintiff, and it was not clear to him why the probation officers were at the premises. (D.E. 86-6 at 1–2.)

## LEGAL ARGUMENT

**I.    OFFICER CRAFT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE THE APPLICABLE THREE-YEAR STATUTE OF LIMITATIONS HAS EXPIRED AND PLAINTIFF'S CLAIMS DO NOT RELATE BACK.**

The claims in Plaintiff's amended complaint (D.E. 1, 52, 52-1, 52-2) presumably fall under 42 U.S.C. § 1983, which imposes liability against "every person" who, acting under color of state law, deprives another of his or her rights secured by the Constitution or federal law. 42 U.S.C. § 1983. The state's three-year statute of limitation for personal injury actions, N.C.G.S. § 1-52(5), applies to claims brought under 42 U.S.C. § 1983. Wallace v. Kato, 549 U.S. 384, 387 (2007); Perry v. Pamlico Cnty., 88 F. Supp. 3d 518, 529 (E.D.N.C. 2015). As the incident occurred and Plaintiff's claims accrued on August 12, 2019, the three-year statute of limitations expired on August 12, 2022. Because Plaintiff's claims against Officer Craft do not relate back to the date the original complaint was filed, Officer Craft is entitled to judgment as a matter of law.

"Although the statute of limitations is an affirmative defense that must be established by the defendant, when relation back is required to satisfy the statute of limitations, the burden is on the plaintiff to prove that Rule 15(c) is satisfied." Covey v. Assessor of Ohio Cnty., 666 Fed. App'x. 245, 248 (4th Cir. 2016) (unpubl.) (citing Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); W. Contracting Corp. v. Bechtel Corp., 885 F.2d 1196, 1200 (4th Cir. 1989)).

If Plaintiff cannot establish that his new claim against Officer Craft relates back under Rule 15(c)(1), then his claim is time barred, and leave to amend should be denied as futile.

Relation back of amendments is governed by Federal Rule of Civil Procedure 15. Fed. R. Civ. P. 15(c)(1); see also Goodman, 494 F.3d at 467–68. Specifically, Federal Rule of Civil Procedure 15(c)(1) provides:

> An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> i.   received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> ii.  knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). To maintain his claims against Officer Craft, Plaintiff must prove subparagraph (A) or (C) has been satisfied.

### A. Plaintiff Cannot Avail Himself of Relation Back Under Fed. R. Civ. P. 15(c)(1)(A).

First, Plaintiff cannot avail himself of relation back under Federal Rule of Civil Procedure 15(c)(1)(A). Paragraph (A) requires the relevant law — in this case, North Carolina Rule of Civil Procedure 15 — to be satisfied in order to permit relation back. Abee-Reeves v. Cathey, No. 3:22-CV-164-MOC-DSC, 2022 WL 4088200, at *3 (W.D.N.C. Sept. 6, 2022). North Carolina Rule of Civil Procedure 15(c), however, does not permit relation back under these circumstances. Id. As the Court explained in Abee-Reeves, North Carolina Rule of Civil Procedure 15(c) " ' is not based

on the federal counterpart' but instead 'drawn from the New York Civil Practice Law and Rules.' " Abee-Reeves, 2022 WL 4088200, at *3 (quoting Crossman v. Moore, 341 N.C. 185, 186–87, 459 S.E.2d 715, 717 (1995)). And in North Carolina, " '[t]he notice requirement of Rule 15(c) cannot be met where an amendment has the effect of adding a new party to the action, as opposed to correcting a misnomer.' " Id. (quoting Bob Killian Tire, Inc. v. Day Enters., Inc., 131 N.C. App. 330, 333, 506 S.E.2d 752, 754 (1998) (denying plaintiff's proposed amendment because it sought to substitute an individual for a corporate defendant and "thereby nam[ed] a new party-defendant rather than correct[ed] a misnomer")).

