**Sean B. Mayo**,

        Plaintiff,

v.

**Rocky Mount Police Department**, et al.,

        Defendants.

**Order &
Memorandum & Recommendation**

    Plaintiff Sean B. Mayo claims that various government officials illegally searched his property and then arrested him without probable cause. Three defendants, a local probation office and two probation officers, have asked the court to dismiss his claims against them. They argue that the court lacks subject-matter jurisdiction over this dispute and personal jurisdiction over them. They also argue that Mayo's complaint fails to state a claim against them.

## I.    Background[1]

    On August 11, 2019, Mayo, who was not on probation, spoke with Kiwana Johnson, a probation officer. Supplemental Johnson Compl at 1, D.E. 52–2. The officer was looking for a woman with the last name of Lynch, who Johnson apparently believed lived with Mayo. *Id.* But Mayo told Johnson that Lynch no longer lived with him. *Id.*

    The next day, Mayo took Lynch to the probation office, and then they both went back to his house. *Id.* When they arrived, Mayo found two probation officers, Johnson and Dennis Parris,

---

[1] The factual allegations are taken from Mayo's Complaint and the supplemental documents he filed.

in his backyard. *Id.* Lynch went to talk to the probation officers and Mayo went into his house. Supplemental Parris Compl. at 1, D.E. 52–1.

Lynch, Johnson, and Parris had been speaking for about an hour when Mayo left his house and got into his work truck to go to the grocery store. *Id.* Parris responded by getting behind Mayo's truck, drawing his gun, and ordering Mayo out of the truck. *Id.* After Mayo did so, he went back into his house to call his sister and tell her what had happened. *Id.*

The probation officers then requested assistance from the Rocky Mount Police Department. Supplemental Craft Compl. at 1, D.E. 52. Officer C.S. Craft arrived at Mayo's home and spoke with Parris. Supplemental Parris Compl. at 2. Craft's body camera recorded the fact that he spoke with Parris, but it did not record any audio. *Id.* At some point, Craft asked Mayo to come outside. Supplemental Craft Compl. at 1.

Mayo claims that Craft, Johnson, Lynch, and Parris all conspired to plant drugs and guns on his property. Supplemental Johnson Compl. at 1. In exchange for Lynch's help in planting evidence, the officers agreed not to drug test her and to not arrest her. *Id.* at 1–2. And body camera footage reflects that the probation officers told Craft that there were drugs and a gun on Mayo's property before they searched it. *Id.* at 2.

Officers eventually searched a "broken down truck" and a storage building on Mayo's property. Compl. at 2. Lynch told them to get a warrant before doing so, but they did not. Supplemental Craft Compl. at 1–2. As part of this search, officers involved a drug dog. Compl. at 2. Either the officers or the dog said that drugs were present, but none were found. *Id.* But officers did locate a gun next to Mayo's truck, which they said was his. *Id.*; Supplemental Parris Compl. at 1.

Eventually, officers asked Mayo if Lynch could stay at his house. Supplemental Johnson Compl. at 2. Mayo claims this is more evidence showing that they knew she did not live there. *Id*.

Mayo was eventually arrested. Compl. at 2. But when he appeared before a state magistrate, that official ruled that officers had illegally searched Mayo's property. *Id.*

Nearly three years later, Mayo sued over the events of August 12, 2019. He named the Rocky Mount Police Department and the Rocky Mount Community Corrections Judicial Center Probation Department as defendants. Compl. at 1. He alleged that the defendants conducted an illegal search, falsely arrested him, and held him against his will. *Id.* at 2.

Mayo then filed several motions with the court. One sought an order requiring the defendants to disclose the names of the officers that allegedly violated his constitutional rights. D.E. 17. The court granted that request and allowed Mayo to supplement his complaint to add factual allegations against the new defendants. D.E. 42, 44.

The court also issued summonses to Craft, Johnson, and Parris. D.E. 65. Someone named Bobby Lynch served the summons on each defendant. D.E. 69–71. She left Johnson's and Parris's summonses with the "front desk officer" at the probation department. D.E. 69, 70.

Johnson, Parris, and the Probation Department (collectively, the "Probation Defendants") then moved to dismiss that is pending before the court. Mayo later moved for an extension of time to properly serve Johnson and Parris. D.E. 98.

