IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:22-cv-00289-M-RN

SEAN B. MAYO,

    Plaintiff,

vs.

ROCKY MOUNT POLICE DEPARTMENT, et al,

    Defendants.

**SUPPLEMENTAL BRIEF IN SUPPORT OF OFFICER CRAFT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Officer C.S. Craft ("Officer Craft"), by and through his undersigned counsel, and pursuant to the Court's Order entered December 11, 2023 (D.E. 108), submits this Supplemental Brief in Support of his Motion for Summary Judgment (D.E. 89).

**A. PLAINTIFF HAS NOT ALLEGED A CLAIM AGAINST OFFICER CRAFT IN HIS OFFICIAL CAPACITY.**

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citations omitted). In contrast, claims against government employees in their "official capacities" represent merely " 'another way of pleading an action against an entity of which an officer is an agent.' " Id. (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). A claim against a police officer in his official capacity is, for purposes of § 1983, functionally a claim against the municipality. Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469 (4th Cir. 2013).

Where, as in this case, a plaintiff does not allege capacity specifically in the complaint, "the Court must examine the nature of the plaintiff's claims, the relief sought, and the course of

proceedings to determine the capacity in which [an officer] is being sued." Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995). In conducting such examination, the Fourth Circuit has considered several factors, including "the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint," which would indicate the suit has been filed against an officer in his personal capacity, and "the nature of any defenses raised in response to the complaint," including qualified immunity, the assertion of which "indicates that the defendant interpreted the plaintiff's action as being against him personally." Id. (citations omitted).

In this case, the Amended Complaint (D.E. 1, 52, 52-1, 52-2) contains no allegations that Officer Craft acted in accordance with any unconstitutional policy or custom of the City of Rocky Mount (the "City"). There is no indicia of such a policy or custom on the face of the Amended Complaint. (D.E. 1, 52, 52-1, 52-2.) Instead, Plaintiff alleges that "Officer Craft didn't present willingly do [sic] process of the law[,]" which does not attribute an alleged failure to "[g]et a search warrant beforehand" to any policy or custom of the City. (D.E. 52 at 2.) Officer Craft moved for summary judgment on the basis of qualified immunity, among other things, with the understanding that Plaintiff's action was a personal-capacity suit. The City has never been named as a party, and to the extent Plaintiff purported to do so by suing the "Rocky Mount Police Department" ("RMPD"), the claims against RMPD have been dismissed. (D.E. 95.) As Plaintiff cannot state a claim against Officer Craft in his official capacity without alleging, with sufficient factual support, that his injuries were proximately caused by "an official policy or custom" of the City, see Simmons v. Corizon Health, Inc., 136 F. Supp. 3d 719, 723 (M.D.N.C. 2015), the Amended Complaint should not be read to include a § 1983 claim against Officer Craft in his official capacity.

B.  **ASSUMING ARGUENDO PLAINTIFF HAS ASSERTED A CLAIM AGAINST OFFICER CRAFT IN HIS OFFICIAL CAPACITY, OFFICER CRAFT IS ENTITLED TO SUMMARY JUDGMENT ON SUCH A CLAIM.**

Assuming *arguendo* that Plaintiff's Amended Complaint does include a § 1983 claim against Officer Craft in his official capacity, Officer Craft is nevertheless entitled to summary judgment on such a claim. If, as Officer Craft contends, there was no violation of Plaintiff's constitutional or statutory rights, then any official capacity claim against Officer Craft should also fail as a matter of law. See Waybright v. Frederick Cnty., 528 F.3d 199, 203 (4th Cir. 2008) ("[M]unicipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [police] officer,' at least in suits for damages." (quoting City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)), applied in McMahan v. Griffin, No. 1:22-CV-28, 2023 WL 5341285, at *24 (W.D.N.C. Aug. 17, 2023). Going one step farther, even if there were an underlying violation, Officer Craft is entitled to summary judgment as to any official capacity claim against him because the City cannot be held liable on a *respondeat superior* theory, Sharpe v. Winterville Police Dep't, 480 F. Supp. 3d 689, 701 (E.D.N.C. 2020), aff'd, 59 F.4th 674 (4th Cir. 2023), and there is no evidence to support the necessary elements of a Monell claim. That is, there is no evidence demonstrating that the search or arrest, assuming *arguendo* either was unlawful, resulted from an official policy or custom of the City.

