IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-000289-M

| | |
|---|---|
| **Sean B. Mayo**, <br><br> Plaintiff, <br><br> v. <br><br> **Rocky Mount Police Department**, et al., <br><br> Defendants. | **Show Cause Order & Memorandum & Recommendation** |

Nearly two years ago, Defendant Dennis Parris and his co-defendants[1] (collectively, the Probation Defendants) moved to dismiss Plaintiff Sean B. Mayo's claims, arguing that the court lacked subject-matter jurisdiction over them. The Probation Defendants maintained that the basis for the court's jurisdiction was not evident on the face of his complaint and that there was no basis to exercise jurisdiction over his state-law-based claims. The court rejected these arguments as frivolous, holding that Mayo's claims were rooted in federal law under the Fourth Amendment.

Months later, the court granted summary judgment on all but one of Mayo's claims—his illegal detention claim against Parris in his individual capacity—and set the case for trial in October 2024. Rather than prepare for trial, Parris filed yet another motion to dismiss, once again claiming the court lacked subject-matter jurisdiction. He now claims Mayo's remaining claim is a state-law false imprisonment claim, and since the court dismissed all his federal claims, it lacks jurisdiction to hear that claim. Alternatively, he argues that even if the claim arises under federal law, the court lacks jurisdiction because Mayo cannot prove Parris falsely arrested him.

---

[1] This order does not involve Defendants Rocky Mount Police Department and Officer C.S. Craft.

As with the earlier motion, these arguments are frivolous. Mayo's claims have always been federal, and even if they were not, Supreme Court precedent confirms the court retains jurisdiction to address any state-law claims. So there is no legal basis for Parris's arguments or the relief he seeks.

Given that this is the second time Parris has advanced frivolous arguments, Parris's attorney, Sonya Calloway-Durham, and the North Carolina Department of Justice must appear and show cause why they should not be sanctioned under Rule 11.

**I.     Background**

This saga began in August 2022, when Mayo filed suit and claimed that three years earlier he had been the victim of an illegal search, was falsely arrested, and was held against his will. Compl. at 2, D.E. 1. He named the Rocky Mount Police Department and the Rocky Mount Community Correction Judicial Center Probation Department as defendants. *Id.* at 1.

The Defendants responded by asking the court to dismiss Mayo's complaint. Mots. to Dismiss, D.E. 13, 26. They construed the complaint as alleging violations of 42 U.S.C. § 1983, and argued that they should be dismissed because they do not qualify as "persons" under that statute. Supp. Mems., D.E. 14, 28.

Eventually, the court added several individuals, including Parris, as parties. Mayo submitted supplemental allegations against him, including the allegation that Parris "got behind [Mayo's] truck" and "ordered [Mayo] out of the vehicle with his gun drawn." Suppl. Parris Allegations at 1, D.E. 52–1. Mayo claimed that this was "a violation of [his] civil rights." *Id.* He also alleged that Parris participated in an illegal search of his property. *Id.* at 2.

Given that Mayo had amended his complaint, the District Court denied the Probation Department's motion without prejudice. Order, D.E. 72.

Parris and his co-defendants responded to Mayo's new allegations by again moving to dismiss this action. Second Mot. to Dismiss, D.E. 78. As is relevant here, that motion alleged that the court lacked subject-matter jurisdiction over Mayo's claims. Supp. Mem. at 11–12, D.E. 79. It argued that the court lacked the authority to hear the case because "the jurisdictional basis for this lawsuit is unknown from either the face of the Complaint or" Mayo's supplements. *Id.* at 11. Although Mayo's complaint said that the court had subject-matter jurisdiction because of the involvement of a "State Government Employee," the Probation Defendants maintained that this statement did not sufficiently establish "the statutory basis for this action." *Id.* And since Mayo "failed to clarify the basis for this Court's jurisdiction," they believed there was "no basis for this Court to hear the matter." *Id.*

The Probation Defendants' motion also argued that if the court assumed that Mayo's pleadings contained "a separate state tort claim for the intentional tort of false arrest" that claim should be dismissed because it is "properly within the subject matter jurisdiction of the courts of the State of North Carolina." *Id.* at 13–14. In support of this argument, they pointed to cases in which federal courts declined to exercise supplemental jurisdiction after dismissing all federal claims. *Id.* at 14.

