IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-00289-M

**Sean B. Mayo**,

                    Plaintiff,

v.                                                                                  **Order**

**Rocky Mount Police Department**, et al.,

                    Defendants.

        Few groups have so persistently tested the patience of this state's federal judiciary as the
North Carolina Department of Justice's Public Safety Section. From Manteo to Murphy, North
Carolina's federal judges have chided, criticized, and chastised its attorneys for disregarding court
orders and the federal rules. Yet the Public Safety Section's problems persist.  Its persistent
disregard for the authority of the federal courts and the rule of law is deeply troubling.

        This opinion chronicles the latest chapter in this unfortunate saga. After partially denying
summary judgment, the Court set this matter for trial on a Fourth Amendment illegal detention
claim. On the eve of the motions-in-limine deadline, Sonya Calloway-Durham, an attorney in the
Public Safety Section, filed a motion telling the Court it must dismiss this case. She contended that
all of Plaintiff Sean B. Mayo's federal claims had already been dismissed and only a state-law tort
claim remained. And she maintained that the court lacked jurisdiction to hear that claim.  Even if
a federal claim survived, she argued, the Court could not hear it. Following that motion, the Court
postponed trial.

        By filing that motion, Calloway-Durham violated Rule 11 of the Federal Rules of Civil
Procedure. The Court had already held that Mayo had not brought any state-law claims. And even

if he had, both a federal statute and binding precedent confirm that this Court retains jurisdiction to hear it after dismissing Mayo's federal claims. These arguments lacked any chance of success, and a reasonable attorney would have recognized that shortcoming. The Court further concludes that she filed the motion to unnecessarily delay trial. Shortly before she filed the motion, she acknowledged that her workload and personal lawsuit left her unprepared for trial. Calloway-Durham's explanations for her conduct were unpersuasive, largely because she did not know the standard the Court must apply when evaluating a Rule 11 violation.

Since the Court found that one of its employees violated Rule 11, it must hold NCDOJ jointly responsible for the violation unless exceptional circumstances are present. NCDOJ leadership described recent efforts to improve the Public Safety Section's performance. But they made no attempt to show that exceptional circumstances existed here. This too seems to stem from the fact that they did not know the standard the Court would apply. So the Court holds NCDOJ jointly liable for Calloway-Durham's conduct.

To address these violations and deter similar conduct, the Court imposes the following sanctions. First, it formally admonishes both Calloway-Durham and NCDOJ. Second, the Court will require that, for the next year, all of Calloway-Durham's filings in federal court must be co-signed by someone who will attest that the filing complies with Rule 11. Third, in light of disclosures made at the Show Cause Hearing, the Court will refer Calloway-Durham to the North Carolina State Bar for investigation of a potential disability. Finally, the Attorney General of the State of North Carolina must prepare a report outlining the steps he will take to address the Public Safety Section's deficiencies. These sanctions are sufficient, but not greater than necessary, to deter Calloway-Durham and other attorneys from engaging in similar conduct.

## I. Background

### A. Overview of proceedings leading up to the First Show Cause Order.

In August 2022, Mayo sued the Rocky Mount Police Department and an entity he called the Rocky Mount Community Correction Judicial Center Probation Department. Compl., D.E. 1. He alleged that the Defendants illegally searched his home and vehicle before arresting him without a warrant. *Id.* The Complaint brought claims for an illegal search, false arrest, and holding him against his will. *Id.*

Unaware of the names of the individuals who allegedly violated his rights, Mayo asked the Court to require the Defendants to identify the officers involved in the events described in his complaint and then to add them as parties. Mot. to Add Officers, D.E. 17. Calloway-Durham appeared on the Probation Department's behalf and opposed Mayo's request. Resp. to Mot. to Disclose Officers' Names, D.E. 22. On the first page of her response, Calloway-Durham explained that Mayo's Complaint alleged "what appears to [be] constitutional violations of the Fourth Amendment [sic] provisions for an unlawful search and an unlawful detention and/or arrest[.]" *Id.* at 1. On the next two pages, she noted that "[a]ssuming that Plaintiff has instituted this action for the purpose of alleging a violation of his Fourth Amendment right, as applied to North Carolina through Fourteenth Amendment, to be protected from an unlawful search and/or detention or arrest, it would appear that this action is an attempt to sue under 42 U.S.C. § 1983[.]" *Id.* at 2–3. Calloway-Durham then pointed out that "[t]he Fourth Amendment protects individuals against 'unreasonable searches and seizures'" and that § 1983 creates liability against persons who, under color of state law, violates a citizen's constitutional rights. *Id.* at 3.

Calloway-Durham's first substantive argument against Mayo's request claimed that the probation officers had no personal involvement in any alleged constitutional violations. *Id.* at 3–10. She contended that the probation officers lawfully searched Mayo's residence because they

believed a probationer lived there whose supervision conditions authorized warrantless searches. *Id.* at 3–6. Thus, according to Calloway-Durham, the probation officers had "the right to search the premises without [Mayo's] consent or a warrant." *Id.* at 6.

She then argued that the probation officers were not involved in an unconstitutional search of Mayo's truck and storage unit because "a storage unit is part of the curtilage of a primesis, [sic] such that probation officers were allowed to search the storage unit[.]" *Id.* In support of this argument, she cited a case about whether evidence should have been suppressed because it was obtained during a search that violated the Fourth Amendment. *Id.* (citing *United States* v. *Earls*, 42 F.3d 1321, 1327 (10th Cir. 1994)).

After that, Calloway-Durham attempted to absolve the probation officers of liability for Mayo's false arrest claim by arguing that, at best, Mayo alleged he was subjected to an investigatory detention. *Id.* at 6–8. And if he did, Calloway-Durham maintained that "there is no indication that the probation officers ran afoul of the Fourth Amendment." *Id.* at 7–8. Instead, she claimed that "the alleged detention was . . . lawful and constitutional." *Id.* at 9.

Next Calloway-Durham argued that various immunities, including qualified immunity, precluded the probation officers from being held liable. *Id.* at 11–13. As noted in her filing, that doctrine precludes liability under § 1983 unless the Defendants violated a clearly established constitutional right. *Id.* at 12 (quoting *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982)).

Finally, Calloway-Durham argued that Mayo's claims were barred by the three-year statute of limitations applicable to § 1983 claims. *Id.* at 13.

At no point in this filing is any mention made of any state-law claims.

The Court granted Mayo's request in part. Jan. 27, 2023 Order, D.E. 42. It required the Defendants to identify the individuals involved in the events described in the complaint. And it

ordered that their "disclosure must comply with the requirements of Federal Rule of Civil Procedure 33(b)." *Id.* at 5. That Rule requires, among other things, that a response be made "under oath." Fed. R. Civ. P. 33(b).

### 1. Calloway-Durham's Response to the January 27, 2023 Order

Several days later, Calloway-Durham filed a response to the Court's January 27, 2023 Order. Resp., D.E. 44. In that response, she said that her client provided the officers names "along with addresses and telephone numbers in its Initial Disclosures[.]" *Id.* at 1.

The Court then filed an order noting that providing the officers' names through initial disclosures, which are governed by Rule 26(a), did not comply with the requirement in the order requiring compliance with Rule 33(b). Feb. 6, 2023 Order at 1–2, D.E. 46. The Court required the Probation Department to remedy this shortcoming. *Id.* at 2.

The order also pointed out that the Court's Local Civil Rules provide that parties are not to file discovery materials unless the Court ordered them to do so or the materials are for use in a proceeding. *Id.* at 2. The Court cautioned the parties that "[n]o further discovery materials should be filed by any party unless authorized by the Court or its Local Rules." *Id.*

Yet despite that admonition, the following day Calloway-Durham filed a document that listed the names of the probation officers involved in the events described in the complaint. Resp. at 1, D.E. 47. Her filing also explained that her client did not possess any documents or materials Mayo requested. *Id.*

Unamused by the direct defiance of its order, the Court ordered Calloway-Durham to appear and show cause why she and NCDOJ should not be sanctioned for her conduct. Feb. 8, 2023 Order at 2, D.E. 48. The order also required the head of the Criminal Division of the NCDOJ or someone more senior in authority attend the hearing. *Id.*

## 2. The First Show Cause Hearing

Calloway-Durham appeared at the Show Cause Hearing along with Leslie Dismukes, who was then the Criminal Bureau Chief for NCDOJ. Feb. 14, 2023 Hr'g Tr. at 2:8–17, D.E. 55. Calloway-Durham acknowledged that her conduct violated the Court's order. *Id.* at 3:21–6:14. She maintained the violation was unintentional, explaining that she "did not realize [she] had not read the entire order."[1]

The Court then addressed both Calloway-Durham's conduct and global concerns it has over the performance of attorneys in the NCDOJ's Public Safety Section with Dismukes. *Id.* at 6:15–10:9.

In attempt to assuage the Court's concerns, Dismukes reviewed some procedural changes that had been implemented to try to address the Public Safety Section's ongoing issues with North Carolina's federal courts. *Id.* at 15:17–20:13. These procedural changes involved weekly staff meetings to discuss cases and having the section head receive all notices of electronic filing issued by the state's federal courts. *Id.*

Dismukes also explained that NCDOJ faced challenges dealing with "individuals who have repeated issues" because of the "protections for state employees[.]" *Id.* at 13:22–14:5. She claimed that as a result it may take NCDOJ "a longer . . . time to address . . . those issues than it would in another setting" like an "at-will employment setting[.]" *Id.* The Court noted that it did not face the same restrictions on dealing with repeat offenders. *Id.* at 14:22–25.

