# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-00289-M

| | |
|---|---|
| **Sean B. Mayo**, <br><br> Plaintiff, <br><br> v. <br><br> **Rocky Mount Police Department**, et al., <br> Defendants. | **Declaration of** <br> **Orlando L. Rodriguez** |

I, Orlando L. Rodriguez, declare the following to be true and correct to the best of my knowledge and belief:

1. I am familiar with the work of the Public Safety Section of the North Carolina Department of Justice (the "Section") from multiple perspectives.

2. I worked in the Section as an attorney from June 2018 through March 2021. During that time, I represented the North Carolian Department of Adult Correction[1] (DAC) and its employees in dozens of federal actions filed by incarcerated prisoners. During this period, I worked under three different supervisors.

3. From March 2021 through December 2024, I worked in the Special Litigation Section of the North Carolina Department of Justice, where I continued to work on litigation involving the DAC and its employees. During the last six months of this period, I served as the interim head of the Section, assisted in restructuring the Section, and otherwise assisted the staff of the Section, including the current Section in revitalizing the Section.

4. Beginning in January 2025, I have been serving as the General Counsel of DAC. In this

---

[1] DAC became a stand-alone cabinet-level executive agency in January 2025. Prior to that, DAC operated as a division of the North Carolina Department of Public Safety.

role, I, along with others at DAC, work closely with the Section on all manner of litigation. Since that time, I have had the opportunity to observe firsthand the significant reforms implemented by the new leadership of the Department of Justice under Attorney General Jeff Jackson.

5. Thus, I have direct experience working in the Section as an attorney, supervising the Section, and now as a client of the Section. These experiences provide me with a unique vantage point of the Section's historical challenges and more importantly the improvements the Section has sustained over the past 18 months or so. In particular, the pace and the depth of improvements since January 2025 have been substantial.

6. Chief among these improvements has been improved staffing levels. Based on my understanding, the Section is as close to being fully staffed as it has been in at least the past five years. The increased staffing has allowed the current Section Head to reduce the case load per attorney, which allows those attorneys to spend more quality time on each case. This in turn allows each attorney to spend more time on each case which, as I understand it, has improved the Section's ability to more readily meet the case management deadlines. This has directly improved the Section's ability to meet deadlines, prepare cases in dialogue with DAC, and provide high-quality representation to DAC and its employees.

7. Particularly between 2021 through the middle of 2024, the Section struggled to hire and retain attorneys. This resulted in the remaining staff carrying heavy caseloads that likely contributed to certain attorneys missing deadlines or otherwise not performing up to standards. Moreover, it is my understanding that the attorneys that committed the vast majority of the errors referenced by this Court in Docket Entry 141 are no longer employed by the Department of Justice.

8. Given the improved staffing levels and the structural reforms underway, it is my sincere belief that instances of performance issues by the Section is a thing of the past and that the Section will continue to perform excellent work on behalf of DAC and its employees.

9. The work of the Section has also been greatly improving since the middle of 2024 in other ways. For example, due to recent technology-based solutions, namely a robust case management system that became available to DAC in 2025, the DAC Office of General Counsel ("OGC") has worked to streamline the process of sharing of essential case materials with the Section. As the Court is no doubt aware, many of the cases filed by incarcerated individuals require use of a fairly static set of documents and other information, such as incident reports, videos, photographs, disciplinary records, and other documents. Given that many if not most of the cases handled by the Section require the exchange of these types of documents, OGC has been working on a new method of gathering and transferring these sets of information to the Section in a more organized and efficient manner. These efforts have accelerated under the new administration, with the Section playing a pivotal role in advancing this process improvement and offering essential feedback to ensure the final product is beneficial for both the Section and OGC.

10. The new approach turns on a file-sharing system that allows DAC staff to upload the necessary files to a site where the Section staff can download the materials. This process improvement will greatly reduce the need for emails, mail, or hand delivery as the primary method for exchanging information between DAC and the Section.

11. This new approach not only facilitates a more efficient exchange of the information and documents necessary for the Section to represent DAC and its employees, but it also streamlines various administrative tasks. As a result, OGC anticipates more thorough case preparations and better-informed decision-making, ensuring our teams are consistently well-equipped and aligned.

12. Over the past 18 months or so, other improvement efforts have enhanced the overall work product of the Section. These efforts include increased communication between OGC and the Section. Through more regular and timely notifications about upcoming trials and settlement conferences, the Section and OGC are better prepared for such events. Additionally, the current

Section head and the Deputy General Counsel who oversees the federal litigation management for OGC engage in weekly meetings to address various matters and identify other potential process improvements. These meetings have become more structured and solution-oriented under the new leadership and have already resulted in measurable improvements in litigation readiness and responsiveness.

13. Additionally, OGC and the Section are exploring training opportunities, developing templates, and enhancing discovery processes to streamline operations and reduce time burdens.

14. The Section has also undertaken other collaboration initiatives that have contributed to an overall improvement in their quality of work including involving OGC in case representation, assignment, preparation, and strategy. DAC has also recently engaged in discussions with the Department of Justice's leadership to support appropriate staffing changes and process improvements, including the creation of a paralegal manager position to further enhance calendaring and case tracking.

15. As a result of the improved staffing levels, enhanced supervision, communication and collaboration efforts, over the past 18 months and especially this past year, OGC has noticed a marked improvement in the quality of the representation by the Section and looks forward to that continuing.

Pursuant to 28 U.S.C. § 1746(2), I, Orlando L. Rodriguez, declare under penalty of perjury that the foregoing is true and correct.

This the 1st day of December 2025.

Orlando L. Rodriguez
General Counsel
N.C. Department of Adult Correction