Plaintiff did not amend his original complaint to correct a misnomer. Rather, Plaintiff added Officer Craft as an entirely new party after the statute of limitations had run. When Plaintiff filed his original complaint on August 1, 2022, he did not name any individual officer as a party defendant. He sued the "Rocky Mount Police Department," which is not an entity capable of being sued. See Mayo v. Rocky Mount Police Dep't, No. 5:19-CV-554-D, 2021 WL 2377344, at *2 (E.D.N.C. June 10, 2021) ("The RMPD is not a person amenable to suit."). The allegations in the original complaint are void of any reference to Officer Craft — or any other individual officer with RMPD. Plaintiff's claims against Officer Craft (D.E. 52), therefore, cannot relate back under Federal Rule of Civil Procedure 15(c)(1)(A).

### B. Plaintiff Cannot Avail Himself of Relation Back Under Fed. R. Civ. P. 15(c)(1)(C).

Plaintiff cannot avail himself of relation back under Federal Rule of Civil Procedure 15(c)(1)(C), either. To satisfy the requirements of the rule, a plaintiff must show (1) the claim in the amended complaint arose out of the same "conduct, transaction, or occurrence" that formed the basis of the claim in the original complaint; (2) the party to be added by the amendment received notice of the action such that it will not be prejudiced in maintaining a defense to the

claim; and (3) the party to be added knew or should have known the action would have been brought against it, but for a mistake concerning the proper party's identity. Fed. R. Civ. P. 15(c)(1)(B)–(C); Goodman, 494 F.3d at 467. As the Fourth Circuit explained in Goodman, relation back under Rule 15 "focuses on the *notice to the new party* and *the effect on the new party* that the amendment will have." Goodman, 494 F.3d at 470. "These core requirements preserve for the new party the protections of a statute of limitations" and "assure that the new party had adequate notice *within the limitations period*" such that it will not be prejudiced by the amendment. Id., quoted in Wilkins v. Montgomery, 751 F.3d 214, 224 (4th Cir. 2014). Assuming *arguendo* the proposed claim against Officer Craft arises out of the same conduct, transaction, or occurrence set forth in the original complaint, Plaintiff still has not satisfied the second and third requirements of Rule 15(c)(1)(C) referenced above.

The second and third requirements involve an inquiry into whether Officer Craft received sufficient notice. As for the temporal requirement, the party sought to be added must have received notice of the action "within the period provided by Rule 4(m) for serving the summons and complaint," Fed. R. Civ. P. 15(c)(1)(C), which is ninety days from the filing of the original complaint, Fed. R. Civ. P. 4(m); Robinson v. Clipse, 602 F.3d 605, 608 (4th Cir. 2010). Notice within this prescribed period may be formal, see, e.g., Robinson, 602 F.3d at 609 (recognizing that " 'actual service of the complaint clearly satisfies the notice requirement' " (citations omitted)), or in some cases, informal, see, e.g., Bechtel, 885 F.2d at 1201 (discussing "sufficient identity of interest" theory of informal notice); Boatwright v. Good, No. 1:02-CV-209-C, 2003 WL 22231194, at *2 (W.D.N.C. Aug. 6, 2003) (discussing "shared attorney" theory of informal notice). Plaintiff has not established either formal or informal notice to Officer Craft within the requisite time period.

Plaintiff's original complaint was filed on August 1, 2022. (D.E. 1.) RMPD and Community Corrections were purportedly served on August 30, 2022 (D.E. 10), and August 29, 2022 (D.E. 11), respectively. Officer Craft was not identified in either the body or the caption of the original complaint. (D.E. 1.) The question, then, is whether Plaintiff has shown Officer Craft received sufficient notice of this action, and of the possibility that he may be added as a defendant, between August 1, 2022 (i.e., the date the original complaint was filed) and October 31, 2022 (i.e., the expiration of the ninety-day period under Rule 4(m)).