## II. Discussion

The Probation Defendants bring several challenges against Mayo's claims against them. First, they argue that the court lacks subject matter jurisdiction because the basis for the court's jurisdiction is not evident from the face of his pleadings. Second, they argue the court lacks personal jurisdiction over them because he did not properly serve them with the Summons and

3

Complaint. And finally, they argue that the allegations in Mayo's pleadings do not state a claim for relief. After considering these arguments, the undersigned recommends that the court dismiss the claims against the Probation Office and the probation officers in their official capacities, but that all other claims proceed.

### A. Subject-Matter Jurisdiction

#### 1. Subject-Matter Jurisdiction Over the Case

The Probation Defendants claim that the court should dismiss the entire case because Mayo has failed to establish that it has subject-matter jurisdiction over this controversy. They maintain that "the jurisdictional basis for this lawsuit is unknown either from the face of the Complaint or the additional text" in Mayo's supplements. Mem. in Supp. at 11, D.E. 79. And they argue that if Mayo seeks to bring state-law tort claims, he has not established a basis for the court to exercise supplemental jurisdiction over those claims. *Id.* at 13–14.

These arguments are frivolous. Mayo's pleadings allege that he was the subject of an illegal search and was wrongfully arrested. If he is correct, then the defendants violated his Fourth Amendment right to be free from unlawful searches and seizures. Federal law allows people to sue anyone who, acting under state law, deprives that person of their rights under the Constitution and laws of the United States. 42 U.S.C. § 1983. Thus this court may hear this case under its federal question jurisdiction. 28 U.S.C. § 1331.

And since this court may properly hear Mayo's federal claims, it may exercise supplemental jurisdiction over any state law tort claims that are "part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). But Mayo has brought no state-law tort claims. Instead, his claims are all based on a violation of his federal constitutional rights.

The Probation Defendants say that since Mayo did not expressly set out the "statutory basis for action" he has not established subject-matter jurisdiction. Mem. in Supp. at 11. But pleadings by pro se parties are not held to the same exacting standard as those that apply to represented parties. Courts must give pleadings by pro se parties a liberal construction, considering their lack of formal legal training. *See Estelle* v. *Gamble*, 429 U.S. 97, 106 (1976). When analyzed under this standard, the allegations in Mayo's pleadings make clear that he is seeking to recover for a violation of his federal constitutional rights. This type of case falls squarely in this court's jurisdiction.

In their next argument, the Probation Defendants argue that the court lacks subject-matter jurisdiction over Mayo's claims because they are frivolous. Mem. in Supp. at 14–16. But they provide no case law to support the position that a court lacks jurisdiction over frivolous claims.

Certainly a court can dismiss frivolous claims on the merits, *see, e.g.*, 28 U.S.C. § 1915(e)(2)(B)(i), but—like frivolous arguments—the frivolous nature of a claim does not deprive a court of jurisdiction to decide it. So even if the court were to determine that Mayo's claims were frivolous, that would not provide a basis to dismiss the claim for lack of subject-matter jurisdiction.

As final argument, the Probation Defendants argue that the court lacks subject-matter jurisdiction because the statute of limitations expired. In support of this position, they cite a case from this court, *Brown* v. *Gibson*, No. 4:17-CV-00180, 2018 WL 4113339 (E.D.N.C. Aug. 29, 2018), claiming that the court "dismiss[ed] official capacity claims . . . brought under 1983 for lack of subject matter [sic] jurisdiction due [to] the expiration of the statute of limitations[.]" Mem. in Supp. at 16–17.

This argument misrepresents the holding in *Brown*. In that case, the plaintiff brought a claim under Title VII for employment discrimination, a claim under 42 U.S.C. § 1981, and a claim

5

Case 5:22-cv-00289-M-RN    Document 107    Filed 12/11/23    Page 5 of 17

under 42 U.S.C. § 1983. *Brown*, 2018 WL 4113339, at *1. After finding that the plaintiff had not established that she received a right-to-sue letter from the EEOC, "the court dismisse[d] without prejudice plaintiff's Title VII claims for lack of subject-matter jurisdiction[.]" *Id.* at 3. The court then discussed whether the remaining claims were barred by the statute of limitations. *Id.* The court ultimately dismissed some of the plaintiff's claims as time-barred, but it did not state that the expiration of the statute of limitations deprived the court of jurisdiction to hear the claims. *Id.* at 4–5. So *Brown* does not support the Probation Defendants' position.