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694 (explaining that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id.; see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997) ("The Plaintiff must also demonstrate that, through its deliberate conduct, the

municipality was the 'moving force' behind the injury alleged." (emphasis omitted)).

"The Supreme Court has made it abundantly clear that a Plaintiff seeking to impose Monell liability bears a heavy burden." Thompson v. City of Charlotte, No. 3:20-CV-370, 2023 WL 5493590, at *11 (W.D.N.C. Aug. 24, 2023). That is, " '[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.' " Id. (quoting Brown, 520 U.S. at 405); see also Gantt v. Whitaker, 203 F. Supp. 2d 503, 509 (M.D.N.C. 2002) ("Plaintiff must present sufficient evidence for a reasonable fact finder to conclude that his injury, if any, resulted from an official policy or custom . . . in order to survive summary judgment."), aff'd, 57 F. App'x 141 (4th Cir. 2003). Plaintiff has not met his heavy burden in this case. There is no evidence for a reasonable fact finder to conclude that Plaintiff's injury, if any, resulted from an official policy or custom of the City. As such, Officer Craft is entitled to summary judgment with respect to any official capacity claim against him.

**1.  There is No Evidence that Officer Craft Violated Plaintiff's Constitutional Rights in Furtherance of Some Municipal Policy or Custom.**

In the context of a Monell claim, there are four ways in which a policy or custom may be established:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999) (citations omitted)). Plaintiff has not alleged or proffered evidence of a policy or custom through any of these four theories.

### a. "Express Policy"

Plaintiff has not alleged or produced evidence suggesting the challenged conduct "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the City]." Monell, 436 U.S. at 690. The plaintiffs in Monell challenged an official policy that compelled pregnant employees to take unpaid leave before it was required for medical reasons. Id. at 660–61. But in this case, the Amended Complaint is devoid of any reference to an express policy or custom of the City; Plaintiff instead focuses entirely on the individual conduct of Officer Craft. (D.E. 52 at 2.) There is likewise no evidence that any alleged constitutional violation was taken in furtherance of an express policy of the City. To the extent that Plaintiff relies upon an "express policy" for purposes of an official capacity claim against Officer Craft, such a claim fails as a matter of law.

### b. "Decision of a Person with Final Policymaking Authority"

"Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (footnote omitted). "To qualify as a final policymaking official, a municipal official must have the responsibility and authority to implement final municipal policy with respect to a particular course of action." Riddick v. Sch. Bd. of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000) (internal quotation marks omitted). While "it is true that a municipality may delegate its final policymaking authority to other officials or governing bodies," Hunter v. Town of Mocksville, 897 F.3d 538, 555 (4th Cir. 2018) (citing Spell v. McDaniel, 824 F.2d 1380, 1387 (4th Cir. 1987)), our courts "never 'assum[e] that municipal policymaking authority lies somewhere other than where the applicable law purports to put it,' " id. (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988) (plurality opinion)). "The fact that an official has discretion in the performance of his official duties," moreover, "does not mean that those acts represent official

-5-

Case 5:22-cv-00289-M-RN     Document 111     Filed 12/21/23     Page 5 of 15

policy." Gantt, 203 F. Supp. 2d at 509; see also Praprotnik, 485 U.S. at 127 ("When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality."). Rather, the official must have 'final authority' over government policy with respect to the action in question for municipal liability to be triggered." Gantt, 203 F. Supp. 2d at 509 (citing Pembaur, 475 U.S. at 481–82) (rejecting the notion that a deputy sheriff had "final policymaking authority" within the sheriff's office).