Finding these arguments to be frivolous, the undersigned recommended that the District Court deny Parris's motion. Dec. 8, 2023 Order at 4, D.E. 71. This was so because if Mayo's allegations were true, "then the defendants violated his Fourth Amendment right to be free from unlawful searches and seizures." *Id.* As a result, Mayo could sue under 42 U.S.C. § 1983 and the court could hear that claim through its federal question jurisdiction. *Id.*

The opinion also noted that since the court had subject-matter jurisdiction over Mayo's federal claim, it could exercise supplemental jurisdiction over any state-law claims included in

Mayo's complaint. *Id.* But there was no need to invoke supplemental jurisdiction because "Mayo has brought no state-law tort claims. Instead, his claims are all based on a violation of his federal constitutional rights." *Id.*

The Probation Defendants did not object to this recommendation. The District Court adopted it a month later. Jan. 11, 2024 Order, D.E. 114.

After completing discovery, the Probation Defendants moved for summary judgment on all of Mayo's claims. Mot. Summ. J., D.E. 84. They contended that they were entitled to summary judgment on Mayo's unlawful detention claim since "probation offices have the ability **to detain** members of the public under certain circumstances." Supp. Mem. at 18, D.E. 85 (emphasis in original). And, according to the Probation Defendants, there was no evidence "to suggest [Mayo's] alleged detention was outside the parameters of the Fourth Amendment." *Id.* at 19. They maintained this was true even if, as Mayo alleged, Parris pulled a gun on him. *Id.* at 19. The memorandum pointed to cases finding that drawing a weapon does not always elevate a detention into a custodial arrest. *Id.* Thus, the Probation Defendants claimed their actions "were in accordance with [the] Fourth Amendment exception allowing them to temporarily detain Plaintiff for the purpose of ensuring their safety." *Id.*

Then the memorandum argued that "any issue regarding the elements of North Carolina's torts of false imprisonment or false arrest, is not enough for this Court to deny Defendants' summary judgment as to Plaintiff's Fourth and Fourteenth Amendment rights, and in particular, his rights under Section 1983." *Id.* at 19. This argument was based on the proposition that § 1983 only protects rights under the United States Constitution and federal law. *Id.* at 19–20. But the memorandum did not explain where the court could locate a state-law tort claim in Mayo's filings.

The undersigned recommended that the District Court grant the Probation Defendants' summary judgment motion in part and deny it in part. Jan. 4, 2024 Mem. & R., D.E. 113. At the outset, the opinion noted that Mayo alleged that the Defendants "violated his Fourth Amendment rights by unlawfully detaining him, illegally searching his property and his truck, and wrongfully arresting him." *Id.* at 1.

That opinion eventually turned to Mayo's unlawful detention claim. *Id.* It recognized that "the Probation Defendants argue that any detention was constitutionally permissible because of the need to ensure officer safety during the search." *Id.* Summary judgment was inappropriate for this claim because "the record proves that there is a genuine issue of material fact about Parris's actions." *Id.* at 19. And even if the court accepted the Probation Defendants' version of events, they would not be entitled to summary judgment because they "have not established that the officer safety exception to the Fourth Amendment allowed Parris to detain Mayo." *Id.* at 20.

The Probation Defendants did not object to the recommendation. The District Court adopted it later that month. Jan. 30, 2024 Order, D.E. 116. In doing so it dismissed "all of Plaintiff's claims against the Probation Defendants, except his illegal detention claim against Dennis Parris in his individual capacity." *Id.* at 2.