The Court ultimately did not sanction Calloway-Durham or NCDOJ. *Id.* at 21:21–22:9. But it explained that it may do so in the future if problems continued. *Id.* at 22:10–23:25. Those sanctions could include sanctions against individual attorneys, a formal reprimand of NCDOJ, a

---

[1] The Court's prior order just ten days earlier had also cautioned the parties not file discovery materials. Jan. 27, 2023 Order at 5, D.E. 42. The Court assumes that Calloway-Durham failed to read it in its entirety too.

referral to the North Carolina State Bar, invoking the Court's disciplinary process for violating the Court's ethical guidelines, or requiring development of a written plan to address the shortcomings and appointing a monitor to ensure compliance. *Id.* The Court concluded by saying that it hoped neither Calloway-Durham, nor NCDOJ, would find themselves in this position again. *Id.* at 25:3–6.

### 3. Supplemental Filings

since he now had the names of the officers who he alleged violated his rights, Mayo supplemented his allegations. Resp., D.E. 52, 52–1, 52–2. These supplements rendered moot motions to dismiss that the Defendants had filed earlier. May 2, 2023 Order, D.E. 72.

With respect to Parris, the Mayo alleged that Parris "got behind [his] truck" and "ordered [him] out of the vehicle with his gun drawn." Suppl. Parris Allegations at 1, D.E. 52–1. Mayo claimed that this was "a violation of [his] civil rights." *Id.* He also alleged that Parris participated in an illegal search of his property. *Id.* at 2.

Based on these allegations, the Court added Parris as a party. Mar. 30, 2023 Order, D.E. 56. In its order, the Court noted that Mayo had originally "sued RMPD and the Probation Department . . . alleging violations of his Fourth Amendment rights." *Id.* at 2.

### B. Probation Defendants' Second Motion to Dismiss

Parris and his co-defendants (collectively, "the Probation Defendants") responded to Mayo's new allegations by moving to dismiss this action. Second Mot. to Dismiss, D.E. 78. Their motion alleged that the Court lacked subject-matter jurisdiction over Mayo's claims. Mem. in Supp. Second Mot. to Dismiss at 11–12, D.E. 79. It argued that the Court lacked the authority to hear the case because "the jurisdictional basis for this lawsuit is unknown from either the face of the Complaint or" Mayo's supplements. *Id.* at 11. Although Mayo's complaint said that the Court

had subject-matter jurisdiction because of the involvement of a "State Government Employee," the Probation Defendants maintained that this statement did not sufficiently establish "the statutory basis for this action." *Id.* And since Mayo "failed to clarify the basis for this Court's jurisdiction," they believed there was "no basis for this Court to hear the matter." *Id.*

The Probation Defendants argued that if the Court assumed that Mayo's pleadings contained "a separate state tort claim for the intentional tort of false arrest" the claim should be dismissed because it is "properly within the subject matter jurisdiction of the Courts of the State of North Carolina." *Id.* at 13–14. In support of this argument, they pointed to cases in which federal courts declined to exercise supplemental jurisdiction after dismissing all federal claims. *Id.* at 14.

Finding these arguments to be frivolous, the undersigned recommended that the District Court deny the Probation Defendants' motion. Dec. 11, 2023 Order & Mem. & Rec. at 4, D.E. 107. If Mayo's allegations were true, "then the defendants violated his Fourth Amendment right to be free from unlawful searches and seizures." *Id.* As a result, Mayo could sue under 42 U.S.C. § 1983 and the Court could hear that claim through its federal question jurisdiction. *Id.*

Since the Court had subject-matter jurisdiction over Mayo's federal claim, the opinion noted that it could exercise supplemental jurisdiction over any state-law claims brought by Mayo. *Id.* But there was no need to do so because "Mayo has brought no state-law tort claims. Instead, his claims are all based on a violation of his federal constitutional rights." *Id.*

The Probation Defendants did not object to this recommendation. The District Court adopted it a month later. Jan. 11, 2024 Order, D.E. 114.

### C. Probation Defendants' Motion for Summary Judgment

Following discovery, the Probation Defendants moved for summary judgment on all of Mayo's claims. Mot. Summ. J., D.E. 84. They contended that they were entitled to summary

judgment on Mayo's unlawful detention claim since there was no evidence "to suggest [Mayo's] alleged detention was outside the parameters of the Fourth Amendment." Mem. in Supp. Mot. Summ. J. at 19, D.E. 85. They maintained this was true even if, as Mayo alleged, Parris pulled a gun on him. *Id.* The memorandum pointed to cases finding that drawing a weapon does not always elevate a detention into a custodial arrest. *Id.* Thus, the Probation Defendants claimed their actions "were in accordance with [the] Fourth Amendment exception allowing them to temporarily detain Plaintiff for the purpose of ensuring their safety." *Id.*

The memorandum then argued that "any issue regarding the elements of North Carolina's torts of false imprisonment or false arrest, is not enough for this Court to deny Defendants' summary judgment as to Plaintiff's Fourth and Fourteenth Amendment rights, and in particular, his rights under Section 1983." *Id.* at 19. This argument was based on the proposition that § 1983 only protects rights under the United States Constitution and federal law. *Id.* at 19–20. But the memorandum did not explain where the Court could locate a state-law tort claim in Mayo's filings.

The undersigned recommended that the District Court partially grant the Probation Defendants' summary judgment motion. Jan. 4, 2024 Mem. & Rec., D.E. 113. At the outset, the opinion noted that Mayo alleged that the Defendants "violated his Fourth Amendment rights by unlawfully detaining him, illegally searching his property and his truck, and wrongfully arresting him." *Id.* at 1.

Turning to Mayo's unlawful detention claim, the opinion recognized that "the Probation Defendants argue that any detention was constitutionally permissible because of the need to ensure officer safety during the search." *Id.* Summary judgment was inappropriate for this claim because "the record proves that there is a genuine issue of material fact about Parris's actions." *Id.* at 19. And even if the Court accepted the Probation Defendants' version of events, they would not be

entitled to summary judgment because they "have not established that the officer safety exception to the Fourth Amendment allowed Parris to detain Mayo." *Id.* at 20.

The Probation Defendants offered no objection to the recommendation. The District Court adopted it later that month. Jan. 30, 2024 Order, D.E. 116. In doing so it dismissed "all of Plaintiff's claims against the Probation Defendants, except his illegal detention claim against Dennis Parris in his individual capacity." *Id.* at 2.

### D.    Order Setting Trial

The Court then set the matter for trial in October 2024. Apr. 22, 2024 Order, D.E. 119. The order setting trial also set several trial-related deadlines. Among them was a deadline requiring any motions in limine for evidentiary issues that could be anticipated ahead of trial to be filed by September 24, 2024. *Id.* ¶ 4. Numerous other trial-related deadlines followed. *Id*.

### E.    Calloway-Durham's Lawsuit Against NCDOJ

As Mayo's case proceeded towards trial, so did a case that Calloway-Durham filed on her own behalf in this Court. In 2021, she sued NCDOJ for employment discrimination. *Calloway-Durham* v. *N.C. Dep't of Justice*, No. 5:21-CV-371-BO (E.D.N.C., filed Sept. 15, 2021).

Around the time the Court set Mayo's case for trial in October 2024, it also set Calloway-Durham's case for trial in June 2024. Apr. 5, 2024 Order, *Calloway-Durham* v. *N.C. Dep't of Justice*, No. 5:21-CV-371-BO (E.D.N.C filed Sept. 15, 2021), D.E. 95. After two continuances, the Court rescheduled Calloway-Durham's trial for October 21, 2024, and referred the matter to a Magistrate Judge for a court-hosted settlement conference. Aug. 29, 2024 Order, *Calloway-Durham*, No. 5:21-CV-371-BO, D.E. 172.

The Magistrate Judge set that conference for September 16, 2024. Aug. 30, 2024 Order, *Calloway-Durham*, No. 5:21-CV-371-BO, D.E. 173. The following day the Court entered an order

reflecting that the parties had reached an agreement to resolve the case. Sept. 17, 2024 Order, *Calloway-Durham*, No. 5:21-CV-371-BO, D.E. 178.

### F.  Motion to Continue Mayo's Trial

There was no activity in this case for five months after the Court set it for trial. Then, four days before the settlement conference in her own case, Calloway-Durham asked the Court to continue the trial and send the case to a court-hosted settlement conference. Mot., D.E. 120. She noted several deadlines in the weeks to come. *Id.* ¶ 16. And she explained that because of her caseload, she "has not been able to dedicate the necessary time to" preparing for Mayo's trial. *Id.* ¶ 20. She also noted that she was "scheduled to be a witness in a federal matter beginning on October 22, 2024," and would "not be able to meet the deadlines on this matter or prepare for trial" while that trial was going on. *Id.* ¶ 21.

The motion did not reflect Mayo's views on the relief sought. *Id.* ¶ 27. The Court ordered Mayo to respond no later than September 23, 2024. Sept. 13, 2024 Text Order.

### G.  Third Motion to Dismiss

On the day Mayo's response was due, and the day before the deadline to file motions in limine, Calloway-Durham again asked the Court to dismiss Mayo's claims based on a lack of subject-matter jurisdiction. Third Mot. to Dismiss, D.E. 121.

In her motion, Calloway-Durham argued that the Court's summary judgment ruling "dismissed [Mayo's] Section 1983 claim, e.g. the purported unlawful search," leaving only a "tort claim, e.g. false imprisonment, against Defendant Parris." Supp. Mem. at 6, D.E. 122. She asserted that Mayo made "**no mention of a constitutional basis** for adding" Parris and an "**alternative theory** of a state claim" cannot "support jurisdiction in this action." *Id.* (emphasis in original). She

concluded by saying, "Section 1983 simply cannot stand as the basis for the false imprisonment claim, and as such, this Court is without jurisdiction to hear the matter." *Id.*

Calloway-Durham next attempted to distinguish this motion from a previous motion to dismiss. While she "recognize[d] that [the Probation Department] previously filed a motion to dismiss on the basis of subject matter jurisdiction[,]" Calloway-Durham claimed that motion did not bind Parris because he "was not a party when the motion was filed." *Id.* at 7. Calloway-Durham did not explain how this statement matched up with the fact that Parris had been a party to the unsuccessful Second Motion.