Plaintiff has not shown Officer Craft received formal notice of this action on or before October 31, 2022. There is nothing in the record to indicate he received service of process within that time period. This is not a situation where, for example, service of process is made on the party intended to be sued, even though it is not properly named in the lawsuit. The only proofs of service initially filed by Plaintiff were those in reference to RMPD and Community Corrections. (D.E. 10, 11.) As to the former, the proof of service merely indicates the summons was left with the "front desk clerk." (D.E. 10.) And again, Officer Craft was not named as a defendant or identified in the original complaint. (D.E. 1.)

Plaintiff has not shown that Officer Craft received informal notice of this action on or before October 31, 2022, either. The Fourth Circuit recognized in <u>Bechtel</u> that "[n]otice within [the] prescribed time period may be presumed when the nature of the claim is apparent in the initial pleading and the added defendant has . . . a sufficient identity of interest with the original defendant." <u>Bechtel</u>, 888 F.2d at 1201. Neither of those two requirements has been satisfied in this case.

As to the first requirement of <u>Bechtel</u>, the nature of the claim against Officer Craft is not apparent in the original complaint. The original complaint named two defendants: "Rocky Mount

Police Department" and "Rocky Mount Community Correction Judicial Center Probation Department." (D.E. 1) The original complaint did not mention any individual officers involved, and it is devoid of any factual allegations that Officer Craft, or any other officer with the Rocky Mount Police Department, was involved in the search, the arrest, or otherwise took action against Plaintiff. On the contrary, Plaintiff alleged the search and arrest were made by "two probation officers." (D.E. 1 at 2.)

As to the second requirement of <u>Bechtel</u>, an "identity of interest" means "the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." <u>Holden v. R.J. Reynolds Indus., Inc.</u>, 82 F.R.D. 157, 161 (M.D.N.C. 1979). On similar facts, the Court in <u>Stokes v. Harris</u>, No. 1:10-CV-935, 2013 WL 1212788 (M.D.N.C. Mar. 25, 2013), held notice of claims made in the original complaint against the City of Rockingham could <u>not</u> be imputed to an individual officer with the Rockingham Police Department through the identity of interest theory. <u>Id.</u> at *7. As the Court explained, "[the officer] is not high enough in the administrative hierarchy to share a sufficient identity of interest with the City of Rockingham." <u>Id.</u> (citing <u>Garvin v. City of Philadelphia</u>, 354 F.3d 215, 227 (3d Cir. 2003) ("The individual police officers sought to be added to this action . . . do not share a sufficient nexus of interests with their employer, the City . . . [and] the district court correctly held that it could not impute notice for purposes of Rule 15(c)(3)(A) under the identity of interest method."). Moreover, the Court held, the identity of interest theory could <u>not</u> be used to impute notice from the officer named in the original complaint to the officer that plaintiff sought to add. <u>Id.</u> (citing <u>Jones v. Wysinger</u>, 815 F. Supp. 1127, 1130 (N.D. Ill. 1993) ("The mere fact that [the original defendants and the attempted new defendant] were on the same

police force and are represented by the same counsel is insufficient to establish an identity of interest sufficient to impute notice.")).

Stokes instructs that Plaintiff cannot rely on the identity of interest theory to impute notice from RMPD to Officer Craft. As noted above, the "Rocky Mount Police Department" is not an entity capable of being sued. Mayo, 2021 WL 2377344, at *2. Even if it were, which it is not, Officer Craft "is not high enough in the administrative hierarchy to share a sufficient identity of interest" with RMPD. See Stokes, 2013 WL 1212788, at *7. Likewise, no officer with the Rocky Mount Police Department was named as a defendant or identified in the original complaint. And even if Plaintiff had alleged claims against another RMPD officer in the original complaint, that would still not suffice to impute notice to Officer Craft. See id.