The Probation Defendants provide no other reason for the court to conclude that the expiration of the statute of limitations for any of Mayo's claims would deprive it of subject-matter jurisdiction. And it is unlikely they could do so if they tried. It "is the rare statute of limitations that can deprive a court of jurisdiction" and it is "plain that most time bars are nonjurisdictional." *United States* v. *Wong*, 575 U.S. 402, 410 (2015). Instead, "procedural rules, including time bars, cabin a court's power only if Congress has 'clearly state[d]' as much." *Id.* (quoting *Sebelius* v. *Auburn Reg. Med. Ctr.*, 568 U.S. 145, 153 (2013)). The Probation Defendants have not pointed to a clear statement of congressional intent to make the statute of limitations for § 1983 actions jurisdictional in nature. Thus, this argument fails.[2]

### 2. Subject-Matter Jurisdiction Over the Probation Department and the Individual Defendants in their Official Capacities

Besides arguing that the court lacks subject-matter jurisdiction generally, the Probation Defendants argue that the Eleventh Amendment limits its jurisdiction. The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another

---

[2] Since the Probation Defendants have not made such an argument, the undersigned expresses no opinion on whether the statute of limitations would bar Mayo's claims on the merits.

State or by Citizens or Subjects of any Foreign States." U.S. Const. amend. XI. The Amendment guarantees that "nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of Ala.* v. *Garrett*, 531 U.S. 356, 363 (2001). State agencies and officials sued in their official capacities are also entitled to immunity under the Eleventh Amendment because they are merely alter egos of the state itself. *Regents of the Univ. of Cal.* v. *Doe*, 519 U.S. 425, 429 (1997); *Will* v. *Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The immunity applies to suits brought by a state's own citizens or the citizens of another state. *Edelman* v. *Jordan*, 415 U.S. 651, 666– 68 (1974).

At the time of the events here, the Community Corrections section of North Carolina's Division of Adult Corrections, which was then part of the state's Department of Public Safety, was responsible for overseeing probationers. N.C. Gen. Stat. § 15A-1343.2(b) (2002). Since it appears that the Rocky Mount Community Corrections Judicial Center Probation Department was a state agency, it is entitled to Eleventh Amendment immunity and should be dismissed from this case. *See Myers* v. *North Carolina*, No. 5:12–CV–714–D, 2013 WL 4456848, at *3 (E.D.N.C. Aug. 16, 2013) ("State agencies and state officials acting in their official capacities also are protected against a claim for damages because a suit against a state office is no different from a suit against the state itself.").

Similarly, any claims against Johnson and Parris in their official capacities would be barred by the Eleventh Amendment.[3] *Id.* Thus they are entitled to dismissal of those claims.

Although a state can waive Eleventh Amendment immunity or Congress can abrogate it, *see Will*, 491 U.S. at 66, there is no sign that either exception applies here. Therefore, the District Court should dismiss Mayo's claims against the Rocky Mount Community Corrections Judicial

---

[3] It is unclear from the pleadings whether Mayo wishes to sue Johnson and Parris in their official capacity as well as their individual capacity. For this section, the court assumes he does.

7

Center Probation Department[4] as well as his claims against Johnson and Parris in their official capacities.

B. **Personal Jurisdiction**

The Probation Defendants also argue that the court lacks personal jurisdiction over them because Mayo has failed to properly serve them. It appears that for each of the Probation Defendants, a summons was delivered to a "front desk clerk" or "front desk officer" at a probation office. This method of service does not comply with the Federal Rules. But in light of Mayo's pro se status, his attempts to serve the Probation Defendants, and his recent request for more time to properly serve them, he will be given more time to properly effect service. Thus the motion to dismiss should be denied.

The Federal Rules of Civil Procedure allow a party to seek dismissal of a claim if there has been insufficient service of process. Fed. R. Civ. P. 12(b)(5). Such a motion implicates the court's jurisdiction over the moving party because "[i]n the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros.* v. *Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Once a party claims they have been improperly served, "the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4." *O'Meara* v. *Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006).

To meet that burden, the plaintiff must show that they have done several things. To begin with, the plaintiff must have served the summons along "with a copy of the complaint[.]" Fed. R. Civ. P. 4(c)(1). Next, the plaintiff must show that those documents were served by someone "who is at least 18 years old and not a party" to the action. *Id.* Rule 4(c)(2). And finally the plaintiff must

---

[4] The Probation Department also argues that it is not an entity that can be sued. Mem. in Supp. at 26. In light of the ruling on the Eleventh Amendment issue, the undersigned need not address that argument.

establish that the service occurred in the appropriate manner depending on the type of defendant named in the complaint. *Id.* Rule 4(e)-(j).