Plaintiff has not alleged or presented any evidence suggesting Officer Craft is a "final policymaking official" possessing responsibility and authority to implement final municipal policy with respect to searches and seizures. Indeed, the Court has recognized that "under North Carolina law, police officers do not possess final policymaking authority." Sharpe, 480 F. Supp. 3d at 701–02 (citations omitted). To hold otherwise "would be akin to creating a species of *respondeat superior* liability for [municipalities] for the acts of their officers, which is prohibited." Gantt, 203 F. Supp. 2d at 510 (citing Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992)) (rejecting argument that deputy sheriff had "final policymaking authority" within sheriff's office). Plaintiff has not alleged or presented any evidence to support the notion that the City delegated to Officer Craft the authority to create and implement final municipal policy concerning searches and seizures, either. As the court explained in Hadley v. City of Mebane, No. 1:18-CV-366, 2020 WL 1539724 (M.D.N.C. Mar. 31, 2020), "[t]his is a situation where an 'official's discretionary decisions are constrained by policies not of that official's making.' " Id. at *17 (quoting Praprotnik, 485 U.S. at 127). To the extent that Plaintiff asserts an official capacity claim based on a policy established "through the decisions of a person with final policymaking authority," such a claim fails as a matter of law. See Tart v. Johns, No. 1:18-CV-598, 2021 WL 11139974, at *3

(M.D.N.C. June 11, 2021) (recommending summary judgment for defendant as to any official capacity claim where plaintiff failed to demonstrate that defendant "had final policy-making authority with respect to any policy that may have caused [plaintiff's] injury"), recommendation adopted, Judgment (June 19, 2021), D.E. 134; see also Tucker v. Kivett, No. 1:18-CV-897, 2019 WL 6841840, at *3 (M.D.N.C. Dec. 16, 2019) (same where plaintiff offered no evidence that defendants had final policy making authority), recommendation adopted, Order & Judgment (Jan. 16, 2020), D.E. 92.

### c. "An Omission, Such as a Failure to Properly Train Officers, that 'Manifest[s] Deliberate Indifference to the Rights of Citizens.'"

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 822–82 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell." (citations omitted)). To impose liability under § 1983, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Id. (quoting Canton v. Harris, 489 U.S. 378, 388 (1989)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. (quoting Brown, 520 U.S. at 410). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. (citations omitted).

A § 1983 claim for improper training and supervision that fails to identify other specific instances of misconduct to show a pattern of similar constitutional violations is subject to dismissal. Simmons, 136 F. Supp. 3d at 721–24; see also Hill v. Robeson Cnty., 733 F. Supp. 2d

676, 688 (E.D.N.C. 2010) (dismissing § 1983 claim for improper training against county where plaintiff "failed to allege any pattern of similar constitutional violations"). In Simmons, the plaintiffs filed a § 1983 action against the sheriff and others after an inmate sustained a catastrophic brain injury during his incarceration. Simmons, 136 F. Supp. 3d at 721. The plaintiffs sued the sheriff in his official capacity, making it necessary for the plaintiffs to allege the inmate's injuries were proximately caused by "an official policy or custom of the Sheriff's office." Id. at 722. The plaintiffs claimed the sheriff and his employees had a policy or custom of deliberate indifference to the medical needs of prisoners. Id. In their complaint, the plaintiffs alleged an incident occurred one year prior to the inmate's brain injury in which another inmate died from a blood clot after being strapped to a restraining chair for an extended period of time. Id. The court dismissed the § 1983 claim against the sheriff because a single, isolated prior incident of medical neglect by the sheriff's office was far too isolated and unrelated to the injury suffered by the inmate to establish a policy or custom of deliberate indifference to medical needs of prisoners. Id. at 722–23.

The court in Simmons also construed the plaintiffs' "policy or custom argument" as a failure-to-train claim, which was dismissed for the same reason. Id. at 723. The court noted "[i]nadequate training 'may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference.' " Id. (quoting Canton, 489 U.S. at 390). As the court had already concluded, the plaintiffs failed to allege any prior incident that would have put the sheriff on notice that the training provided to his guards was inadequate. Id.

In this case, the Amended Complaint contains no allegation that the City improperly trained or supervised Officer Craft with respect to warrantless searches and seizures. And to the extent the Amended Complaint is construed to include an improper training and supervision theory, there is no factual support for it in the record. There is no evidence that reveals a pattern of similar

alleged constitutional violations by Officer Craft or other "untrained employees." Plaintiff has not identified a single prior incident that would have put the City on notice that its Fourth Amendment training and supervision program was "deficient." The only incident described in the Amended Complaint is the one involving Plaintiff himself. As such, it can hardly be said that the City "disregarded a known or obvious consequence of [its] actions." Connick, 563 U.S. at 61.