The court then set the matter for trial in October 2024. Apr. 22, 2024 Order, D.E. 119. That order set several trial-related deadlines. Among them was a deadline requiring any motions in limine to be filed by September 24, 2024. *Id.* ¶ 4. Numerous other trial-related deadlines followed. *Id*.

The day before the deadline to file motions in limine and just over a month before trial, Parris brought his latest attempt to have Mayo's claims dismissed due to a lack of subject-matter jurisdiction. Third Mot. to Dismiss, D.E. 121. Departing from what was included in earlier filings,

Parris now argued that Mayo's complaint alleged "what **appear** to have been constitutional violations of the Fourth Amendment due to an unlawful search, and also torts for an unlawful detention and arrest[.]" Supp. Mem. at 1 (emphasis in original), D.E. 122. And he maintained that the court had dismissed all claims "except the false imprisonment, e.g. unlawful detention, claim in which Plaintiff alleged he was 'held against will' [sic] by Defendant Parris." *Id.* at 2.

Parris then explained that North Carolina law recognizes a claim for false imprisonment "based upon the illegal restraint of one's person **against his will**." *Id.* at 5 (emphasis in original) (quoting *Adams* v. *City of Raleigh*, 245 N.C. App. 330, 334, 782 S.E.2d 108, 112 (2016)). He then attempted to distinguish the elements of that state law tort from a "claim of false imprisonment in violation of the Fourth Amendment" which "requires a deprivation of the liberty of another without his consent and without legal justification." *Id.* (quoting *Taylor* v. *Montgomery Cnty.,* No. GJH-20–3143, 2021 WL 3857949, at *3 (D. Md. Aug. 30, 2021)).

According to Parris, the court's ruling on the summary judgment "dismissed [Mayo's] Section 1983 claim, e.g. the purported unlawful search," leaving only a "tort claim, e.g. false imprisonment, against Defendant Parris." *Id.* at 6. He asserted that Mayo made "**no mention of a constitutional basis** for adding" Parris and an "**alternative theory** of a state claim" cannot "support jurisdiction in this action." *Id.* (emphasis in original). He concluded by saying, "Section 1983 simply cannot stand as the basis for the false imprisonment claim, and as such, this Court is without jurisdiction to hear the matter." *Id.*

Parris next attempted to distinguish this motion from previous motions to dismiss. While he "recognizes that [the Probation Department] previously filed a motion to dismiss on the basis of subject matter jurisdiction[,]" Parris claimed that motion does not bind him because he "was not a party when the motion was filed." *Id.* at 7. Parris did not explain how this statement matched

up with the fact that he had unsuccessfully pursued his own subject-matter-jurisdiction-based motion.

He also attempted to explain away his summary judgment filings that framed Mayo's unlawful detention claim as a Fourth Amendment claim. He argues that "by defending himself against an alternative theory," he cannot "be seen as having somehow amended **Plaintiff's pleadings** to allege claims not properly raised, if at all." *Id.* at 7 (emphasis in original).

Finally, Parris argues that "an alleged federal claim of false imprisonment cannot not [sic] stand without a claim for false arrest." *Id.* at 8. So "once this Court dismissed the claims related to the allegedly unlawful arrest, there was no basis for a federal question regarding the remaining claim of false imprisonment." *Id*.

The Third Motion to Dismiss resulted in several orders from the court. To begin with, the court stayed all further proceedings, including the trial, because of the need to assure itself that it had subject-matter jurisdiction. Sept. 27, 2024 Order, D.E. 125.

After the presiding judge referred the third motion to dismiss for resolution, the court ordered that Parris explain why "his recent motion to dismiss for lack of subject-matter jurisdiction (D.E. 121) is not duplicative of the subject-matter jurisdiction argument Parris (and the other Defendants) raised in the motion to dismiss filed in May 2023 (D.E. 78)." Oct 25, 2024 Text Order.