Calloway-Durham also attempted to explain away her summary judgment filings that framed Mayo's unlawful detention claim as a Fourth Amendment claim. She argued that "by defending himself against an alternative theory," Parris could not "be seen as having somehow amended **Plaintiff's pleadings** to allege claims not properly raised, if at all." *Id.* at 7 (emphasis in original). Finally, Calloway-Durham argued that "an alleged federal claim of false imprisonment cannot not [sic] stand without a claim for false arrest." *Id.* at 8. So "once this Court dismissed the claims related to the allegedly unlawful arrest, there was no basis for a federal question regarding the remaining claim of false imprisonment." *Id.*

### H.    Court Orders

The Third Motion resulted in several orders from the Court. First, the Court stayed all further proceedings, including the trial, because of the need to assure itself that it had subject-matter jurisdiction. Sept. 27, 2024 Order, D.E. 125. Second, it referred the motion to the undersigned. Oct. 25, 2024 Text Order. And third, the undersigned ordered Calloway-Durham to explain how the Third Motion was "not duplicative of the subject-matter jurisdiction argument Parris (and the other Defendants) raised in" the Second Motion. Oct. 25, 2024 Text Order. And it

observed that the undersigned "found the subject-matter jurisdiction argument" in the earlier motion "to be frivolous." *Id.*

## I.        Calloway-Durham Response

Calloway-Durham's response acknowledged that Parris had previously moved to dismiss based on subject-matter jurisdiction, though she did not explain her earlier misstatement. Suppl. Mem. at 1, D.E. 127. She argued that the Second Motion's subject-matter jurisdiction argument was based on Mayo's failure to explicitly state the factual basis for the Court's jurisdiction, while the Third Motion was based on the lack of any remaining federal claims after the summary judgment ruling. *Id.* at 5. Calloway-Durham then reiterated her position that there can be no Fourth Amendment false imprisonment claim in the absence of a valid false arrest claim. *Id.*

## J.        Court's Ruling on Third Motion to Dismiss

The recommendation addressing the Third Motion noted several serious problems with that filing. Show Cause Order & Mem. & Rec. at 8, D.E. 128. To begin with, it remarked that Third Motion made no mention that Parris's previous motion to dismiss raised a subject-matter jurisdiction challenge. *Id.* at 6–7. Instead, Parris's supporting memorandum stated that he was not a party to the action when other Defendants had sought dismissal on subject-matter jurisdiction grounds. Supp. Mem. at 7.[2]

The recommendation also noted that Mayo's claims have always been, and continue to be, based on federal law. Show Cause Order & Mem. & Rec. at 8. This fact was obvious from the

---

[2] Parris's supplemental memorandum acknowledged he had previously moved to dismiss based on subject-matter jurisdiction. Supp. Mem. at 1, D.E. 127.

pleadings, the parties' filings, and the Court's orders.[3] *Id.* Nothing in the record suggested he brought a state-law tort claim. *Id.* at 10.

It explained that even if Mayo's only remaining claim were a state-law tort claim, federal law and Supreme Court precedent clearly and unequivocally establishes that this Court still had jurisdiction to address it. *Id.* Parris's alternative argument that a federal court lacked federal question jurisdiction over a federal claim had no basis in law. *Id.* And Mayo's Fourth Amendment claim for unlawful detention did not depend on the existence of a false arrest claim. *Id.* at 15.

The recommendation found the principal case on which Calloway-Durham relied, *Pate* v. *City of Myrtle Beach*, No. 4:17-CV-02269, 2018 U.S. Dist. LEXIS 92767 (D.S.C. Mar. 9, 2018), *adopted by* 2018 U.S. Dist. LEXIS 75716 (May 4, 2018), to be unpersuasive. Show Cause Order & Mem. & Rec. at 13. *Pate* involved a federal court's original jurisdiction, not supplemental jurisdiction. And unlike this action, the plaintiff in *Pate* was represented by counsel and asserted that he brought only state-law claims. *Id.*

The recommendation also pointed out that Calloway-Durham mischaracterized Mayo's remaining wrongful detention claim as one for false imprisonment. *Id.* at 8, 14. And there was no merit to his argument that false imprisonment depends on the existence of a false arrest claim. *Id.* at 13–14. So the recommendation concluded that the District Court should deny the Third Motion. *Id.* at 16.

It also noted that Rule 11 requires that an attorney certify that any document filed with the Court is not presented for an improper purpose, like "to harass, cause unnecessary delay, or needlessly increase the cost of litigation." *Id.* (citing Rule 11(b)(1)). And it observed that Rule 11

---

[3] The undersigned quoted previous Orders observing that Mayo alleged federal constitutional claims and no state-law violations, which Mayo's pleadings made clear. Show Cause Order & Mem. & Rec. at 8–9. And the undersigned referenced where the Defendants' own filings echoed the fact that Mayo's brought exclusively federal claims. *Id.* at 9.

requires that an attorney conduct an investigation to ensure that a filing's "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]" *Id.* (citing Rule 11(b)(2)). Rule 11 further provides that, in most cases, a law firm is jointly responsible for violations committed by its employees. *Id.* Concerned that the Third Motion violated Rule 11, the recommendation required Calloway-Durham and NCDOJ to appear and show cause why they should not be sanctioned under Rule 11. *Id.* at 15.

### K. The Filing and Withdrawal of the Objection to the Recommendation on the Third Motion to Dismiss.

Two days later, Calloway-Durham objected to the recommendation. Obj., D.E. 130. In that objection, she claimed that after the Court dismissed "a due process claim stemming from the allegedly unlawful search, and also a false arrest claim, Defendant Parris filed a subsequent motion to dismiss for lack of subject matter jurisdiction over the remaining false imprisonment claim." *Id.* at 2. But Mayo had not brought a due process claim and the remaining claim was not a false imprisonment claim.

And she said that in addition to denying that motion, the recommendation required that she "appear and show cause why she should not be held in contempt of Court for moving a second time for dismissal on the basis of subject matter jurisdiction." *Id.* at 3. The recommendation had not done so. Show Cause Order & Mem. & Rec. at 15–16.

The objection did not address the fact that the Court had held that Mayo's claims were exclusively federal in nature. Instead, it claimed that the Recommendation had "recommended that this Court find in its discretion that the plaintiff, a *pro se* litigant, intended the false imprisonment claim to be a federal claim, not a state claim, such that there is no question of whether this Court should retain jurisdiction over the matter." Obj. at 3. But the issue of the nature of Mayo's claims

had been addressed in connection with the recommendation on the Second Motion, not the Third Motion. Order & Mem. & Rec. at 4; Jan. 11, 2024 Order.

The objection then argued that the Court should decline to exercise supplemental jurisdiction over Mayo's remaining claim. Obj. at 3. In doing so, Calloway-Durham relied, once again, on *Pate*, and claimed that if both state and federal law recognized the same type of claim there was no federal subject-matter jurisdiction unless federal law was essential to each claim. *Id.*

Calloway-Durham next argued that "[i]n the context of the procedural history of this case, whether there should be subject matter jurisdiction over the remaining claim, be it federal or state, should also depend upon this Court's interpretation of whether Plaintiff's jurisdictional allegation is now a facial or a factual dispute, for which dismissal for lack of subject matter jurisdiction is **mandated**." *Id.* at 4 (emphasis in original). Calloway-Durham went on to state

> the Court's subsequent dismissal of the false arrest claim, e.g. the legal predicate for the false imprisonment claim, is not a **facial** issue of whether Plaintiff stated a claim in his amended complaint. Rather, it is a **factual** issue involving the Court's ruling **subsequent** to Plaintiff's amended complaint, that Defendant Parris did not falsely arrest Plaintiff during the course of the events alleged in his amended complaint. As such, Defendant Parris is now challenging the **veracity of the facts** underpinning the Court's continued jurisdiction.

> Thus, be the false imprisonment a federal or a state claim, given this Court's subsequent dismissal of the false arrest claim, Defendant Parris believes there is a newly established basis to ask this Court to decide whether it **retains** subject matter jurisdiction. The only exception to the basis for the query is whether Plaintiff's allegation that "Probation officer Dennis Parris got behind plaintiff truck ordered plaintiff out of the vehicle with his gun drawn[;] [w]hich is a violation of plaintiff civil rights;" is inextricably intertwined with the merits of the false imprisonment claim. *See* D.E. 52–1 at 1. The exception to the exception is that the disputed jurisdictional allegation is clearly immaterial.

> Even if Plaintiff's jurisdictional allegation is intertwined with the merits of the false imprisonment claim, it is not **inextricably intertwined**. In support, Defendant Parris also posits that his scenario is not the typical set of facts wherein discovery is needed to resolve whether he falsely arrested Plaintiff. On the contrary, discovery has ended, and based upon facts argued by Plaintiff, Defendant Parris, and parties

now dismissed from the matter, **this Court already has resolved the issue** of whether Defendant Parris falsely arrested Plaintiff.

Thus, and **as a matter of law**, even if Plaintiff's jurisdictional allegation is true, e.g. "Probation officer Dennis Parris got behind plaintiff truck ordered plaintiff out of the vehicle with his gun drawn[;] [w]hich is a violation of plaintiff civil rights;" without a false arrest, the allegation is therefore clearly immaterial, devoid of merit, and **foreclosed by this Court**.