Officer Craft had not seen any of the pleadings, motions, or other documents filed in this action until April 25, 2023. (Exhibit 1, Craft Aff. ¶ 12.) Prior to that date, he had no knowledge that Plaintiff had asserted a claim against him, intended to assert a claim against him, or was attempting to assert a claim against him. (Id.) Officer Craft would be prejudiced if Plaintiff's claims against him were allowed to proceed. "[P]rejudice within the meaning of [Rule 15] is prima facially established where a party named as an additional defendant in the amended complaint is deprived of the defense of the statute of limitations." Norton v. Int'l Harvester Co., 627 F.2d 18, 20 (7th Cir. 1980), quoted in Wilkins, 751 F.3d at 224. The statute of limitations for Plaintiffs' claims has expired, and allowing Plaintiff to maintain his claims against Officer Craft undermine the purpose of the statute, which is to "give defendants predictable repose from claims after the passage of a specified time." Goodman, 494 F.3d at 467, quoted in Wyatt v. Owens, No. 7:14-CV-00492, 2016 WL 6651410, at *3 (W.D. Va. Nov. 10, 2016). Plaintiff has not satisfied his burden on this issue, and Officer Craft is entitled to judgment as a matter of law.

## II. OFFICER CRAFT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE BASIS OF QUALIFIED IMMUNITY.

Qualified immunity "shields government officials 'from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.' " Anderson v. Creighton, 483 U.S. 635, 638 (1987) (citations omitted); see also Tobey v. Jones, 706 F.3d 379, 385 (2013).  It " 'protects all but the plainly incompetent or those who knowingly violate the law.' " Putman v. Harris, 66 F.4th 181, 186 (4th Cir. 2023) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011)).  "An officer is entitled to qualify immunity unless he (1) 'violated a federal statutory or constitutional right, and (2) the unlawfulness of [his] conduct was clearly established at the time.' " Hulbert v. Pope, No. 21-1608, 2023 WL 3985161, at *3 (4th Cir. June 14, 2023) (quoting District of Columbia v. Wesby, ─── U.S. ───, 138 S. Ct. 577, 589 (2018) (internal quotation marks omitted)).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." Wesby, 138 S. Ct. at 589.  It "must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.' " Id. (citations and internal quotation marks omitted).  "It is not enough that the rule is suggested by then-existing precedent." Id. at 590.  Officials do not have "a duty to sort out conflicting decisions or to resolve subtle or open issues," McVey v. Stacy, 157 F.3d 271, 277 (4th Cir. 1998), nor are "officials are liable for bad guesses in gray areas," Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992) (citations omitted).  "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." Wesby, 138 S. Ct. at 590 (citing Reichle v. Howards, 566 U.S. 658, 666 (2012)); see also Hill v. Crum, 727 F.3d 312, 322 (4th Cir. 2013) (explaining "the unlawfulness must be apparent" based on pre-existing law).

"Otherwise, the rule is not one that 'every reasonable official' would know. <u>Wesby</u>, 138 S. Ct. at 590 (citations omitted).

"The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." <u>Wesby</u>, 138 S. Ct. at 590. The contours of the rule "must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' " <u>Id.</u> (citations omitted); <u>see also</u> <u>Hill</u>, 727 F.3d at 321–22. Clearly established law cannot be defined " 'at a high level of generality' " because " 'doing so avoids the crucial question of whether the official acted reasonably in the particular circumstances that he or she faced.' " <u>Wesby</u>, 138 S. Ct. at 590 (quoting <u>Plumhoff v. Rickard</u>, 572 U.S. 765, 779 (2014)). Rather, "the clearly established law must be particularized to the facts of the case." <u>White v. Pauly</u>, 580 U.S. 73, 79 (2017) (per curiam) (citations and internal quotation marks omitted). The inquiry "requires a high 'degree of specificity,' especially in the Fourth Amendment context. <u>Wesby</u>, 138 S. Ct. at 590 (quoting <u>Mullenix v. Luna</u>, 577 U.S. 7, 13 (2015)).

Probable cause is based " 'on the assessment of probabilities in particular factual contexts' and cannot be 'reduced to a neat set of legal rules.' " <u>Wesby</u>, 138 S. Ct. at 590 (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983)). "Given its imprecise nature, officers will often find it difficult to know how the general standard of probable cause applies in 'the precise situation encountered.' " <u>Id.</u> (quoting <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 151 (2017)). The U.S. Supreme Court has, for that reason, "stressed the need to 'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.' " <u>Id.</u> (quoting <u>White</u>, 580 U.S. at 79). "While there does not have to be 'a case directly on point,' existing precedent must place the lawfulness of the particular arrest beyond debate.' " <u>Id.</u> (quoting <u>al-Kidd</u>, 563 U.S. 741).