Parris and Johnson are, at least for purposes of any individual capacity claims, considered natural persons and appear to be present in the United States. Thus Rule 4(e) spells out how Mayo may serve them. There are several ways he may do so.

One method of proper service is to "deliver[] a copy of the summons and of the complaint to the individual personally[.]" *Id.* Rule 4(e)(2)(A). Another is to "leav[e] a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there[.]" *Id.* Rule 4(e)(2)(B). Mayo could also see that the necessary documents were delivered "to an agent authorized by appointment or by law to receive service of process." *Id.* Rule 4(e)(2)(B).

Rule 4 also incorporates the methods of service allowed under the law of the state in which the court is located. *Id.* Rule 4(e)(1). North Carolina law provides several additional methods of service for natural persons. It authorizes service by "mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee." N.C. Gen. Stat. § 1A-4, Rule 4(j)(1)(c). A party can also effect proper service under North Carolina law by "depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the party to be served, delivering [them] to the addressee, and obtaining a delivery receipt." *Id.* Rule 4(j)(1)(d). And a final option for proper service is "mailing a copy of the summons and of the complaint by signature confirmation as provided by the United States Postal Service, addressed to the party to be served, and delivering to the addressee." *Id.* Rule 4(j)(1)(e).

None of these methods of service authorize leaving the summons and complaint with someone at the defendant's workplace. Thus, Mayo has not properly served Parris and Johnson in their individual capacities.

Nor has he properly served the Probation Defendants in their official capacities. As noted earlier, Mayo's claims against the Probation Office and the officers in their official capacities are claims against the State of North Carolina. Thus, Rule 4(j) of the Federal Rules of Civil Procedure governs service of process. That rule explicitly provides for service on "[a] state . . . or any other state-created governmental organization" by "delivering a copy of the summons and of the complaint to its chief executive officer[.]" Fed. R. Civ. P. 4(j)(2) & (j)(2)(B).

Rule 4(j) also incorporates the methods of service of process under state law. *Id.* Rule 4(j)(2)(A). North Carolina law allows service on state agencies in three ways. First, "by personally delivering a copy of the summons and of the complaint to the process agent appointed by the agency[.]" N.C. Gen. Stat. § 1A-4, Rule 4(j)(4)(a). Second, "by mailing a copy of the summons and complaint, registered or certified mail, return receipt requested, addressed to such process agent[.]" *Id.* And third, "by depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the process agent, delivering to the addressee, and obtaining a delivery receipt." *Id.*

Again, delivery to the person sitting at the front desk of the probation office does not comply with the Federal Rules' requirements for service on a state agency. So Mayo has not properly served the Probation Office or the probation officers in their official capacity.

But just because the defendants were not properly served does not mean that they are automatically entitled to be dismissed from this case. In cases such as this where defendants have actual notice of the suit despite imperfect service, "every technical violation of the rule or failure

10

Case 5:22-cv-00289-M-RN     Document 107     Filed 12/11/23     Page 10 of 17

of strict compliance may not invalidate the service of process." *Armco, Inc.* v. *Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). "But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Id.* And this is true even though Mayo is not represented by an attorney. *Brinson* v. *Fred Smith Co.*, No. 5:22-CV-197-D, 2023 WL 2614539, at *3 (E.D.N.C. Mar. 23, 2023).

Ultimately, the court has discretion whether to dismiss the action or allow Mayo another chance to properly serve the defendants. *See Scott* v. *Md. State Dep't of Lab.*, 673 F. App'x 299, 304 (4th Cir. 2016); *Cellular Sales of Knoxville, Inc.* v. *Chapman*, No. 1:19CV768, 2020 WL 32992, at *3 (M.D.N.C. Jan. 2, 2020). In considering how the court should exercise this discretion, the undersigned is aware that pro se parties such as Mayo receive substantial leeway from courts given their lack of legal training and the other challenges of self-representation. And despite the lack of proper service, the Probation Defendants have been full participants here and have moved for summary judgment in their favor. So it is not as if the improper service has caused confusion or otherwise prejudiced the Probation Defendants' rights. And Mayo has asked for additional time to perfect service.

Given all that, it is appropriate to allow Mayo a final chance to properly serve the Probation Defendants. Counsel for the Probation Defendants has suggested that the home addresses for the individual probation officers has been provided in their initial disclosures, so Mayo should be able to properly serve them. And the Probation Defendants' supporting brief has explained how to serve the Probation Office and the probation officers in their official capacities.