To the extent Plaintiff asserts a § 1983 claim for improper training and supervision against Officer Craft in his official capacity, Plaintiff's claim fails for other reasons. A § 1983 plaintiff must establish " 'a direct causal link' between 'a specific deficiency in training and the particular violation alleged.' " Hill, 733 F. Supp. 2d at 686–87 (quoting Buffington v. Baltimore Cnty., 913 F.2d 113, 122 (4th Cir. 1990)). To do so requires the plaintiff to "identify a specific deficiency in the officers' training; an allegation of general ineffectiveness is not sufficient." Gaddy v. Yelton, No. 1:10-CV-214, 2011 WL 3608023, at *7 (W.D.N.C. Aug. 16, 2011) (citing Spell, 824 F.2d at 1390).

In Maney, the court dismissed the § 1983 claims for improper training and supervision against the city because the plaintiff failed to identify a *specific* deficiency in the officer's training. Maney, 2013 WL 3779053, at *5. The plaintiff alleged the city and the police chief " 'failed to properly train their officers in the proper use of force, and proper use and handling of a K-9 unit' " and " 'failed to properly supervise [the defendant-officer] and/or employees in their use of force against an individual and their use of a K-9 unit.' " Id. (alterations omitted). The court found these allegations to be of "general ineffectiveness" in the officer's training, void of factual support, and insufficient to state a claim under § 1983. Id.

In this case, like the plaintiff in Maney, Plaintiff has not identified a specific deficiency in Officer Craft's training. There is no factual support in the Amended Complaint, or in the record,

to conclude the City's training program or the training provided specifically to Officer Craft was deficient. "One conclusory allegation claiming that [the City] failed to train its [officers], which has not even been made in this case, "doesn't cut it." Montgomery v. Johnston Cnty. Dep't of Soc. Servs., No. 5:23-CV-41, 2023 WL 5170082, at *9–10 (E.D.N.C. June 2, 2023), report & recommendation adopted, 2023 WL 4760710 (July 26, 2023). As such, any official capacity claim against Officer Craft premised on this theory of liability fails as a matter of law.

### d. "A Practice that is so 'Persistent and Widespread' as to Constitute a 'Custom or Usage with the Force of Law.'"

Plaintiff, likewise, has not alleged or demonstrated a practice by the City of conducting improper warrantless searches or seizures that could constitute a policy or custom. A municipal policy actionable under § 1983 may be established by showing a practice that is so "'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" Lytle, 326 F.3d at 471 (citations omitted). A plaintiff's burden on a Monell claim is difficult to meet: "[T]he challenged policy decision must be one that made the ultimate violation 'almost bound to happen, sooner or later,' rather than merely 'likely to happen in the long run." Jones v. Wellham, 104 F.3d 620, 627 (4th Cir. 1997) (quoting Spell, 824 F.2d at 1391); see also Tuttle, 471 U.S. at 824 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy Monell's requirement that the particular policy be the 'moving force' behind a constitutional violation.").

The Fourth Circuit has explained "a plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of her specific injury or that it was the moving force behind her deprivation." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999); see also Spell, 824 F.2d at 1387 (explaining how a custom can only be established by looking at the duration and frequency of its application such that the governing

body had actual or constructive knowledge of the same). In Holloman v. Markowski, 661 Fed. App'x. 797 (4th Cir. 2016), the plaintiff's son was shot by police officers after the plaintiff called for their help to take him into custody. Id. at 798–99. The plaintiff's son, who had bipolar disorder and was exhibiting bizarre behavior, fought the police while resisting arrest. Id. The plaintiff's complaint cited four specific instances of Baltimore police officers killing in the line of duty and a newspaper article describing an incident in which the city's officers had shot ten individuals with mental health issues that year. Id. at 799–800. However, the plaintiff did "not allege any facts showing that any of these incidents involved constitutional violations." Id. at 800. Because the plaintiff's allegations were "too speculative to state a plausible claim for municipal liability," the Fourth Circuit affirmed the dismissal of the plaintiff's Monell claim. Id.