In his response, although he does not explain his misstatement in his earlier filing, Parris acknowledged that he had filed a motion to dismiss based on subject-matter jurisdiction. Suppl. Mem. at 1, D.E. 127. He argued that the second motion's subject-matter jurisdiction argument was based on Mayo's failure to explicitly state the factual basis for the court's jurisdiction, while the third motion is based on the lack of any remaining federal claims after the summary judgment

ruling. *Id.* at 5. Parris then reiterated his position that there cannot be a Fourth Amendment false imprisonment claim in the absence of a valid false arrest claim. *Id.*

## II. Discussion

As with the arguments in his earlier motion, Parris's arguments are frivolous. Mayo's claims have always been, and continue to be, based on federal law. This is obvious from the pleadings, the parties' filings, and the court's orders. Yet even if Mayo's only remaining claim were a state-law tort claim, Supreme Court precedent clearly and unequivocally establishes that this court still has jurisdiction to address it. And the alternative argument that a federal court lacks federal question jurisdiction over a federal claim lacks any basis in law. The District Court should deny this motion.

### A. Mayo's claims are, and have always been, federal.

Parris argues that the only remaining claim is a state-law claim against him for false imprisonment. This position is contrary to Mayo's pleadings, the arguments of the parties, and the court's orders. All of Mayo's claims, including his remaining claim, are based on a violation of his federal constitutional rights.

To begin with, the court addressed this issue over a year ago when it dispensed with Parris's earlier motion to dismiss. In response to his argument that the court lacked jurisdiction over Mayo's state-law tort claims, the court explained that there were no state-law claims in this action and, instead, Mayo's "claims are all based on a violation of his federal constitutional rights." Dec. 8, 2023 Order at 4.

Moreover, Mayo's pleadings make clear that he is pursuing a federal civil rights claim against Parris. He alleged that Parris "got behind [Mayo's] truck" and "ordered [Mayo] out of the vehicle with his gun drawn." Supplemental Paris Allegations at 1, D.E. 52–1. Mayo claimed that

8

Case 5:22-cv-00289-M-RN     Document 128     Filed 03/31/25     Page 8 of 17

this was "a violation of [his] civil rights." *Id.* Nothing in Mayo's pleadings suggests he is proceeding under state, instead of federal, law.

And the filings by Parris and his co-defendants are riddled with references to federal claims. For example, in their memorandum in support of their second motion to dismiss, they say that Mayo's complaint alleges "what **appear** to be constitutional violations of the Fourth Amendment, due to an unlawful search and an unlawful detention and/or arrest[.]" Mem. in Supp. Second Mot. to Dismiss at 1 (emphasis in original), D.E. 79. And in that same memorandum, when addressing Mayo's unlawful detention claim, they argued that the probation officer's encounter with Mayo qualified as an investigative detention which they claimed, was "not automatically violative of the Fourth Amendment[.]" *Id.* at 10.

So too with their summary judgment motion. Their entire argument for their motion is based on the idea that they did not violate Mayo's Fourth Amendment rights. Mem. in Supp. of Mot. for Summ. J. *passim*, D.E. 85. As to Mayo's unlawful detention claim, they argue that their "actions were in accordance with [sic] Fourth Amendment exception allowing them to temporarily detain [Mayo] for the purposes of ensuring their safety." *Id.* at 19. Later on, they argue that they are entitled to qualified immunity—a doctrine that only applies to federal claims—on Mayo's claims because the "exigent circumstances exception allowed Defendants Johnson and Parris to temporarily detain Plaintiff for purposes of ensuring their safety." *Id.* at 30.

Moreover, the recommendation on the Probation Defendants' summary judgment motion dealt exclusively with federal claims. There is no discussion—or even a mention—of any state-law tort claims. And that recommendation allowed the unlawful detention claim to proceed because, among other reasons, Parris had "not established that the officer safety exception to the Fourth Amendment allowed Parris to detain Mayo." Jan. 3, 2024 Mem. & Rec. at 20.