***

However, for the same reason Plaintiff's jurisdictional allegation is not inextricably intertwined, it also is clearly immaterial. Given that there is a subsequent factual dispute that justifies this Court resolving the question of whether it should retain jurisdiction, this Court should not only consider the motion, but in turn, grant it.

*Id.* at 5–7 (emphasis and most alterations in original, citations omitted).

A week later, a new attorney from NCDOJ replaced Calloway-Durham as counsel of record and withdrew the objection. Notices, D.E. 131, 132. The District Court then adopted the recommendation and denied the Third Motion. June 17, 2025 Order, D.E. 136.

## L. The Second Show Cause Hearing

The Second Show Cause Hearing began with the Court placing Calloway-Durham under oath and confirming that she understood the penalties for providing false statements to the Court. Tr. of Apr. 15, 2025 Show Cause Hr'g at 5:16–6:4, D.E. 135. After that, the Court reviewed the two potential violations of Rule 11 outlined in the recommendation. *Id.* at 6:8–21.

With those preliminary matters out of the way, the Court asked Calloway-Durham if she could tell the Court the standard it would apply in determining whether she violated Rule 11. *Id.* at 6:22–24. She responded that she believed the Court would apply an excusable neglect standard. *Id.* at 7:5–6. That is incorrect. *See Lokhova* v. *Halper*, 30 F.4th 349, 354 (4th Cir. 2022) (noting that a Court assesses Rule 11 violations under an objective reasonableness standard).

The Court pressed Calloway-Durham on the basis for her answer. Tr. of Apr. 15, 2025 Show Cause Hr'g at 7:7. Calloway-Durham did not explain why she believed an excusable neglect

standard applied. Instead, she suggested that she was having trouble recalling the standard. *Id.* at 7:22–24. She added that she had been on medical leave for six-months after the First Show Cause Hearing and had been on medical leave for six weeks after filing the Third Motion. *Id.* at 8:12–16. These medical leaves were "related to issues that . . . affect [her] cognitive processing." *Id.* at 8:12–18.

In response, the Court asked Calloway-Durham if she was saying that she was suffering from an impairment that prevented her from practicing law. *Id.* at 8:19–21. She said that she was not. *Id.* at 8:22. Instead, she said that when she is under stress, it is "difficult for [her] to recall things in a timely manner." *Id.* at 8:22–25. That condition impacted her ability to work and led to the medical leaves. *Id.* at 8:25–9:1. She maintained that she could work, but may "need extra time" and "may or may not have processed something properly." *Id.* at 9:2–4.

After this discussion, the Court moved on to substantive issues. It began by pointing out that in the Third Motion, Calloway-Durham represented that Parris had not filed a subject-matter-jurisdiction-based motion to dismiss, although he had done so in the Second Motion. *Id.* at 10:1–10.

Calloway-Durham responded affirmatively, but then went on to discuss the Court's earlier determination in ruling on the Second Motion that there were no state-law claims here. *Id.* at 10:11–11. After she concluded her remarks, the Court again asked why the Third Motion did not acknowledge or mention Parris's previous motion to dismiss. *Id.* at 11:2–7. Without addressing the substance of the Court's question, Calloway-Durham once again discussed the opinion analyzing the Second Motion. *Id.* at 11:8–21.

The Court noted that Calloway-Durham's response was confusing and did not make sense. *Id.* at 11:22–23. It tried for a third time to get an answer about why the Third Motion did not acknowledge that Parris had previously brought a motion to dismiss. *Id.* at 11:22–12:11.

And for a third time, Calloway-Durham did not explain why it failed to do so. Instead, she said that the Second Motion involved "sovereign immunity and also the fact that [she] thought there was a state claim." *Id.* at 12:15–16. But there was no sovereign-immunity-based argument in the Second Motion.[4] D.E. 79.

Calloway-Durham also said that she filed the Third Motion "without realizing that [the Court] had already ruled that the remaining claim was federal[.]" Tr. of Apr. 15, 2025 Show Cause Hr'g at 12:16–22. The Court asked how this could be the case given the text order noting the similarity between the Second and Third Motions. *Id.* at 13:3–21. Calloway-Durham responded that she read the Second Motion's supporting memorandum but had not re-read the order resolving it. *Id.* at 13:22–14:13.

Next, the Court then turned to the fact that the Third Motion argued that the Court lacked jurisdiction over a state-law tort claim despite the Court's earlier holding that Mayo had not brought any state-law claims and, instead, had only brought federal constitutional claims. Calloway-Durham said that she had "not recollected that the order in which [the Court] denied the prior motion included language that dissolved [sic] the issue of whether or not there was a state claim[.]" *Id.* at 15:10–12. She also claimed that she filed the motion believing that case law gave the Court discretion whether to dismiss the case. *Id.* at 15:12–14.

---

[4] The words sovereign immunity appear in the Second Motion's Supporting Memorandum. Mem. in Supp. Second Mot. to Dismiss at 14. But they appear as part of a quotation that is discussing why a Court should not exercise supplemental jurisdiction over state-law claims. *Id.* There is no argument in that document that the Court should dismiss Mayo's claims based on sovereign immunity.

On the discretion issue, the Court noted that the Third Motion had not argued that the Court had discretion whether to hear the case. *Id.* at 15:17–24. Instead, it argued that the Court lacked subject-matter jurisdiction and must dismiss the case. *Id.*

Calloway-Durham responded:

> Your Honor, the point of *Pate* [*v. City of Myrtle Beach*, No. 4:17-CV-02269, 2018 U.S. Dist. LEXIS 92767 (D.S.C. Mar. 9, 2018), *adopted by* 2018 U.S. Dist. LEXIS 75716 (May 4, 2018)] was that where there can be, and I did not articulate that properly, I recognize that. Where there can be either jurisdiction in a state Court or in a federal court, but Your Honor, again, that goes back to my not recalling that the basis for the prior denial of the second motion to dismiss was related to the very thing I was asking for in the third motion.
>
> And I did not articulate the point of *Pate* being where it can be not whether it is or isn't. So if my word – and also I did not bring up 1367 because I had previously mentioned 1367. I thought it was kind of understood.

*Id.* at 15:25–16:11.

While unclear, the Court interpreted this response to mean that Calloway-Durham believed she had argued that the Court had discretion to continue to hear Mayo's suit under 28 U.S.C. § 1367. So it asked her where she had mentioned § 1367 in her filings. *Id.* at 16:12. She directed the Court to a page in her supporting memorandum. *Id.* at 16:13–16 (citing to page 14). After consulting that filing, the Court noted that the statute was included in a blockquote on another topic and that the memorandum did not argue that the Court had discretion to dismiss the case under § 1367. *Id.* at 16:17–20. It also noted that her *Pate*-based argument was not focused on the Court's discretion to hear the case but, instead, she argued that the Court must dismiss the action. *Id.* at 16:21–17:9. Calloway-Durham maintained that these arguments were the result of her failure to recall that the Court had ruled that there were no state-law claims. *Id.* at 17:10–14.

Next, the Court inquired why Calloway-Durham recast Mayo's remaining claim as a state-based false imprisonment claim in the Third Motion after the Court had said that an illegal

detention claim would proceed to trial. *Id.* at 17:20–18:2. Calloway-Durham claimed that under North Carolina law the terms detention and imprisonment were used interchangeably and that detention was a form of imprisonment. *Id.* at 18:3–10.

The Court found this explanation challenging since all the opinions, motions, and briefing in this matter had framed the case as one about federal claims. *Id.* at 18:11–16. Calloway-Durham again responded that at the time she filed the Third Motion she had not recalled that the Court had held that all of Mayo's claims were federal claims. *Id.* at 18:17–19:7.

The Court pressed Calloway-Durham on whether she understood that there is a difference between a claim for false imprisonment and a claim for illegal detention. *Id.* at 19:8–10. She fell back on her claim that the terms are used interchangeably under North Carolina law and that detention is a form of imprisonment. *Id.* at 19:15. She then explained

> Your Honor, my argument should not have been limited to whether or not there's an arrest. My point was there's not an arrest. That's one way we get to a false imprisonment is whether or not there's a lawful arrest without probable cause. But the other issue is whether or not it's lawful, and the unreasonableness of that lawfulness.

*Id.* at 19:24–20:4.

After some additional discussion on that point, the Court moved onto whether, assuming she had been correct that Mayo's remaining claim was a state-law claim, Calloway-Durham's argument had merit. The Court pointed out that under § 1367 and decisions from the Supreme Court and Fourth Circuit, the Court would have discretion to hear any state-law claim after dismissing Mayo's federal claim. *Id.* at 21:19–22:5. It asked Calloway-Durham for the legal basis for her argument. *Id.*

In response, she pointed to *Pate*. The Court inquired how a ruling from a federal district Court could overcome a federal statute and opinions from the Fourth Circuit and Supreme Court.

*Id.* at 22:13–17. Calloway-Durham seemed to acknowledge that if there were a state-law claim in the case the appropriate argument would have been that the Court should decline to exercise supplemental jurisdiction over any remaining state-law claims. *Id.* at 23:5–8 ("The proper argument should have been . . . 1367 gives you the jurisdiction to have that discretion.").