On this issue, the analysis begins by defining the circumstances with which Officer Craft was confronted. See Wesby, 138 S. Ct. at 590. After arriving at the scene, Officer Craft was informed, from both Lynch and Plaintiff himself, that Lynch was residing at the premises. (Exhibit 2-B, BWC 1:23; 2:00; 3:05; 15:47.) He was also informed, from both Lynch and the probation officers, that Lynch was on probation and subject to warrantless searches. (Id. at 3:00.) Plaintiff told Officer Craft that he knew Lynch was on probation, and indicated she could proceed with the home visit. (Id. at 5:22.) He allowed Lynch and the probation officers to enter the residence. (Id. at 4:00–5:00.) When Probation Officer Parris returned outside, he requested the assistance of a K-9 unit. (Exhibit 1, Craft Aff. ¶ 7; Exhibit 2-B, BWC 8:05.) He told Officer Whitaker there was "cocaine in the truck," and a gun on the premises, and the same was relayed from Officer Whitaker to Officer Craft. (Exhibit 1, Craft Aff. ¶ 7; Exhibit 2-B, BWC 13:11–13:24). K-9 Maxx, a trained narcotics dog, performed an exterior sniff of the vehicles in the driveway/parking area, alerting on the Tahoe to indicate the presence of drugs. (Exhibit 1, Craft Aff. ¶ 8; Exhibit 2-A at 4; Exhibit 2B, BWC 29:25–32:02; Exhibit 3, Braddy Aff. ¶¶ 3–4.) Plaintiff said the Tahoe was locked. (Exhibit 2-B, BWC 34:30–34:35.) The keys to the vehicle were in Plaintiff's pants pocket. Plaintiff gave the keys to the Tahoe to Probation Officer Parris. (Exhibit 1, Craft Aff. ¶ 9; Exhibit 2-B, BWC 39:25–39:40.) Officer Craft stayed with Plaintiff and Lynch near the residence while the Probation Officer Parris searched the Tahoe. (Exhibit 1, Craft Aff. ¶ 10; Exhibit 2-B, BWC 39:40–46:08.) Officer Craft knew Plaintiff was a convicted felon, and Probation Officer Parris advised that a handgun was found in the Tahoe during the search, leading to Plaintiff's arrest. (Exhibit 1, Craft Aff. ¶¶ 10–11.)

Officer Craft did not violate any of Plaintiff's statutory or constitutional rights, let alone a right that was "clearly established" at the time of the incident. First, Officer Craft had a lawful

presence on the premises. Under North Carolina law, when a convicted offender is placed on probation, the court "must determine conditions of probation" and "impose a suspended sentence of imprisonment." N.C.G.S. § 15A-1342(c). Among the regular conditions of supervised probation, to which Lynch was subject in her probation order (D.E. 22-2 at 5), a probationer may be required to:

> (13) Submit at reasonable times to warrantless searches by a probation officer of the probationer's person and of the probationer's vehicle and premises while the probationer is present, for purposes directly related to the probation supervision, but the probationer may not be required to submit to any other search that would otherwise be unlawful.
>
> . . . .
>
> (15) Not use, possess, or control any illegal drug or controlled substance unless it has been prescribed for him or her by a licensed physician and is in the original container with the prescription number affixed on it; not knowingly associate with any known or previously convicted users, possessors, or sellers of any such illegal drugs or controlled substances; and not knowingly be present at or frequent any place where such illegal drugs or controlled substances are sold, kept, or used.

N.C.G.S. § 15A-1343(b)(13), (15).