So the court will grant Mayo's motion for an extension of time to serve the Probation Defendants. In light of that, the motion to dismiss based on improper service of process should be denied.

11

### C. Failure to State a Claim

The Probation Defendants argue that Mayo's complaint should be dismissed because it fails to state a claim upon which relief may be granted. The Supreme Court has explained that to withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). The Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, while a court must accept all the factual allegations in a complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

After *Iqbal*, a court considering a motion under Rule 12(b)(6) must subject a complaint to a two-part test. First, the court must identify the allegations in the complaint that are not entitled to the assumption of truth because they are conclusory or mere formulaic recitations of the elements of a claim. *Id.* at 679. Then, taking the remaining factual allegations as true, the court must determine whether the complaint "plausibly give[s] rise to an entitlement to relief." *Id.* If, after conducting this two-part analysis, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* (internal citation and quotations omitted). If a party fails to show that they are entitled to relief, the court must dismiss the deficient claims.

### 1. Unlawful Search

Mayo claims that he was the victim of an illegal search. Such a claim implicates the Fourth Amendment's prohibition on unreasonable searches.[5] In general the Fourth Amendment requires that law enforcement "secure a warrant before conducting a search." *Maryland* v. *Dyson*, 527 U.S. 465, 466 (1999)." But the Probation Defendants claim that no warrant was necessary here because he was living with a probationer who was subject to warrantless searches of their person, residence, and vehicle.

The problem with that argument is that the court must accept the allegations in Mayo's pleadings as true at this stage of the proceedings. He alleges that he was not on probation and that the probationer no longer lived with him, a fact he claims to have shared with Johnson the day before the search. Compl. at 2; Supplemental Johnson Compl. at 1, D.E. 52–2. The Probation Defendants have provided no argument about why, if Mayo's allegations are true, they were entitled to conduct a warrantless search of his property and vehicle.

Instead, they claim that Mayo's allegation is false and that the probationer lived with him on the day of the search. To support this claim, they rely on a declaration from a state employee claiming that the probationer had informed Community Corrections that she lived at Mayo's address. But the court cannot rely on the declaration's statements in considering a motion to dismiss.

The Probation Defendants also argue that Mayo failed to tie them to the search of his truck or storage unit. But he alleges in his complaint that when he arrived home he found "two probation officers" there. Compl. at 2. He adds, "The probation officers . . . searched my broken down truck

---

[5] The Fourth Amendment applies to the states through the Fourteenth Amendment. *Mapp* v. *Ohio*, 367 U.S. 643, 655 (1961).

13

and storage building with a dog saying they smelled drugs." *Id.* So the Complaint ties the probation officers to the search of the truck and storage unit.

Once again, the Probation Defendants rely on a declaration to claim that this statement is untrue. And, once again, the undersigned must reject this argument as the analysis of a Rule 12(b)(6) motion relies on the allegations of the complaint alone.

So the portion of the Probation Defendants' motion seeking to dismiss Mayo's illegal search claim should be denied.

### 2. Wrongful Arrest

The Probation Defendants also claim that Mayo's wrongful arrest claim should be dismissed because his complaint "is devoid of an allegation that the probation officers arrested him." Mem. in Supp. at 9. But this claim ignores the Complaint's allegations. In describing the actions the probation officers took, he says that they "[a]rrested me." Compl. at 2. So this argument fails and the motion to dismiss the false arrest claim should be denied.

### 3. Unlawful Detention

Finally, the Probation Defendants ask the court to dismiss Mayo's unlawful detention claim. Mem. in Supp. at 9–11. They briefly argue that his detention was permissible as a safety precaution. Then they claim that Mayo's detention was an investigatory detention and that they could require him to stay on his property while they conducted the probationary search. *Id.* at 10. And finally, they argue that the court should disregard Mayo's allegations. *Id.* at 10–11.

The Probation Defendants provide no support for their claim that Mayo's detention was appropriate as a matter of officer safety. While they claim that probation officers generally have the power to detain non-probationers to ensure officer safety, Mem. in Supp. at 9, they provide no

legal argument that such a detention was appropriate under the Fourth Amendment based on Mayo's allegations.