In this case, the record is devoid of evidence that the City maintained a pattern, practice, custom, or policy of impermissible warrantless searches or seizures in this or any other context. Plaintiff has not identified any " 'other specific instances of police misconduct which would suggest that the incident here alleged was anything but a singular act by an individual officer.' " Maney, 2013 WL 3779053, at *4 (quoting Purcell v. City of Greensboro, No. 1:11-CV-577, 2012 WL 1718763, at *4 (M.D.N.C. May 14, 2012)). The only incident identified by Plaintiff is his own encounter with Officer Craft which is the subject of this lawsuit. (D.E. 52 at 2.) That encounter does not demonstrate a practice of unlawful searches or seizures that is so " 'persistent and widespread' as to constitute a 'custom or usage with the force of law.' " Lytle, 326 F.3d at 471 (citations omitted); see Shortz v. City of Montgomery, 267 F. Supp. 2d 1124, 1129 (M.D. Al. 2003) (holding plaintiff's citation to "his own arrest does not, by itself, show that there is a policy"), cited in McMahan v. Griffin, No. 1:22-CV-28, 2023 WL 5341285, at *23 (W.D.N.C. Aug. 17, 2023); see also Estate of Jones v. Martinsburg, 961 F.3d 661, 672 (4th Cir. 2020), as

amended (June 10, 2020) ("Because Monell liability cannot be predicated on a theory of *respondeat superior,* a single incident is almost never enough to warrant municipal liability.").

### 2. There is No Allegation or Evidence of an Affirmative Causal Link Between Any City Policy and the Alleged Constitutional Harm Sustained.

Finally, Plaintiff has neither alleged nor presented any evidence that his alleged injury stems from the furtherance of a municipal policy or custom related to warrantless searches or seizures. There must be an affirmative causal link between the "policy or custom" and the particular injury suffered by the plaintiff. Spell, 824 F.2d at 1389. There has been no allegation or evidence that any such policy or custom exists, much less that it was the " 'moving force' " behind the challenged conduct. See Brown, 520 U.S. at 404.

### CONCLUSION

Plaintiff has not alleged a § 1983 claim against Officer Craft in his official capacity. Assuming *arguendo* that Plaintiff's Amended Complaint does include a § 1983 claim against Officer Craft in his official capacity, however, Officer Craft is nevertheless entitled to summary judgment on such claim for the reasons set forth herein.

This 21st day of December, 2023.

                                                        By: /s/ Dylan J. Castellino
                                                               Dylan J. Castellino
                                                                State Bar No. 49123
                                                               dcastellino@poynerspruill.com
                                                               J. Nicholas Ellis
                                                               State Bar No. 13484
                                                               jnellis@poynerspruill.com
                                                               Poyner Spruill LLP
                                                               Post Office Box 353
                                                               Rocky Mount, NC 27802-0353
                                                               Tel: (252) 972-7093
                                                               Fax: (919) 783-1975
                                                               *Attorneys for Defendant Officer C.S. Craft*

## CERTIFICATE OF WORD COUNT

I certify that the foregoing memorandum was prepared with the Microsoft Word processing program in 12-point Times New Roman font and contains 3,874 words (excluding the case caption, signature block, any required certificates, any table of contents, any table of authorities, and any attachments, exhibits, affidavits, and other addenda), according to the program's word count, and complies with the applicable word and page limits set out in Local Civil Rule 7.2 and the Court's Order (D.E. 108).

This 21st day of December, 2023.

By: /s/ Dylan J. Castellino
Dylan J. Castellino

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing (NEF) to all CM/ECF registered attorneys listed on the NEF, and I further certify that I have mailed (and e-mailed) the same to the following non-CM/ECF participants:

>Sean B. Mayo
>P.O. Box 2922
>Rocky Mount, NC 27802
>*Pro Se Plaintiff*

This 21st day of December, 2023.

By: /s/ Dylan J. Castellino
Dylan J. Castellino