Nothing in the record suggests that Mayo brought a state-law tort claim or that such a claim remained in the case after summary judgment. There is no basis in fact or law for Parris's contention otherwise. His motion should be denied.

**B.     The dismissal of federal claims does not deprive the court of supplemental jurisdiction over any state-law claims.**

Yet even if Mayo's only remaining claim were based on state law, Parris's motion would fare no better. The Supreme Court has made it clear that a federal court may, but need not, exercise supplemental jurisdiction over state-law claims after dismissing all federal claims. There is no legal basis for Parris's argument.

It is unquestionable that federal courts "are courts of limited jurisdiction." *Royal Canin USA, Inc.* v. *Anastasia Wullschleger*, No. 23–677, 2025 WL 96212, at *3 (2025) (quoting *Kokkonen* v. *Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994)). That jurisdiction is "[l]imited first by the Constitution, to only the kinds of 'Cases' and 'Controversies' listed in Article III. And for all lower federal courts, limited as well by statute." *Id.*

Congress has provided several different kinds of jurisdiction to lower federal courts, including jurisdiction "to resolve cases 'arising under' federal law." *Id.* (citing 28 U.S.C. § 1331). When a court faces a case presenting a federal issue, it "often has power to decide state-law questions too." *Id.* The Supreme Court, in *Mine Workers* v. *Gibbs*, 383 U.S. 715, 725 (1966), held that a "federal court may exercise supplemental jurisdiction over the state claim so long as it 'derive[s] from' the same 'nucleus of operative fact' as the federal one." *Id.*

"Congress later confirmed that view, generally codifying *Gibbs's* supplemental-jurisdiction rule in 28 U.S.C. § 1367[.]" *Id.* Under that statute, when a federal district court has original jurisdiction over a dispute, it also has "supplemental jurisdiction over all other claims that

are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

That statute confirms that the dismissal of federal claims does not deprive the court of jurisdiction to adjudicate any remaining state-law claims. It explains that a court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction[.]" *Id.* § 1367(c) & (c)(3). Congress's use of the word "may" establishes that a court has discretion whether to exercise supplemental jurisdiction over the remaining state-law claims. *See United States* v. *Rodgers*, 461 U.S. 677, 706 (1983) (explaining that "[t]he word 'may,' when used in a statute, usually implies some degree of discretion"). Whether to do so in any particular case is left to the discretion of the court after consideration of "a host of factors[.]" *See Chicago* v. *Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).

This conclusion is confirmed by numerous appellate decisions addressing the ability of federal courts to retain supplemental jurisdiction after the dismissal of federal claims. *Carlsbad Tech., Inc.* v. *HIF Bio, Inc.*, 556 U.S. 635, 640 (2009) ("Upon dismissal of the federal claim, the District Court retained its statutory supplemental jurisdiction over the state-law claims."); *Osborn* v. *Haley*, 549 U.S. 225, 245 (2007) ("Even if only state-law claims remained after resolution of the federal question, the District Court would have discretion, consistent with Article III, to retain jurisdiction"); *Arbaugh* v. *Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims"); *Shanaghan* v. *Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) ("[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished.").

Parris concedes that at least some of Mayo's claims arose under § 1983. Mem. in Supp. of Third Mot. to Dismiss at 6; Suppl. Resp. at 4. So there is no question that this court had original jurisdiction over those claims. As a result, it had supplemental jurisdiction over any related state-law claims. And that supplemental jurisdiction persists after the court dismissed all of Mayo's federal claims. *Carlsbad Tech.*, 556 U.S. at 640. So even if Parris were correct that Mayo's remaining claim was a state-law claim, the court would have jurisdiction to adjudicate it. Since his argument to the contrary lacks a legal basis, the District Court should reject it.