The next topic the Court covered involved the applicability of *Pate* to this dispute. The Court noted that *Pate* involved a motion to remand based on a plaintiff's claim that he was not pursuing any federal claims. *Id.* at 23:14–20. The Court asked Calloway-Durham to square that procedural posture with the posture of this case. *Id.* at 23:21–24. She acknowledged that *Pate* was "not on all fours" with this case. *Id.* at 23:25–24:1. She then continued:

> My point was simply the can language because I again believed that the federal issue had not been resolved, and that there was no federal issue. And that even if it was an assuming arguendo, even if there was a federal claim, that you should not – and again, if I didn't make it clear that it was should, which is what *Pate* says, maintain jurisdiction.
>
> * * *
>
> And I do not believe that a good-faith argument for a law, if it is a law and whether or not another Court has cited it, and even if it is in another federal district Court, which is persuasive not mandatory, means that it's not a good-faith argument. As long as there's some law to support it, that was the point of what I was trying to make.

*Id*. at 24:1–6 & 24:12–17.

The discussion then turned to the objection Calloway-Durham filed to the recommendation on the Third Motion. The Court pointed out that the objection claimed that in resolving the summary judgment motion the Court had dismissed "a due-process claim stemming from the alleged unlawful search and also a false-arrest claim[.]" *Id.* at 25:7–10. The Court asked Calloway-Durham where it could find a due process claim in this case. *Id.* at 25:12–13. The following discussion ensued:

> Calloway-Durham: Your Honor articulated that he – it was my – and at all times my understanding that he was attempting to say that the unlawful search was a

violation of his constitutional rights. I forgot exactly how he phrased that but that's what I was referring to. He never says Fourteenth Amendment, due process, or any of that. That was me trying to make sense of what he had alleged.

The Court: Are you saying that someone who's bringing an unlawful search or seizure claim is bringing a due-process claim?

Calloway-Durham: I'm saying that under color of law, if in the federal court you bring a claim under 1983, under color of state law – if you bring a claim under 1983 that your constitutional rights have been violated is where I was going with that, Your Honor.

The Court: But I guess my point is there is no due process claim in this case. Mr. Mayo never under any –

Calloway-Durham: He never uses the word due process, correct.

The Court: Okay. And you understand that's a particular type of claim in Section 1983?

Calloway-Durham: Your Honor, despite the many things that Your Honor has found that you disagree with my wording on, and that hindsight is 20/20, I could say I should have done differently or could have done differently, filing claims or responding to claims under due process is not something that is new to me.

*Id*. at 25:14–26:22.

The Court next focused on Calloway-Durham's representation that the Court had required her to appear and show cause why she "should not be held in contempt of court for moving a second time for dismissal on the basis of subject-matter jurisdiction." *Id.* at 27:5–7. The Court asked her to explain where in the Show Cause Order it had said that she needed to show cause why she should not be held in contempt. *Id.* at 27:2–8. She said that she "misspoke." *Id.* at 27:9–10.

Then the Court asked here where in the Show Cause Order it said she was subject to sanctions for moving to dismiss for a second time on the basis of subject-matter jurisdiction. She responded that it was her "interpretation" of the Show Cause Order. *Id.* at 27:14–18. When asked what need there was for an interpretation of the Court's order when it spelled out the grounds for

the potential Rule 11 violation (which did not include filing a second motion to dismiss on subject-matter jurisdiction grounds), she said

> I don't know there's need. I was trying to explain the – the procedural history in what had happened that led to the objection. Whether or not it's necessary, again, Your Honor, I don't know that that's –

*Id.* at 28:13–16.

Calloway-Durham then said that around the time of the First Show Cause Hearing she "was beginning to suffer from a chronic medical condition." *Id.* at 31:9–11. She noted that after she filed the Second Motion and Motion for Summary Judgment, she went on a six-month medical leave. *Id.* at 32:2–5. She claims that when she returned from leave in February 2024, staffing shortages caused her to be assigned additional cases which "impacted [her] ability to put forth the kind of work product that ordinarily [she] would have provided to the Court." *Id.* at 32:16–21. She then asserted that in June 2024 she "had issues that . . . exacerbated [her] medical condition related to" her employment discrimination case. *Id.* at 32:23–24:1.

She explained that on September 12, 2024, she filed a motion to extend deadlines and send the case to a court-hosted settlement conference due to of the upcoming trial in her own case and the workload issues caused by staffing shortages in the Public Safety Section. *Id.* at 33:3–8. She said, "At that time there was no intention to file another dispositive motion." *Id.* at 33:17–18. Instead, she "was still trying to prepare for trial because the Court had not ordered whether or not the case should be stayed[.]" *Id.* at 33:17–21.

When the Court asked why this was relevant, Calloway-Durham explained that she was addressing the Court's concern that she had filed the Third Motion to delay the proceedings or harass Mayo. *Id.* at 33:24–34:1. The Court asked if she was explaining why she filed the Third Motion on the night before the deadline for filing pre-trial evidentiary motions. *Id.* 34:2–4. She

24

said she was not and was explaining why she "had previously filed a motion to stay and the reasons for that." *Id.* at 34:5–6. The Court noted that Calloway-Durham had never filed a motion to stay. *Id.* at 34:13–20. She then said she was referring to the motion to extend deadlines. *Id.* at 34:25–35:2.

Calloway-Durham claimed that she continued to prepare for trial as that motion was pending. During that preparation she found *Pate* and thought it gave her a meritorious argument to raise regarding subject-matter jurisdiction, so she prepared and filed the Third Motion. *Id.* at 35:5–11. She did not recall that the Court had held that there were no state-law claims here. *Id.* at 35:7–9.

Calloway-Durham reiterated that she did not file the Third Motion to harass Mayo or delay the case. *Id.* at 36:12–14. She attributed the error to her "inaccurate recollection of a prior order" finding that all of Mayo's claims were federal. *Id.* at 36:17–19. That misunderstanding, she said, stemmed from her "medical issues." *Id.* at 37:11–12. She maintained that when she filed the Third Motion she "was not operating at [her] optimal level[.]" *Id.* at 38:1–4. And she said that within days of filing the Third Motion she went out on medical leave again. *Id.* at 38:4–7.

After Calloway-Durham concluded, the Court heard from Alex Williams, the Section Head for the Public Safety Section. Williams addressed various changes he has implemented in that role to try to improve the Public Safety Section's performance. These changes include

- Increasing the number of attorneys in the Public Safety Section. *Id.* at 45:6–8.
- Modifying the way that paraprofessional staff are assigned to attorneys. *Id.* at 45:13–46:1.
- Requiring attorneys to conduct weekly reviews of upcoming deadlines with their paraprofessional staff. *Id.* at 46:2–23.
- Implementing regular meetings with Public Safety Section attorneys to discuss cases and potential dispositive motions. *Id.* at 47:6–12.

- Providing section-wide training on various topics, including civil procedure. *Id.* at 47:20–48:2.
- Shifting to a cloud-based electronic filing system. *Id.* at 49:16–20.

The Court asked Williams if NCDOJ had a policy on what to do if a judge issues a show-cause order against an attorney. *Id.* at 50:19–20. He said, "There is now a policy in place that if an attorney's work is questioned, criticized, [or] a show-cause order is entered," the attorney must notify the section head. *Id.* at 50:22–51:4. When the Court asked how long that policy was implemented, Williams said it had been in place for a week. *Id.* at 51:6–7.

After Williams spoke, the Court heard from Olga Vysotskaya de Brito, the head of the NCDOJ's Litigation Division. *Id.* at 2:20–23 & 51:19–20. She noted that NCDOJ's leadership had changed at the beginning of the year, when a new attorney general took office. *Id.* at 51:24–52:1. And she pointed out that the Public Safety Section had recently moved from the criminal division to the civil bureau. *Id.* at 52:1–3. She also discussed some of the staffing improvements, training programs, and policy changes NCDOJ implemented. *Id.* at 53:12–55:22.

With respect to the Third Motion, she explained that they did not know that it had been filed until after Calloway-Durham filed her objection. *Id.* at 52:13–16. Once they became aware, they reviewed the case file and determined that they should withdraw the objection and substitute the attorney working on the case. *Id.* at 52:17–22.

Finally, Kelly Chambers, the Civil Bureau Chief, addressed the Court. *Id.* at 58:23. She covered many of the same topics as Williams and Vysotskaya de Brito.

## II. Discussion

The Court begins by asking whether Calloway-Durham violated Rule 11 when she filed the Third Motion. She did. Her arguments lacked any chance of success under existing precedent.

And the record establishes that she filed the motion to unnecessarily delay trial because her workload and personal lawsuit left her unprepared to go forward.

That conclusion requires the Court to hold NCDOJ jointly liable unless it establishes that exceptional circumstances were present. It did not. Its representatives made no attempt to satisfy that standard.

So the Court will hold Calloway-Durham and NCDOJ jointly liable for the Rule 11 violation and impose sanctions designed to prevent a recurrence of this conduct by Calloway-Durham and other similarly situated individuals.

## A. Violation of Rule 11(b)(2): Frivolous Legal Arguments

Under Rule 11(b)(2) of the Federal Rules of Civil Procedure, when an attorney files a document with the Court, that attorney is certifying that the document's "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]" Fed. R. Civ. P. 11(b)(2). When considering if an attorney violated this rule, courts apply "an objective standard" and ask, "whether a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *Lokhova*, 30 F.4th at 354 (citation modified). To be sanctionable, a legal argument "must have absolutely no chance of success under the existing precedent." *Hunter* v. *Earthgrains Co. Bakery*, 281 F.3d 114, 153 (4th Cir. 2002).

Calloway-Durham's conduct violated Rule 11(b)(2). The Third Motion's arguments had no chance of success under existing precedent. The reasons why are discussed in detail in the recommendation on the Third Motion, so the Court only provides a summary here. Her contention that Mayo's remaining claim was a state-law tort claim was barred by the Court's earlier conclusion that Mayo's claims were based on federal law instead of state law. Even if that were

not the case, her argument that the dismissal of all of Mayo's federal claims deprived it of jurisdiction over a remaining state-law claim was foreclosed by 28 U.S.C. § 1367, as well as multiple decisions by the Supreme Court and Fourth Circuit. And her final argument, that even if Mayo's remaining claim was federal the Court lacked jurisdiction to hear it, contravenes the text of Article III of the Constitution and 28 U.S.C. § 1331. A reasonable attorney in similar circumstances would have known that there was no legal justification for filing the Third Motion.