Although the statutory scheme authorizes probation offers to conduct the warrantless searches, "that authorization does not preclude the probation officer from obtaining help from the police department for the purpose of physically conducting the search." United States v. Midgette, 478 F.3d 616, 623–24 (4th Cir. 2007). Given the danger sometimes associated with home contacts, "it is not uncommon for a probation officer to call local police for assistance." (D.E. 22-1 ¶ 9.) Because Community Corrections does not employ K-9 officers, moreover, Probation Officer Parris requested a K-9 unit from the RMPD to assist with the probation search. (D.E. ¶ 12.) And based on the statements made by the probation officers, Lynch, and Plaintiff, Officer Craft reasonably believed that Lynch was staying at the premises. (Exhibit 1, Craft Aff. ¶ 6.) Plaintiff himself said,

in the presence of Officer Craft, and in reference to Lynch, "*She* stays with *me*." (Exhibit 2-B, BWC 15:43.)

Second, the K-9 sniff around the exterior of the Tahoe was not a "search" implicating the Fourth Amendment. See United States v. Branch, 537 F.3d 328, 335–36 (4th Cir. 2008) ("[A] dog sniff is not a search within the meaning of the Fourth Amendment, and it therefore requires no additional justification." (citing Illinois v. Caballes, 543 U.S. 405, 408–09 (2005), and United States v. Place, 462 U.S. 696, 707 (1983)). To the extent some "additional justification" was required to conduct the K-9 sniff of the vehicles, the information received from Probation Officer Parris — i.e., "cocaine in the truck" — provided reasonable suspicion. See Midgette, 478 F.3d at 625 (holding tip received from police sergeant that defendant may be in possession of firearms provided probation officer with reasonable suspicion); see also Griffin v. Wisconsin, 483 U.S. 868, 871 (1987) (holding tip received from detective that there were or might be guns in probationer's apartment provided reasonable suspicion to probation officer). And once the K-9 indicated on the Tahoe, there was probable cause to believe it contained contraband. See United States v. Jeffus, 22 F.3d 554, 557 (4th Cir. 1994) (holding positive alert from K-9 on vehicle provided probable cause for the search that followed).

Although Officer Craft did not search the Tahoe, the undersigned is not aware of any "clearly established" rule that would have precluded the warrantless search under the circumstances. As a condition of her probation, Lynch was "subject to warrantless searches by a probation officer of the probationer's person and of the probationer's vehicle and premises . . . for purposes directly related to the probation supervision." (D.E. 22-2 at 5.) There is at least persuasive authority recognizing that, where the probationer is living with someone who is not on probation, the probation search may "extend to all parts of the premises to which the

probationer . . . has common authority."  5 Wayne LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 10.10(d) n.142 (6th ed. Oct. 2022 update) (collecting cases).

Probation Officer Parris specifically asked Plaintiff if Lynch had access to the Tahoe because, if she did, "it's kind of like a common area." (Exhibit 2-B, BWC 33:58–34:14.) Plaintiff never denied or disputed that Lynch had access to the Tahoe. Rather, in response to the question, he said, "Yeah it doesn't work. It doesn't work at all." (Id.) Certainly, a warrantless search for narcotics, in a vehicle to which Lynch had access on the premises, is "directly related to the probation supervision." Plaintiff never voiced any objection to the search, either. Probation Officer Parris had already informed Plaintiff that he wanted to search the Tahoe. (Exhibit 2-B, BWC 34:22–34:30.) When Probation Officer Parris asked for the keys, Plaintiff should have reasonably assumed the keys would be used to unlock the Tahoe and search it. It was likewise reasonable to believe, that when Plaintiff gave the keys to Probation Officer Parris, Plaintiff consented to the search. See United States v. Hylton, 349 F.3d 781, 786 (4th Cir. 2003) ("Consent may be inferred from actions as well as words.").