As the Fourth Circuit has noted, "'it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel,' and 'perfunctory and undeveloped arguments . . . are waived.'" *Steves & Sons, Inc.* v. *JELD-WEN, Inc.*, 988 F.3d 690, 727 (4th Cir. 2021) (quoting *Judge* v. *Quinn*, 612 F.3d 537, 557 (7th Cir. 2010)). So by failing to properly develop this argument, the Probation Defendants have waived it.

The Probation Officers' argument that Mayo's detention was permissible as an investigatory detention also fails.[6] The Fourth Circuit has explained that "it is clearly established that an investigatory detention of a citizen by an officer must be supported by reasonable articulable suspicion that the individual is engaged in criminal activity." *United States* v. *Black*, 707 F.3d 531, 537 (4th Cir. 2013) (citing *Terry* v. *Ohio*, 392 U.S. 1, 21 (1968)). Reasonable suspicion is an objective test that must exceed an "inchoate and unparticularized suspicion or 'hunch'[,]" and be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [] intrusion." *Terry*, 392 U.S. at 21, 27. The court must assess the existence of reasonable suspicion based on the totality of the circumstances. *Navarette* v. *California*, 572 U.S. 393, 397 (2014).

The Probation Defendants make no attempt to establish that there was reasonable suspicion to believe that Mayo was engaged in a crime when they detained him. Mem. in Supp. at 10. Nor

---

[6] Frankly, it is unclear whether this argument is a different one from the officer-safety-based argument or part of the same argument. Regardless, there is nothing in the record that the court may consider at this point establishing reasonable suspicion to believe Mayo was dangerous. The court would need to make such a finding before concluding that office safety concerns allowed Mayo's detention. *See, e.g.*, *United States* v. *Chafin*, No. 3:19–00200, 2021 WL 4204336, at *2 (S.D.W. Va. Sept. 15, 2021) ("Further, an officer is permitted to detain a person by placing the person in handcuffs, in the interest of officer safety, once there is a reasonable suspicion that the person may be dangerous.").

15

do Mayo's pleadings contain facts that show that reasonable suspicion existed. So there is no basis to conclude that Mayo's detention was a permissible investigatory detention.

It appears that the Probation Defendants are arguing that Mayo's detention was an investigatory one because the Fourth Circuit has held that warrantless searches of probationers "'are reasonable under the Fourth Amendment.'" Mem. in Supp. at 10 (quoting *United States* v. *Midgette*, 478 F.3d 616, 624 (4th Cir. 2007)). But that point does nothing to establish the appropriateness of detaining a someone who is not on probation during a probationary search. So this argument is not persuasive.

The final argument against Mayo's unlawful detention claim is that the facts surrounding his claim are not to be believed. Mem. in Supp. at 10–11. But nothing about Mayo's allegations is so outlandish or unbelievable that they are not entitled to the presumption of truthfulness the court must apply at this stage.

Thus, the Probation Defendants' motion to dismiss Mayo's unlawful detention claim should be denied.

### III. Conclusion

For all these reasons, Mayo's motion for additional time to serve the Parris and Johnson is granted. D.E. 98. In its discretion, the court also extends its time for him to serve the Probation Department.

Mayo must submit properly addressed summonses to the Clerk of Court within 14 days from entry of this order. At this point, the Probation Defendants should have disclosed Johnson's and Parris's last known address to Mayo. *See* Fed. R. Civ. P. 26(a)(1)(A)(i). If they have not, they must, no later than December 11, 2023, either provide those addresses to Mayo or notify him that their counsel will accept service on their behalf. Mayo must properly serve the Probation

Defendants within 14 days after he receives the summonses. If he does not do so, the court may dismiss them from this case.

As for the motion to dismiss (D.E. 78), the undersigned recommends that the District Court dismiss the Rocky Mount Community Corrections Judicial Center Probation Department and Johnson and Parris in their official capacities from this case. The rest of the motion should be denied.

The Clerk of Court must serve a copy of this Memorandum and Recommendation ("M&R") on each party who has appeared here. Any party may file a written objection to the M&R within 14 days from the date the Clerk serves it on them. The objection must specifically note the portion of the M&R that the party objects to and the reasons for their objection. Any other party may respond to the objection within 14 days from the date the objecting party serves it on them. The district judge will review the objection and make their own determination about the matter that is the subject of the objection. If a party does not file a timely written objection, the party will have forfeited their ability to have the M&R (or a later decision based on the M&R) reviewed by the Court of Appeals.

Dated: December 8, 2023

_____
Robert T. Numbers, II
United States Magistrate Judge