Much of Parris's argument is based on *Pate* v. *City of Myrtle Beach*, No. 4:17-CV-02269, 2018 U.S. Dist. LEXIS 92767 (D.S.C. Mar. 9, 2018), *adopted by* 2018 U.S. Dist. Lexis 75716 (May 4, 2018). *Pate* involved claims of, among other things, malicious prosecution and false imprisonment by a plaintiff who claimed he was arrested without probable cause. *Id.* The defendants removed the case based on their contention that the plaintiff "has asserted claims arising under 42 U.S.C. § 1983 and the United States Constitution." *Id.* at *3. The plaintiff, who was represented by counsel, sought to remand the case, arguing that the court lacked jurisdiction because "the Complaint states only state law causes of action." 2018 U.S. Dist. Lexis 75716 at *3.

The *Pate* court began its analysis by noting that the plaintiff "does not mention § 1983 in his complaint, but he does allege that he was arrested in violation of the United States Constitution, and § 1983 is the vehicle for 'vindicating federal rights' in a civil action." 2018 U.S. Dist. LEXIS 92767 at *3. And it pointed out that while "claims of malicious prosecution and false imprisonment can be raised under federal law, they can also be raised under state tort law as well." *Id.* The court concluded that since there were alternative theories of liability under both state and federal law, "federal law is not essential for resolution of the state law tort claim" so there was no federal subject matter jurisdiction. *Id.* at *3–4.

*Pate* is not persuasive for several reasons. To begin with, it dealt with whether a federal court had original jurisdiction over a case, not whether the court could continue to exercise supplemental jurisdiction over state-law claims after it dismissed federal claims. So it has no relevance to the issue before this court.

Next, the plaintiff in *Pate* argued that his claims were not based on federal law and, instead, relied solely on state-law claims. Mayo has not taken a similar position. Instead, he has alleged that Parris's actions constituted "a violation of [his] civil rights." Suppl. Allegations Against Parris at 1, D.E. 52–2. As discussed above, his claims are undoubtedly based on federal, not state, law.

And finally, unlike Mayo, the plaintiff in *Pate* was represented by counsel. Thus, the *Pate* court was not reviewing the pleadings under the more generous standard afforded to pro se litigants. Given that pro se claims are often pleaded in vague and unartful terms, it will frequently be unclear whether a pro se party is proceeding under state or federal law. Adopting *Pate*'s reasoning in this context would no doubt deprive many pro se litigants of a federal forum to vindicate their federal rights. Parris's argument lacks a basis in law and should be rejected.

C. **Mayo's Fourth Amendment unlawful detention claim is not dependent on the existence of a false arrest claim.**

Parris also argues that this court lacks federal question jurisdiction even if it "deems [Mayo's] remaining claim to be federal." Mem. in Supp. at 8. According to Parris, a federal court lacks federal question jurisdiction over "an alleged federal claim of false imprisonment . . . without a claim for false arrest." *Id.* Thus, under his theory, after the court granted summary judgment on Mayo's false arrest claim, "there was no basis for a federal question regarding the remaining claim of false imprisonment." *Id.* But, upon inspection, the argument that a federal court lacks federal question jurisdiction over a federal false imprisonment claim does not stand up to scrutiny.

To begin with, this position is contrary to federal law. Congress has given federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. If, as the court has held, Mayo brought a federal claim alleging a Fourth Amendment violation, this court has jurisdiction to hear it. Parris has made no attempt to explain why a federal constitutional claim would fall outside the authority of a federal court to adjudicate.

Another shortcoming with this argument is that Parris misstates the nature of Mayo's remaining claim. The claim that survived summary judgment is an illegal detention claim, not a false imprisonment claim. *See* Jan. 30, 2024 Order at 2 (dismissing all claims "except his illegal detention claim against Dennis Parris in his individual capacity."); Jan. 4, 2024 Mem. & R. at 18 ("All of Mayo's claims should be dismissed except for his illegal detention against Parris in his individual capacity."). And a party can maintain an unlawful detention claim even in the absence of a formal arrest. *See Michigan* v. *Summers*, 452 U.S. 692, 700 (1981) (discussing the "general rule that every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause."); *Figg* v. *Schroeder*, 312 F.3d 625, 636 (4th Cir. 2002) (holding that the Fourth Amendment applied to detained individuals because "[t]hough neither was subject to formal arrest, both were nonetheless 'seized.'").