The arguments Calloway-Durham presented in her defense are unpersuasive. To start, she did not know the standard the Court would apply in determining whether she violated Rule 11. And as a result, she did not argue about why a reasonable attorney in like circumstances would have believed her actions to be legally justified. But the Court will still address her arguments.

Calloway-Durham's principal explanation—that she misremembered the contents of the recommendation on the Second Motion—does not excuse her from liability. To begin with, the Fourth Circuit requires that the Court apply an objective standard in assessing whether an attorney violated Rule 11(b)(2), so her intent is irrelevant.

What's more, Rule 11(b) obligates attorneys to undertake "an inquiry reasonable under the circumstances" to ensure that they comply with its requirements. It is unreasonable for an attorney to not consider the Court's rulings on previously filed motions before pursuing a new motion. *See In re Johnson*, 186 F. App'x 390, 394 (4th Cir. 2006) (upholding sanctions under Rule 11(b) when an attorney "proceeded merely from a subjective perception and corrupted memory and did not examine any of the Court records or transcripts that would have corrected her mistaken recollections."). This is particularly true here, since the Court pointed out that the Third Motion raised similar arguments to the Second Motion and that those arguments had been deemed frivolous.

Then there is the issue of Calloway-Durham's memory. Calloway-Durham claims that her memory issues caused her to take a six-month-long medical leave shortly after the First Show Cause Hearing. So it appears that since early 2023, Calloway-Durham was aware that she had memory issues. Thus, it would seem even more imperative for her to confirm her belief about the content of the Court's earlier orders before pursuing the Third Motion.

And while the nature and extent of those issues are unclear,[5] Calloway-Durham does not believe that they are so severe that she cannot practice law and she asserts that she is not "incapable of working." Tr. of Apr. 15, 2025 Show Cause Hr'g at 8:19–4. Instead, she says she knows that she may occasionally "process[] something improperly[,]" she asserts that she is not "incapable of working." *Id.* at 8:19–9:4. She claims that as a result she may "need extra time" to complete her work. *Id.* Calloway-Durham filed the Third Motion at a time of her choosing, so based on her own description of her condition, it does not excuse her conduct.

Nor can Calloway-Durham avoid liability under Rule 11(b)(2) by pointing to *Pate*. She relied on that case to argue that the Court could not exercise supplemental jurisdiction over any remaining state-law claims. Mem. in Supp. Second Mot. to Dismiss at 4–6. As the Court explained, *Pate* dealt with a Court's original jurisdiction over a case where the plaintiff disclaimed any interest in pursuing federal claims. Show Cause Order & Mem. & Rec. at 13. It had nothing to do with when a Court can or should exercise supplemental jurisdiction over state-law claims. *Id.*

None of these arguments establish that a reasonable attorney in Calloway-Durham's shoes would have believe that there was a legal justification for filing the Third Motion. As a result, the Court concludes that Calloway-Durham violated Rule 11(b)(2) by filing the Third Motion.

---

[5] Calloway-Durham has not provided the Court with any supporting documentation regarding her condition or its impact on her performance.  Any such information could have been filed under seal or presented in a closed session if she did not want to share the information with the public.

**B.      Violation of Rule 11(b)(1): Improper Purpose and Unnecessary Delay.**

The Court also required Calloway-Durham to show cause why she did not violate Rule 11(b)(1) when she filed the Third Motion. That rule prohibits presenting a document to the Court for an "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation[.]" Fed. R. Civ. P. 11(b)(1). Courts apply an objective standard when determining whether an attorney has violated this rule. *In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990). Doing so requires consideration of "[c]ircumstantial facts surrounding the filing" including whether the attorney has made "[r]epeated filings, the outrageous nature of the claims made, or a signer's experience in a particular area of law[.]" *Id.* at 519. Additionally, "whether a pleading has a foundation in fact or is well grounded in law will often influence the determination of the signer's purpose[.]" *Id.* at 518.

As discussed above and in the recommendation on the Third Motion, that motion was not well grounded in law. Its arguments had been previously rejected by the Court, and they were contrary to federal law and binding precedent. The lack of a legal basis for the motion weighs heavily in favor of a conclusion that Calloway-Durham filed it for an improper purpose.

More telling, however, about the motion's purpose is its timing. After denying the motion for summary judgment, the Court set this matter for trial beginning on October 29, 2024. Apr. 19, 2024 Order at 1. The Court also required that any evidentiary motions that could be anticipated before the final pretrial conference be filed by September 24, 2024. *Id.* at 2. A variety of other deadlines followed in October, including the filing of the pretrial order, voir dire questions, the verdict form, and trial briefs. *Id. passim*.

On the same day that the Court set Calloway-Durham's own trial for the end of September, she sought to continue Mayo's trial. Mot. for Extension of Time. In that motion, she noted that because of her workload she had "not been able to dedicate the necessary time to Defendant Parris'

[sic] trial defense." *Id.* ¶ 20. She also noted that she would be a "witness in a federal matter beginning on October 22, 2024," (presumably her trial) and as a result would "not be available to meet the deadlines on this matter or prepare for trial during" that period. *Id.* ¶ 21.

That motion was still pending when Calloway-Durham filed the Third Motion. But four days later the Court vacated the trial scheduling order in light of the Third Motion and the need for the Court to "assure itself of its subject matter jurisdiction before proceeding any further." Sept. 27, 2024 Order.

These circumstances demonstrate that Calloway-Durham filed the Third Motion to unnecessarily delay trial. In the days leading up to the Third Motion's filing, Calloway-Durham had sought to continue the trial because her workload and personal lawsuit had precluded her from properly preparing for it. But instead of promptly granting Calloway-Durham the continuance she sought, the Court waited to hear from Mayo about his position on the motion.

With trial deadlines approaching, Calloway-Durham then challenged the Court's subject-matter jurisdiction. Under the Court's local rules, the briefing on that motion would not be completed until October 28, 2024, just about a week after trial was scheduled to begin. Local Civ. R. 7.1(f) & (g) (providing 21 and 14 days, respectively, to file a response and reply to a non-discovery motion). Given the importance of subject-matter jurisdiction, that filing was almost certain to delay trial.

Circumstantial evidence establishes that Calloway-Durham filed the Third Motion to unnecessarily delay the trial. She admitted that she was unprepared for trial. And when her attempt to continue the trial was ineffective, she filed a motion that would necessarily require the Court to postpone the trial to assure itself that it had jurisdiction. Because the motion had no reasonable chance of success, the Court concludes it was filed as a tool to delay trial. As a result, the Court

concludes that Calloway-Durham filed the Third Motion for an improper purpose and thus violated Rule 11(b)(1).

### C.      NCDOJ's Joint Liability

Rule 11 also requires that unless "exceptional circumstances" are present, "a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1). *See, e.g.*, *Rentz* v. *Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 396 (6th Cir. 2009) (affirming decision that found exceptional circumstances existed and exempted law firm from paying the ordered sanction because the sanctioned attorney began to practice with the firm after sanctionable conduct occurred); *see also Morris* v. *Wachovia Sec., Inc.,* No. 3:02-CV-797, 2007 WL 2126344, at *5 (E.D. Va. July 20, 2007) (noting that one commentator discussing exceptional circumstances suggested that "[p]erhaps a firm could get off the hook by raising the defense that a rogue lawyer altered a firm-approved pleading before submitting it or disobediently filed a pleading his superiors had rejected as frivolous," but "if a firm's liability for its lawyers' Rule 11 violations is not absolute, it is very nearly so.") (quoting Ted Schneyer, *A Tale of Four Sys.: Reflections on How Law Influences the "Ethical Infrastructure" of Law Firms*, 39 S. Tex. L. Rev. 245, 259 (1998)).

NCDOJ's representatives made no attempt to show that exceptional circumstances were present here. Instead, they appeared to believe that the same standard that applied to Calloway-Durham applied to NCDOJ. Tr. of Apr. 15, 2025 Show Cause Hr'g at 60:21-23 ("[W]e would ask that you not sanction the Department of Justice but understanding you have your objective standards that you have to apply."). They provided no explanation for Calloway-Durham's actions, let alone an explanation that would relieve NCDOJ of its joint liability for her conduct. The Court's

independent review of the record also failed to turn up any exceptional circumstances. So the Court will hold NCDOJ jointly liable for the Rule 11 violations committed by its employee.

### D.    Sanctions

Having concluded that Calloway-Durham and NCDOJ are jointly liable for violating Rule 11, the Court "may impose an appropriate sanction" to address the violation. Fed. R. Civ. P. 11(c)(1). Rule 11 insists that any sanction "be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *Id.* Rule 11(c)(4). A sanction can require payment of "a penalty into Court" or other "nonmonetary directives[.]" *Id.*

Determining the appropriate sanction requires consideration of several factors. According to Rule 11's Advisory Committee Notes, these factors include

- Whether the improper conduct was willful or negligent.
- Whether it was part of a pattern of activity or an isolated event.
- Whether it infected the entire pleading, or only one particular count or defense.
- Whether the person has engaged in similar conduct in other litigation.
- Whether it was intended to injure.
- What effect it had on the litigation process in time or expense.
- Whether the responsible person is trained in the law.
- What amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case.
- What amount is needed to deter similar activity by other litigants.