The search was also justified under the "automobile exception" to the warrant requirement. A warrantless search of a vehicle is permissible if the vehicle is "readily mobile" and "probable cause exists to believe it contains contraband." United States v. Kelly, 592 F.3d 586, 591 (4th Cir. 2010) (quoting Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (per curiam)). A vehicle "is 'readily mobile,' for purposes of the exception, so long as it is 'being used on the highways' or is 'readily capable of such use' rather than, say, 'elevated on blocks.' " Id. (quoting California v. Carney, 471 U.S. 386, 392–93, 394 n.3 (1985)). The Tahoe, of course, was not sitting on blocks. Although Plaintiff initially claimed, "it doesn't work," he recanted that statement almost immediately, clarifying, "It's not a dead vehicle. I'm just saying, it's not — it's not driven."

(Exhibit 2-B, BWC 34:15–34:21.) The Fourth Circuit Court of Appeals has applied the automobile exception under similar circumstances, authorizing warrantless searches of unoccupied vehicles parked in a private driveway. United States v. Brookins, 345 F.3d 231 (4th Cir. 2003), cited with approval in Kelly, 592 F.3d 586; see also United States v. Jenkins, 426 F. Supp. 2d 336, 339 (E.D.N.C. 2006) (recognizing the search area, which was used to park cars, "was not an area harboring the intimate activities associated with domestic life and the privacies of the home").

Finally, the warrantless arrest itself was justified under existing precedent. The U.S. Supreme Court recognized in Virginia v. Moore, 553 U.S. 164 (2008), that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." Id. at 176. A North Carolina statute, N.C.G.S. § 15A-401(b), provides the same authority for warrantless arrests where there is probable cause to believe the person has committed a criminal offense in the officer's presence. Plaintiff has never challenged the theory of constructive possession, and for the reasons explained above, there was probable cause to believe Plaintiff committed a crime in Officer Craft's presence — specifically, possession of a firearm by a felon.

The undersigned is not aware of "a single precent — much less a controlling case or robust consensus of cases—finding a Fourth Amendment violation under similar circumstances." Wesby, 138 S. Ct. at 591 (citations and internal quotation marks omitted). This is not an "obvious case" where a bright line was crossed. Under the foregoing principles, and based on the circumstances with which Officer Craft was confronted, he is entitled to qualified immunity.

## CONCLUSION

Officer Craft is entitled to summary judgment as to each and every claim against him. First, the statute of limitations expired long before Officer Craft was named as a defendant, and Plaintiff

has not met his burden to show Officer Craft had the requisite knowledge to satisfy Rule 15(c)'s relation-back principles. Second, Officer Craft is entitled to qualified immunity because he did not violate any of Plaintiff's statutory or constitutional rights, let alone a right that was "clearly established" at the time of the incident. As such, Officer Craft respectfully requests that the Court allow his motion and enter summary judgment in his favor.

This 30th day of June, 2023.

By: /s/ Dylan J. Castellino

Dylan J. Castellino
State Bar No. 49123
dcastellino@poynerspruill.com
J. Nicholas Ellis
State Bar No. 13484
jnellis@poynerspruill.com
Poyner Spruill LLP
Post Office Box 353
Rocky Mount, NC 27802-0353
Tel: (252) 972-7093
Fax: (919) 783-1975
Attorneys for Defendant Officer
C.S. Craft

## CERTIFICATE OF WORD COUNT

I certify that the foregoing memorandum was prepared with the Microsoft Word processing program in 12-point Times New Roman font and contains 6,682 words (excluding the case caption, signature block, any required certificates, any table of contents, any table of authorities, and any attachments, exhibits, affidavits, and other addenda), according to the program's word count, and complies with the applicable word limit set out in Local Civil Rule 7.2.

This 30th day of June, 2023.

By:      /s/ Dylan J. Castellino
             Dylan J. Castellino

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing (NEF) to all CM/ECF registered attorneys listed on the NEF, and I further certify that I have mailed (and e-mailed) the same to the following non-CM/ECF participants:

>Sean B. Mayo
>P.O. Box 2922
>Rocky Mount, NC 27802
>Pro Se Plaintiff

This 30th day of June, 2023.

By: _____/s/ Dylan J. Castellino_____
Dylan J. Castellino