Parris points to two cases in support of his argument: *Taylor* v. *Montgomery Cnty.*, Case No. GJH-20–3143, 2021 WL 3857949 (D. Md. Aug. 30, 2021), and *Allen* v. *City of Dunn*, 708 F. Supp. 3d 743 (E.D.N.C. Dec. 27, 2023). But neither case has anything to do with subject-matter jurisdiction. *Taylor* involved a motion to dismiss for failure to state a claim, 2021 WL 3857949, at *2, and *Allen* dealt with a motion for summary judgment, 708 F. Supp. 3d at 751–52. So they provide no basis to dismiss this action because of a lack of subject-matter jurisdiction.

There is no legal basis for Parris's argument that this court lacks federal question jurisdiction over a claim based under federal law. The District Court should reject it.

### D. Parris's pursuit of a motion that does not appear to be warranted by existing law or based on a nonfrivolous argument for changing existing law may have violated Rule 11.

Under Rule 11 of the Federal Rules of Civil Procedure, when an attorney files a document with the court, the attorney certifies certain things about the document's contents. Principally, the attorney is certifying that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" the document complies with Rule 11's requirements. Fed. R. Civ. P. 11(b). Those requirements include that the document "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that its "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]" *Id.* Rule (b)(1) & (b)(2).

If, after giving an attorney "notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated," it may sanction "any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id.* Rule 11(c)(1). And in most cases, "a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." *Id.*

While a party may bring a Rule 11 motion after complying with certain procedural safeguards, *id.* Rule 11(c)(2), the court may, "[o]n its own, . . . order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)[,]" *id.* Rule 11(c)(3).

After considering the timing of this motion and the lack of a legal basis for its arguments, the court has reason to believe that Parris's attorney, Sonya Calloway-Durham, and the North Carolina Department of Justice have violated Rule 11(b). The legal contentions in this motion about the nature of Mayo's remaining claim and the court's lack of subject-matter jurisdiction over it do not appear to be warranted by existing law or based on a nonfrivolous argument for changing existing law. And the apparent lack of a legal basis for these arguments suggests that they were presented to the court to harass Mayo and to unnecessarily delay the trial of this matter. Thus, Calloway-Durham and the North Carolina Department of Justice must appear and show cause as to why their conduct has not violated Rule 11(b).

### III. Conclusion

For the reasons stated above, Parris's motion to dismiss (D.E. 121) should be denied.

The court orders that Sonya Calloway-Durham and the North Carolina Department of Justice must appear and show cause why they should not be sanctioned for violating Rule 11(b). The show cause hearing will take place at the Terry Sanford Courthouse and Federal Building at 310 New Bern Avenue in Raleigh, North Carolina at 3:00 p.m. on Tuesday, April 15, 2025. Mayo does not have to attend this hearing if he does not wish to do so.

The Clerk of Court must serve a copy of this order on the North Carolina Department of Justice's process agent by certified mail, return receipt requested.

The Clerk of Court must serve a copy of this Memorandum and Recommendation ("M&R") on each party who has appeared in this action. Any party may file a written objection to the M&R within 14 days from the date the Clerk serves it on them. The objection must specifically note the portion of the M&R that the party objects to and the reasons for their objection. Any other party may respond to the objection within 14 days from the date the objecting

party serves it on them. The district judge will review the objection and make their own determination about the matter that is the subject of the objection. If a party does not file a timely written objection, the party will have forfeited their ability to have the M&R (or a later decision based on the M&R) reviewed by the Court of Appeals.

Dated: March 31, 2025

_____
Robert T. Numbers, II
United States Magistrate Judge