After considering these and any other factors, a court may impose the sanction that, in its discretion, it believes appropriate. *Fahrenz* v. *Meadow Farm P'ship*, 850 F.2d 207, 211 (4th Cir. 1988).

### 1.    Sanctions Against Calloway-Durham

Sanctions are warranted against Calloway-Durham. To begin with, Calloway-Durham is an experienced attorney both in terms of the length of her legal career and this subject matter. She

has spent over three decades as a practicing attorney in North Carolina, more than a decade of which involved working for NCDOJ. Tr. of Apr. 15, 2025 Show Cause Hr'g at 41:7–10; 41:21–42:23. At the time she filed the Third Motion, she had worked in the Public Safety Section for over four and a half years and, from a review of the Court's docket, had substantial experience in federal court. *Id.* at 42:11–13.

An attorney with this level of experience should have known that the Third Motion lacked any legal basis. An experienced civil practitioner should be aware of their obligation to review and recollect court orders, should be familiar with the concept of supplemental jurisdiction, and know the difference between original and supplemental jurisdiction.

The record also establishes that her baseless filing was part of a pattern of conduct. Early on, the Court held a show cause hearing due to Calloway-Durham's failure to comply with its order about the filing of discovery materials. At that hearing, she tried to excuse her conduct by claiming that she was unaware of the Court's instruction because she had not read to the end of the order. Then, more than two years later, when called to account for filing the Third Motion she again claimed that she was unaware of the contents of the recommendation on the Second Motion. Her repeated inattention to the Court's filings supports the imposition of sanctions.

Calloway-Durham's conduct has substantially delayed this case's resolution. The Third Motion has delayed the trial over a year. This delay, and its negative effect on the parties and the Court, justifies imposing sanctions.

The most challenging aspect of the sanctions analysis is whether Calloway-Durham's conduct was willful, negligent, or something else. On the one hand, Calloway-Durham's repeated failure to follow the Court's orders weighs in favor of a finding of willfulness. On the other hand, Calloway-Durham's claim that the Third Motion resulted from a condition that caused her to

inaccurately recall the contents of the earlier order weighs in favor of finding that her conduct falls short of willfulness.

But she also maintains that her cognitive issues do not preclude her from practicing law. Calloway-Durham cannot use her condition as both a sword and a shield against Rule 11 sanctions.

Yet having reviewed the entire record, the Court is concerned that Calloway-Durham may not appreciate the impact her condition has on her ability to practice law. Her written and oral arguments, particularly in recent times, are convoluted, disjointed, and difficult to understand. The Court is concerned that she has not accurately assessed her ability to continue to practice law.

After weighing the facts here in light of the factors in Rule 11's Advisory Committee Notes, the Court concludes that the following sanctions are appropriate. To begin with, the Court admonishes Calloway-Durham for filing a motion that lacked an adequate basis in law and unnecessarily delayed trial. Her conduct has impeded the efficient administration of justice and wasted the Court's resources.

Next, due to Calloway-Durham's repeated issues, the Court will require that for one year after the filing of this order, any filings Calloway-Durahm submits in federal court must be cosigned by another attorney. While employed at NCDOJ, her section head (or similar supervisor) must co-sign her filings. If Calloway-Durham's employment at NCDOJ concludes, her filings must be cosigned by an attorney with an equal or greater number of years of practice than she has. The cosigning attorney must include a certification that, pursuant to this order, they have reviewed the filing and, after conducting a reasonable inquiry under the circumstances, have concluded that the filing complies with Rule 11.

And finally, the Clerk of Court must send a copy of this order to the Counsel for the North Carolina State Bar for evaluation of whether to begin a disability proceeding against Calloway-

Durham under 27 N.C. Admin. Code 1B .0122. The State Bar may take whatever actions it deems appropriate.

### 2. Sanctions against NCDOJ

The Court next considers the appropriate sanction to impose on NCDOJ. While its liability stems as a legal matter from the fact that it employs Calloway-Durham, as a factual matter its liability stems from its failure to adequately staff, train, and supervise the Public Safety Section for several years. Many issues that led to the filing of the Third Motion have presented themselves in other cases involving the Public Safety Section. So the Court imposes sanctions designed to prevent similar conduct in the future. *See* Fed. R. Civ. P. 11(c)(4) (noting that the sanction imposed "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."); *Hunter*, 281 F.3d at 152 (observing that Rule 11's primary purpose is to deter future litigations abuse); *Williams* v. *The Ests. LLC*, 663 F. Supp. 3d 466, 484 (M.D.N.C. 2023) (sanctioning attorney for violating Rule 11 and noting that a public finding will help deter others from similar misconduct).

The Court begins by considering NCDOJ's supervision of Calloway-Durham. It is unclear why her supervisors did not provide her with closer supervision and assistance in the period around the Third Motion's filing. NCDOJ was no doubt on notice of her performance issues by the time she filed the Third Motion. The head of the NCDOJ's Criminal Division was standing next to Calloway-Durham at the First Show Cause Hearing when she said that she violated a court order because she had not read to the end of that document. Every practitioner knows that the end of a court order is the most likely place to find the Court's commands to the litigants or counsel. Why did an attorney's admission that they had not completely read a court order not result in closer scrutiny of that attorney's performance going forward? On top of that, NCDOJ was no doubt aware

of Calloway-Durham's extended medical leave for a condition that may impact her cognitive abilities. Despite that awareness, it apparently did nothing to more closely supervise her work or provide her with assistance to ensure that her condition did not negatively impact her performance. NCDOJ failed to provide adequate supervision of Calloway-Durham's performance in this action.

NCDOJ's failure to provide adequate oversight of the Public Safety Section is not isolated to Calloway-Durham. It permeates the Public Safety Section. For example, take Calloway-Durham's claim that she was unaware of the contents of recommendation on the Second Motion. This excuse, or something similar, has been raised by Public Safety Section attorneys throughout North Carolina for over half a decade.

- Calloway-Durham attempted to excuse herself from liability during the First Show Cause hearing by saying that she had not read all the Court's order, so she missed the Court's instruction to not file discovery materials on the record. Tr. of Feb. 14, 2023 Show Cause Hr'g at 4:20–24; 6:1–8, D.E. 55.

- After the Court issued a deficiency notice and instructed counsel to refile a motion for an extension of time to file dispositive motions, the attorney failed to do so. When the Court ordered the attorney to show cause why he had not filed a dispositive motion, the attorney responded that he had missed the email notifying him of the notice of deficiency. Resp. to Show Cause Order at 2, *Best* v. *Ezzell*, Case No. 5:22-CT-03122-BO (E.D.N.C. Sept. 11, 2023), D.E. 34.

- After a Court ordered an attorney to show why he should not be sanctioned for violating three orders filed over three consecutive months regarding trial preparation, the attorney said he only recently learned about the Court's orders and attributed his oversight to staffing shortages and working remotely. Resp. to Show Cause Order at 1–2, *McNeill* v. *Herring*, No. 3:18-CV-00189-GCM (W.D.N.C. Oct. 18, 2021), D.E. 75.

- In response to a show cause order issued because an attorney did not comply with the Court's order, an attorney said that he was sick when the Court issued the first order, was unaware of the order, and the date was omitted from his calendar because of staffing issues. Resp. to Show Cause Order at 2, *Griffin* v. *Daves*, No. 5:19-CT-03040-M (E.D.N.C. Nov. 12, 2021), D.E. 110.

- An attorney responded to a contempt citation issued due to failure to comply with an order by attributing the failure to the possibility that he "simply overlooked the email" containing the order because "on a daily basis [he] receive[s] a copious number of email messages." Notice in Resp. to Contempt Certification at 3, *Johnson* v. *N.C. Dep't of Justice*, 5:16-CV-00679-FL (E.D.N.C. Feb. 14, 2019), D.E. 52.

The Public Safety Section's repeated failure to follow orders, comply with local rules, meet deadlines, and otherwise perform adequately has been noted by North Carolina's federal judges:

- One judge remarked that "defense counsel have repeatedly failed to follow the Court's Orders and to comply with case deadlines in this matter despite the Court's previous admonitions." Show Cause Order at 2, *Griffin* v. *Hooks*, No. 3:19-CV-00135-MR (W.D.N.C. July 28, 2021), D.E. 121.

- In the same case, the Court remarked that the attorney had a "history in this and other cases . . . [of] fail[ing] to adhere to the Court's deadlines and . . . be[ing] generally nonresponsive[.]" Order at 4, *Griffin* v. *Hooks*, No. 3:19-CV-00135-MR (W.D.N.C. Oct. 27, 2021), D.E. 149.

- In an order granting summary judgment, a judge noted that filings were "full of typographical errors, formatting errors from what appears to be cutting and pasting, and formatting errors in violation of the rules of this Court[]" that documents be double-spaced. *Parks* v. *Poole*, No. 1:20-CV-00898-WO-JLW, 2022 WL 4622264, at *1 n.1 (M.D.N.C. Sept. 30, 2022).

- The Court noted "defense counsel's history with this Court in failing to abide the deadlines of the Federal Rules of Civil Procedure and the Court and to generally manage his cases[.]" Order at 2, *McClellan* v. *Schetter*, No. 1:20-CV-00189-MR (W.D.N.C. Dec. 8, 2021), D.E. 48.

- When granting an opposed motion for extension of time to file dispositive motions, the Court noted defense counsel's history of failing to abide by court deadlines and general non-responsiveness. Order at 1–2, *Case* v. *Beasley*, No. 5:21-CT-03157-D (E.D.N.C. Aug. 17, 2023) (collecting cases), D.E. 56.

- During a pretrial conference, a Court rebuked counsel for the lack of substance in the summary judgment motion filed. It noted that the motion "was pathetically bare . . . . It's become a plague on this Court, your handling of cases[.]" And the Court remarked that being overworked was no excuse. Audio Recording of Pretrial Conf. at 10:02:29–10:02:56, *Newell* v. *Davis*, No. 5:21-CT-03129-BO (E.D.N.C. Feb. 8, 2024).

- After denying a plaintiff's renewed motion for judgment as a matter of law that the defense had not responded to, the Court commented that "[t]he North Carolina Attorney General's office has exhibited repeated failures to file timely responses to motions and discovery throughout this case." Counsel claimed his office was understaffed, and the Court noted that "other cases pending in this district have suffered from similar neglect by the State." *Patterson* v. *Henderson*, No. 1:19-CV-204, 2023 WL 2990347, at *6 (M.D.N.C. Apr. 18, 2023).

- In connection with a motion to extend the dispositive motions deadline, a Court remarked that NCDOJ had repeatedly violated Rules 11 and 16 by "filing procedurally and substantively insufficient dispositive motions, appearing unprepared at the Court's pretrial conference, presenting false representations to the Court about settlement negotiations when it is now clear none occurred, presenting false representations to the Court that they

would not seek any further extensions of time to file dispositive motions . . . and causing unnecessary delays[.]" Order at 5, *Newell* v. *Davis*, No. 5:21-CT-03129-BO (E.D.N.C. Apr. 26, 2024), D.E. 80.

These problems persist even after federal judges have imposed financial sanctions on NCDOJ and its attorneys. *See* Order, *Edward* v. *Hooks*, No. 5:21-CT-03270-D, 2023 WL 8449250 (E.D.N.C. Dec. 6, 2023) (awarding $40,077.97 as a sanction for failure to comply with a discovery order), D.E. 284; Order, *Human Rights Def. Ctr.* v. *Ishee*, 5:21-CV-00469-FL, 2023 WL 8361740 (E.D.N.C. Nov. 30, 2023) (requiring NCDOJ to pay $45,846 due to failure to adequately prepare a deponent for a deposition), D.E. 85; *Bolen* v. *Smith*, No. 3:19-CV-00709-MR, 2023 WL 3212343, at *1–2 (W.D.N.C. May 2, 2023) (imposing a $1,000 sanction for failure to comply with discovery requests); *Hale* v. *Wilson Cnty.*, No. 5:19-CV-00550-BO, 2022 WL 4084411, at *2 (E.D.N.C. Sept. 6, 2022) (ordering payment of $15,000 due to subpoena abuse).

This history establishes that sanctions are warranted against NCDOJ. The failure to properly supervise Calloway-Durham is not an isolated event. Instead, the Public Safety Section's attorneys have often failed to meet their professional obligations in litigation across the state. These repeated and widespread failings establish that NCDOJ has willfully failed to adequately supervise the Public Safety Section. *See* N.C. R. Prof'l Conduct 1.3, Comment 7 ("A pattern of delay, procrastination, carelessness, and forgetfulness regarding client matters indicates a knowing or reckless disregard for the lawyer's professional duties. For example, a lawyer who habitually misses filing deadlines and Court dates is not taking his or her professional responsibilities seriously."). These ongoing issues are "not only eminently frustrating and unprofessional, but cost the Court considerable unnecessary loss of its very limited time and resources." Order to Show Cause at 3, *Griffin* v. *Hooks*, No. 3:19-CV-00135-MR (W.D.N.C. Dec. 9, 2020), D.E. 80.

The Court can no longer ignore these long-standing issues. They have gone on for too long, involved too many attorneys, and impacted too many proceedings. And allowing NCDOJ and its

attorneys to continue to avoid sanctions is disrespectful to the members of the bar who arrange their professional and personal lives to comply with their obligations to the Court. If the federal courts will tolerate this repeated conduct from NCDOJ, how can they legitimately sanction other attorneys who fail to follow their orders?

NCDOJ's attempts to solve this problem on its own have been ineffective. At the First Show Cause hearing, NCDOJ explained that it had implemented new policies to address these problems, First Show Cause Hr'g. Tr. at 11:12:19, that it "should not have these issues . . . at all," *id.* at 12:2–3, and that it takes these issues "extremely seriously," *id.* at 20:2.

The Court heard the same things at the Second Show Cause hearing. The Public Safety Section's new leadership said they had increased staffing and put in new policies to address its shortcomings. Second Show Cause Hr'g. Tr. at 44:7–50:18. The new leadership says it is "very committed" to addressing these issues "and take this very seriously." *Id.* at 60:6–8.

Yet the Court's recent experience with the Public Safety Section has not instilled confidence that the issues have been addressed. A few months ago, the Court issued a show cause order related to the Public Safety Section's preparation for and performance at a court-hosted settlement conference. Order, *Belfield* v. *Greenwood*, 5:22-CT-03145-FL (E.D.N.C. July 24, 2025), D.E. 99. In another case, the Court needed to reconvene a second final pretrial conference because a Public Safety Section attorney did not consult with a pro se plaintiff before developing the proposed pretrial order. Order, *Ruff* v. *Deas*, 5:22-CT-03186-BO (E.D.N.C. Aug. 1, 2025), D.E. 92. And in yet another case, Public Safety Section attorneys missed out on an opportunity to depose a pro se plaintiff because they waited too long to do so. Order at 4, *Proffit* v. *N.C. Dep't of Pub. Safety*, 5:23-CV-00306-BO (E.D.N.C. Feb. 21, 2025) ("Waiting eight months to pursue discovery, leaving only about six weeks to complete it, is dilatory."), D.E. 77.

Attorneys from the Public Safety Section regularly invoke their workload as an explanation for their shortcomings. But attorneys who appear in this Court have a professional responsibility to not take on more work than they can manage. N.C. R. Prof. Conduct 1.3, Comment 2 ("A lawyer's work load must be controlled so that each matter can be handled competently."); *see Strike 3 Holdings, LLC* v. *Doe* , No. 1:18-CV-01075-MCE-CKD, 2019 WL 935389, at *4 (E.D. Cal. Feb. 26, 2019) (explaining that an attorney "has a professional responsibility to refrain from acting as counsel in more cases than he can handle at one time"); *Deitrick* v. *Costa*, No. 4:06-CV-1556, 2014 WL 12884515, at *11 (M.D. Pa. Dec. 11, 2014) ("[A]n attorney who knowingly takes on an unmanageable caseload and thereby fails to meet deadlines acts willfully.") (citation omitted); *United States* v. *Bush*, 797 F.2d 536, 538 (7th Cir. 1986) (per curiam) ("[A]n attorney is responsible for managing his office so that he can comply with [the] Court's orders and rules.") (citation omitted). So a heavy caseload does not excuse the Public Safety Section's repeated failures to meet its obligations.

It is challenging, however, to find an appropriate sanction. Rule 11 allows the Court to require an offending party to pay a fine into the Court. But here, that would simply shuffle taxpayer dollars from one governmental entity to another without providing any tangible benefit to the taxpayers. Similarly, since Mayo is pro se, there were no attorney's fees incurred because of the Rule 11 violations. So those traditional sanctions do not appear to be well suited to addressing these violations or deterring future ones.

Instead, preventing future violations will require NCDOJ to change the way it staffs, runs, and oversees the Public Safety Section. The details of those changes and how to implement them are beyond the expertise of the Court. While the Court has given serious consideration to appointing someone outside NCDOJ to recommend potential changes, the Court will, for now,

give the Attorney General, who has been in office for less than a year, the opportunity to address these issues himself.

So the Court imposes the following sanctions. First, the Court admonishes the North Carolina Department of Justice for its failure to adequately supervise Calloway-Durham and the Public Safety Section.

Second, within 45 days from the entry of this order, the Attorney General of North Carolina must prepare and file a report that outlines the underlying causes of the Public Safety Section's issues and discusses the steps the Attorney General will take to address them. These steps should go beyond those offered at the First and Second Show Cause Hearings and take into account the full array of resources allocated to NCDOJ, both in terms of money and personnel, by the North Carolina General Assembly. The report must contain a statement by the Attorney General under the penalty of perjury that he has reviewed and approves the report's contents. The Attorney General must send a copy of that report to the Chief United States District Judge in each of North Carolina's federal judicial districts.

Finally, the Honorable Glenn M. McNeill, Jr., United States Marshal for the Eastern District of North Carolina, must personally serve a copy of this opinion on the Attorney General of the State of North Carolina.

## III. Conclusion

As outlined above, Calloway-Durham's Rule 11 violations are a symptom of the severe and pervasive issues plaguing the Public Safety Section. These issues are unacceptable and need to be addressed immediately. As representatives of the people of North Carolina, NCDOJ "should hold itself to a higher standard of professional competence, and the Court expects these deficiencies to be addressed." *Patterson* v. *Henderson*, No. 1:19-CV-204, 2023 WL 2990347, at

*6 (M.D.N.C. Apr. 18, 2023), *appeal dismissed,* No. 23–6501, 2024 WL 2245111 (4th Cir. Feb. 29, 2024). The Attorney General must take the necessary steps to ensure that the Public Safety Section performs with the level of professionalism and competence that this Court expects, and the people of North Carolina deserve.

For all these reasons, the Court finds that Calloway-Durham has violated Rule 11(b)(1) and 11(b)(2) by filing the Third Motion to Dismiss. The Court also finds, under Rule 11(c)(1), that the North Carolina Department of Justice is jointly liable for her violations. To address her violations, the Court imposes the sanctions discussed above. The Court will retain jurisdiction of this matter after the conclusion of this case to ensure compliance with this order.

Dated: October 16, 2025

_Robert T Numbers II_
Robert T. Numbers, II
United States Magistrate Judge